IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLEN HALLIDAY, MICHAEL S. IOANE, SR., SHELLY IOANE, ASHLEY M. IOANE, MICHAEL S. IOANE, JR.,<br><br>Plaintiffs,<br><br>v.<br><br>KENT R. SPJUTE, JEAN NOLE, JEFF HODGES, BRIAN APPLEGATE, MICHELLE M. CASAREZ, UNKNOWN DOES 1-20, AND THE UNITED STATES OF AMERICA,<br><br>Defendants. | CIV F-07-0620 AWI GSA<br><br>ORDER RE: MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT |

**I. History**[1]

Plaintiffs Michael Ioane Sr., Shelly Ioane, Ashley Ioane, and Michael Ioane Jr. live at 1521 Fruitland Ave., Atwater, CA. Plaintiffs are involved in tax disputes with Defendant United States. Additional Defendants Kent Spjute, Jean Nole, Jeff Hodges, Brian Applegate, and Michelle Casarez are Internal Revenue Service agents ("Federal Agents"). Based on the affidavit of Kent Spjute, the United States was able to obtain a search warrant for Plaintiffs' residence. The search was carried out by the Federal Agents on June 8, 2006. The precise relationship of Plaintiff Glen Halliday to this case is unclear.

---

[1] The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained therein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

Plaintiffs filed suit on April 20, 2007. Doc. 1. They filed an amended complaint as a matter of right on January 14, 2008. Doc. 39. In the operative complaint, Plaintiffs allege violations of their First, Fourth, and Fifth Amendment against all Defendants. Plaintiffs allege the Federal Agents were under the supervision of Defendant Does who failed to adequately instruct, control, and/or discipline Federal Agents for their conduct. They also allege the United States disclosed tax information about the Plaintiffs to third parties in violation of 26 U.S.C. §6103. Appended to the complaint is a copy of the warrant in question.

The matter is now before the court on Defendants motion to dismiss the complaint for lack of jurisdiction, failure to state a claim, and qualified immunity. Doc. 44. Defendants have submitted a statement of undisputed material facts and declarations, asking in the alternative for the motion to be converted to summary judgment. Plaintiffs oppose the motion and any attempt to convert it into a summary judgment. Doc. 45. The matter was taken under submission without oral argument. Doc. 47.

**II. Legal Standards**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007), citations omitted. The court is not required "to accept as true allegations that are merely conclusory,

unwarranted deductions of fact, or unreasonable inferences." <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).  The court must also assume that "general allegations embrace those specific facts that are necessary to support the claim." <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 889 (1990), citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), overruled on other grounds at 127 S. Ct. 1955, 1969.  Thus, the determinative question is whether there is any set of "facts that could be proved consistent with the allegations of the complaint" that would entitle plaintiff to some relief. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002).  At the other bound, courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated...laws in ways that have not been alleged." <u>Associated General Contractors of California, Inc. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint.  "There are, however, two exceptions....First, a court may consider material which is properly submitted as part of the complaint on a motion to dismiss...If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them. Second, under Fed. R. Evid. 201, a court may take judicial notice of matters of public record." <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir. 2001), citations omitted.  The Ninth Circuit later gave a separate definition of "the 'incorporation by reference' doctrine, which permits us to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005), citations omitted.  "[A] court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss. Facts raised for the first time in opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." <u>Broam v. Bogan</u>, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003),

3

citations omitted.

If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without prejudice, and with or without leave to amend. "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc), quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

### III. Discussion

A motion to dismiss may be converted to one for summary judgment when "a party has notice that the district court may look beyond the pleadings." Hamilton Materials Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1207 (9th Cir. 2007), citations omitted. The court declines to convert the motion into one for summary judgment and so does not consider the declarations and statement of material facts submitted as part of this motion.

**A. Subject Matter Jurisdiction**

Plaintiffs seek "An injunction against the defendant's continued possession of the equipment, property, and records seized, especially First Amendment protected materials, and an order directing them to be returned to plaintiffs." Doc. 39, Amended Complaint, at 6:16-18. Defendants argue that Plaintiffs have articulated a Bivens claim against Defendant United States. The United States has not waived sovereign immunity for Bivens causes of actions; no such claim may be pursued. Cato v. United States, 70 F.3d 1103, 1110 (9th Cir. 1995). Suits against individuals in their official capacity must be construed as suits against the government entity itself. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Plaintiffs argue that "there is nothing in the complaint which indicates the individual defendants do not still have the seized property in

4

their possession, [therefore] they would be proper parties to the instant action for the injunction." Doc. 45, Plaintiffs' Opposition, at 22:7-9.  To the extent that Plaintiffs seek to recover possession of the contested items under Bivens, the claim is limited and must be construed as requesting that form of relief against the Federal Agents in their individual capacity.

**B. First Cause of Action- Fourth Amendment Specificity Requirement**

The Fourth Amendment of the U.S. Constitution states that warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized." "In order for a search to be reasonable, the warrant must be specific. Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." In re Grand Jury Subpoenas, 926 F.2d 847, 856-57 (9th Cir. 1991), citations omitted.  The two concepts, while closely related, are distinct.  Unfortunately, courts are not always careful with these terms and have often conflated the two concepts.  "[T]he specificity required in a warrant varies depending on the circumstances of the case and the types of items involved. Warrants which described generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible. In determining whether a description is sufficiently precise, we have concentrated on one or more of the following: (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officer can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued." United States v. Spilotro, 800 F.2d 959, 963 (9th Cir. 1986), citations omitted.  "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." Massachusetts v. Sheppard, 468 U.S. 981, 988 n.5 (1984), citations omitted.

Plaintiffs allege that the search warrants are insufficiently particular due to a combination of the following factors: (1) the failure of the warrants to cite any violation of federal law, (2) the lack of affidavits accompanying the execution of the warrants, and (3) the wide scope of items to be seized. See Doc. 39, Amended Complaint, at 2:19-3:1. Plaintiffs also claim "the warrant was overbroad." Doc. 39, Amended Complaint, at 3:2. Defendants argue that the warrants are sufficiently specific on their face, or in the alternative, that qualified immunity applies. Doc. 44, Part 2, Defendants' Brief, at 7:17-9:10 and 18:4-26.

At this motion to dismiss stage, the court evaluates the claim solely based on the complaint, appended material, and judicially noticeable facts. Notably lacking from the record thus far are the probable cause affidavits supporting the warrants. When evaluating whether the specificity requirement is met, context is important. Past precedent "requir[es] courts to consider the totality of circumstances in determining the validity of a warrant. One of the crucial factors to be considered is the information available to the government. '(Generic) classifications in a warrant are acceptable only when a more precise description is not possible.'" United States v. Cardwell, 680 F.2d 75, 78 (9th Cir. 1982), quoting United States v. Bright, 630 F.2d 804, 812 (5th Cir. 1980). The warrant authorizes seizures of large categories of records relating to a number of individuals/entities "plus persons or entities unknown." Doc. 39, Amended Complaint, at 13. Plaintiffs have clearly stated both particularity and breadth claims. As key facts are currently unknown, the court cannot make a qualified immunity determination at this time.

**C. Second Cause of Action- Fifth Amendment**

Plaintiffs allege that they were deprived of "property in violation of their right to due process." Doc. 39, Amended Complaint, at 3:22-23. They specified that they "are complaining about the deprivation of their property without due process of law (i.e. a pre-deprivation or post-deprivation hearing)." Doc. 45, Plaintiffs' Opposition, at 16:3-6. Defendants argue the Fifth

6

Amendment claim is purely duplicative of the Fourth Amendment claim.  Plaintiffs correctly point out that "Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character. Rather, we examine each constitutional provision in turn." United States v. James Daniel Good Real Prop., 510 U.S. 43, 50 (1993), quoting Soldal v. Cook County, 506 U.S. 56, 70 (1992).

However, the Fourth Amendment has been read as generally specifying the due process afforded in criminal investigations. See Gerstein v. Pugh, 420 U.S. 103, 125 n.27 (1975) ("The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases").  This overall dovetailing of Fourth and Fifth Amendment concerns applies where materials are seized and held as evidence rather than forfeited. Cf. United States v. James Daniel Good Real Prop., 510 U.S. 43, 51-52 (1993) ("It is true, of course, that the Fourth Amendment applies to searches and seizures in the civil context and may serve to resolve the legality of these governmental actions without reference to other constitutional provisions. But the purpose and effect of the Government's action in the present case go beyond the traditional meaning of search or seizure. Here the Government seized property not to preserve evidence of wrongdoing, but to assert ownership and control over the property itself. Our cases establish that government action of this consequence must comply with the Due Process Clauses of the Fifth and Fourteenth Amendments"), citations omitted.  The U.S. Supreme Court has said, "when law enforcement agents seize property pursuant to warrant, due process requires them to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return." City of W. Covina v. Perkins, 525 U.S. 234, 240 (1999).  Aside from the requirement of notice, no due process rights independent of Fourth Amendment protections have been specifically articulated by the courts.  Plaintiffs do not allege any lack of notice or that the property seized was subject to forfeiture.  As the search and

seizure was undertaken pursuant to a criminal investigation,[2] Fifth Amendment due process evaluation in this case folds into the Fourth Amendment evaluation. See <u>Sanders v. City of San Diego</u>, 93 F.3d 1423, 1429 (9th Cir. 1996) ("when seizing property for criminal investigatory purposes, compliance with the Fourth Amendment satisfies pre-deprivation procedural due process as well"); <u>Wilkinson v. Hallsten</u>, 2006 U.S. Dist. LEXIS 53822, 22-23 (W.D.N.C. 2006) ("The Fourth Amendment is the Plaintiffs' shield from violations of due process in the setting of a criminal seizure. As discussed above, no Fourth Amendment violations occurred in the issuance or execution of this warrant for search and seizure, and as such no Fifth Amendment due process violations may be asserted").

**D. Third Cause of Action- Excessive Force and Bodily Privacy**

Defendants argue the amended complaint fails to state a Fourth Amendment Bivens action as "Plaintiffs do not allege any personal involvement of any of the [Federal Agents] for most of the alleged wrongs. The [Federal Agents] are merely listed by their names in the opening of the Amended Complaint." Doc. 44, Part 2, Defendants' Brief, at 6:4-6.

With regards to excessive force, Plaintiffs did state,

> 10. On June 8, 2006 the named individual defendants (SPJUTE, NOLL, HODGE, APPLEGATE, CASAREZ) and at least five other unknown DOE agents appeared at plaintiffs' leased residential building...to execute an alleged search warrant.
> ....
> 24. The defendants had no valid reason to believe the plaintiffs or any other residents of the property were armed or dangerous.
> 25. On rushing through the door, the agents had guns drawn and pointed them in a threatening manner at the heads of both Michael and Shelly Ioane without reason or provocation, and intended to cause and did cause these plaintiffs to fear for their lives.
> 26. Although plaintiff Shelly Ioane was unarmed, and frantically screaming and crying for

---

[2]Plaintiffs object that "Since there are no allegations in the complaint (or even in the search warrants themselves), about any 'criminal investigation,' any argument about such investigation is beyond the permissible bounds of a facial attack on the complaint under Rule 12(b)(6)." Doc. 45, Plaintiffs' Opposition, at 18:15-18. While Plaintiffs do not state they are the target of a criminal tax investigation, review of the complaint and appended material leaves no other reasonable inference possible. The Federal Agents are all IRS officers. Doc. 39, Amended Complaint, at 6:2-3. The search warrant was issued to "Kent R. Spjute, Special Agent, Internal Revenue Service, Criminal Investigation Division." Doc. 39, Complaint, at 8.

> help, defendant Applegate continued approaching her and pointing his gun at her beyond any amount of time it might take for a reasonable person to determine she was unarmed and no threat to anyone.
> 27. Defendant Applegate's behavior was so unnecessary that one of the female agent defendants screamed at him at least three times to put away his gun, and had to continue screaming at him at the top of her voice until he finally did so.
> ....
> 30. The actions of the defendants were a use of unnecessary and excessive force in violation of plaintiff's Fourth Amendment rights.

Doc. 39, Amended Complaint, at 2 and 4. At minimum, the amended complaint must be read to allege that Federal Agents pointed guns at the heads of Michael and Shelly Ioane, who were unarmed. "We have held since 1984 that pointing a gun at a suspect's head can constitute excessive force in this circuit." Tekle v. United States, 511 F.3d 839 (9th Cir. 2006), citing Robinson v. Solano County, 278 F.3d 1007, 1014 (9th Cir. 2002) and McKenzie v. Lamb, 738 F.2d 1005, 1010 (9th Cir. 1984). Plaintiffs have stated a Fourth Amendment excessive force claim. No decision concerning qualified immunity can be made at this time based on the information provided.

      Shelly Ioane also claims to have been "watched by a federal agent while she attempted to relieve herself in the bathroom." Doc. 39, Amended Complaint, at 4:20-21. Under the due process clause of the Fourth Amendment, there is a right to bodily privacy. See Sepulveda v. Ramirez, 967 F.2d 1413, 1415 (9th Cir. 1992), citing York v. Story, 324 F.2d 450 (9th Cir. 1963). Defendants argue "the allegation does not establish that a constitutional violation occurred." Doc. 44, Part 2, at 21:14-15. While executing a search warrant, officers may detain an occupant of a residence in a manner reasonable under the circumstances. Dawson v. City of Seattle, 435 F.3d 1054, 1066 (9th Cir. 2006). The reasonableness of a detention made pursuant to a search warrant is examined under the totality of the circumstances and includes consideration of any danger posed to the police by the detainee, the nature of the crime being investigated/the object of the search, any resistance by the detainee, the age of the detainee, and the health or medical condition of the detainee. "A detention conducted in connection with a search may be unreasonable if it is unnecessarily painful, degrading, or prolonged, or if it

9

involves an undue invasion of privacy." Franklin v. Foxworth, 31 F.3d 873, 876 (9th Cir. 1994). The Ninth Circuit affirmed denial of qualified immunity, finding the right to bodily privacy clearly established in a case where

> Officer Ludwig [male] ordered Sepulveda [female] to produce a urine sample for drug testing. Sepulveda entered the restroom and began to provide the sample. Officer Ludwig then entered the restroom. Without Sepulveda's consent, he walked into the stall where Sepulveda was partially unclothed and seated on the toilet. Sepulveda objected strongly to his presence in the stall and asked him to leave. According to Sepulveda, Officer Ludwig laughed and told her that she 'did not have anything he had not seen before.' Ludwig remained in the stall while Sepulveda finished urinating, cleaned herself, and dressed.

Sepulveda v. Ramirez, 967 F.2d 1413, 1415 (9th Cir. 1992). In other cases, issues of bathroom monitoring arise when the search warrant specifies that contraband narcotics are to be seized. Free access to a bathroom is a potential means of flushing drugs down a toilet. See Hunter v. Namanny, 219 F.3d 825, 831 (8th Cir. 2000). There is no indication that illicit drugs are an issue in this case. Instead, Defendants argue that weapons may have been cached in the bathroom. Doc. 44, Part 2, at 22:5-6.

In the context of serving a search warrant, the U.S. Supreme Court has found that ordering naked individuals out of bed does not violate the Fourth Amendment as "The orders by the police to the occupants, in the context of this lawful search, were permissible, and perhaps necessary, to protect the safety of the deputies. Blankets and bedding can conceal a weapon, and one of the suspects was known to own a firearm, factors which underscore this point. The Constitution does not require an officer to ignore the possibility that an armed suspect may sleep with a weapon within reach." L.A. County v. Rettele, 127 S. Ct. 1989, 1993 (2007). In that case, the police officers knew that one of the inhabitants owned a registered handgun and "there is no allegation that the deputies prevented Sadler and Rettele [naked individuals] from dressing longer than necessary to protect their safety." L.A. County v. Rettele, 127 S. Ct. 1989, 1990 and 1993 (2007). Rettele discusses police officer conduct when they first came into contact with individuals in a home they were searching. By the time any issue of bathroom monitoring comes up, police officers have had the chance to conduct a basic search for weapons. After such a

search happens, the situation is quite distinct from that of initial contact: "There is also no justification for the officers failure to return Curry to his bed after the search of his room had been completed. Again, the officers admitted at trial that they were aware of Curry's disability early in the course of their activities. The officers testified that they knew that Curry presented absolutely no risk of flight. Based on this knowledge, it must have been apparent to a reasonable officer that Curry presented no serious threat to the officers or to the conduct of the search. Certainly it must have been apparent that returning him to his sickbed would involve no risk at all *once the officers had searched his room and made certain that there were no weapons or contraband present*." Franklin v. Foxworth, 31 F.3d 873, 877 (9th Cir. 1994), emphasis added. Also relevant to this case, the fact that "the nature of the crime being investigated was non-violent and did not pose any inherent threat of harm to adult police officers and government agents" must be considered in determining what tactics were reasonable. See United States v. Greathouse, 297 F. Supp. 2d 1264, 1276 (D. Or. 2003).  While there has been no formal statement as to the crime(s) being investigated, the amended complaint and attached search warrant reasonably suggest some from of tax evasion.

     Defendants rely on a recent Eastern District case for the proposition that "an officer did not violate the constitution when the officer escorted an individual to the bathroom during the execution of a search warrant." Doc. 44, Part 2, Defendants' Brief, at 21:26-22:1.  Indeed, the case simply says that the individual "had to remain in the living room and...was escorted when she had to use the bathroom." Hansen v. Schubert, 459 F. Supp. 2d 973, 991 (E.D. Cal. 2006). The case does not say that any officer monitored the individual when she was actually in the bathroom.  Plaintiffs have stated a claim for violation of bodily privacy.  No decision concerning qualified immunity can be made at this time based on the information provided.

**E. Fourth Cause of Action- First Amendment**

     Plaintiffs' First Amendment claim against the Federal Agents is based on the allegation

that "Many of the documents seized were related to plaintiffs' exercise of their right of association with others, free speech, and free press rights." Doc. 39, Amended Complaint, at 4:28-5:2.  To the extent this cause of action is not duplicative of the Fourth Amendment claim, Plaintiffs appear to be alleging that the Federal Agents targeted them with a tax investigation as a form of retaliation and to chill their exercise of First Amendment rights.  As a general matter, to demonstrate a First Amendment violation, Plaintiffs must show that Defendants attempted to deter or chill Plaintiffs' speech and such deterrence was a substantial or motivating factor in Defendants' conduct. Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999), citations omitted.

    "In Bivens, the United States Supreme Court held that, in appropriate cases, government officials may be held personally liable for violations, committed under the color of government authority, of citizens' constitutional rights. Bivens gives an individual a federal common law basis to sue federal government actors if they violate the individual's constitutional rights. However, our precedent makes clear that the right to sue as established by Bivens is qualified and is not absolute....Because the Internal Revenue Code gives taxpayers meaningful protections against government transgressions in tax assessment and collection, we hold that Bivens relief is unavailable for plaintiffs' suit against IRS auditors and officials." Adams v. Johnson, 355 F.3d 1179, 1183-86 (9th Cir. 2004).  The immunity from suit under Bivens as outlined in Adams does not cover all situations. See Tekle v. United States, 457 F.3d 1088, 1094-1100 (9th Cir. 2006) (discussing excessive force and unreasonable detention claims under Bivens against IRS special agents).  The Ninth Circuit has not made a categorical statement as to whether a Bivens action for First Amendment violations may lie against IRS officers. Cf. W. Ctr. for Journalism v. Cederquist, 235 F.3d 1153, 1156 (9th Cir. 2000) (reserving question of Bivens claim for retaliatory audit).  Other circuits that have concluded that, "Bivens relief is not available to taxpayers who allege First Amendment violations based on retaliatory tax audits." Hudson Valley Black Press v. IRS, 409 F.3d 106, 113 (2nd Cir. 2005); see also Judicial Watch v. Rossotti, 317

F.3d 401, 402 (4th Cir. 2003).  The situation at hand goes beyond tax auditing to the execution of a search warrant.

Defendants claim "Criminal investigations are, of course, typically the precursor to and culminate in the assessment and collection of federal taxes."  Doc. 44, Part 2, Defendants' Brief, at 10 n.10.  However, the Tenth Circuit case Defendants cite for that proposition discusses criminal investigations in a different context: "The [Anti-Injunction Act] applies not only to the actual assessment or collection of a tax, but is equally applicable to activities leading up to, and culminating in, such assessment and collection."  Lowrie v. United States, 824 F.2d 827, 830 (10th Cir. 1987).  Defendants further cite to the Seventh Circuit for the prospect that there is "no Bivens action against IRS agents who allegedly 'harassed' plaintiff.  Doc. 46, Defendants' Reply, at 5:3-4.  The opinion actually reads:

> If in the course of enforcing the tax laws internal revenue agents ransack people's homes without a warrant, or otherwise violate the Fourth Amendment, the argument for a damage remedy against the agents is a powerful one, since a suit for a tax refund would not be an adequate substitute. The argument is weaker if the claim is that the agents refused to grant a charitable exemption to a religious organization in violation of the First Amendment or deprived the taxpayer of some administrative procedure due him under the due process clause of the Fifth Amendment, for in both of these cases the wrong to the taxpayer can easily be set right through the legal procedures created by the tax code itself. But the argument becomes completely untenable when as in this case the only claim is that the agents made mistakes, subjected the taxpayer to unnecessary inconvenience, failed to explore possibilities for settlement, or otherwise failed to come up to the highest standards of conduct for government officers dealing with citizens....Maybe if the complaint 'sketches a portrait of a lawless and arbitrary vendetta fueled by the power of the state, designed to harass by unwarranted intrusion into the minutia[e] of their financial affairs, and intended to abuse by the creation of palpably unfounded claims against their property which they can set to right only by unnecessary litigation,' Rutherford v. United States, [702 f.2d 580, 584 (5th Cir. 1983)], the taxpayer can resist a motion to dismiss; but that is not the portrait sketched by the present complaint. Even when liberally construed, this complaint, if true, shows only that internal revenue agents acted in a heavy-handed, insensitive, and careless fashion in processing the taxpayer's tax returns. For such conduct there is no damage remedy.
> Even assuming with the Fifth Circuit in Rutherford that a deliberate campaign to harass a taxpayer could deprive him of his liberty without due process of law, more must be shown than a lack of courtesy, accuracy, and restraint by internal revenue agents in the processing of tax returns. Not every interference with peace of mind is a deprivation of liberty within the meaning of the Constitution. Even a battery by a police officer is not a deprivation of liberty unless circumstances of aggravation are present.

Cameron v. IRS, 773 F.2d 126, 128-29 (7th Cir. 1985).  The process of investigation is not

13

necessarily equivalent to the process of tax assessment and collection.  The Seventh Circuit opinion lays out a continuum of activity without specifying what cutoff point forms the boundary between non-actionable behavior and activity which could rise to a First Amendment claim.

The court finds that the activities Federal Agents are accused to have undertaken are comparable to the ones described in Fry v. Melaragno, 939 F.2d 832 (9th Cir. 1991).  In that case, the Ninth Circuit, in analyzing qualified immunity, found no First Amendment violation for a number of actions taken by an IRS agent in the course of investigation.

> The complaint describes Melaragno as 'a revenue agent for the I.R.S. who spent many years investigating the tax planning and First Amendment-protected activities of Fry.' Specifically, Fry complains that Melaragno conspired with others to charge him with false criminal charges; that with two other defendants he inserted into the prosecutor's version of the presentence report details about his first amendment activities which encouraged parole commission employees to retaliate against Fry and keep him in prison twice as long as the prosecutor had promised; intentionally lied and made misrepresentations to the probation officer preparing his presentence report; and helped the attorneys and investigators gather evidence for the tax litigation which included the book on sex.
> ....
> [aside from the bringing of criminal charges] Fry's other allegations against Melaragno do not survive the requirement that the pleadings reveal a violation of clearly established law. We cannot imagine how the alleged wrongful acts, such as gathering evidence for the tax court trial and communicating details of his investigation to persons involved in Fry's sentencing, infringed clearly established rights under the first amendment. Nor do they suggest that Melaragno acted in a way which he should have known was clearly unlawful. Melaragno is entitled to qualified immunity from suit.

Fry v. Melaragno, 939 F.2d 832, 838-39 (9th Cir. 1991).  The Federal Agents did not violate Plaintiffs' First Amendment rights by executing of a search warrant as part of a tax investigation. Alternatively, Federal Agents should be entitled to qualified immunity based on the Fry opinion as the law is unclear.

**F. Sixth Cause of Action- Section 6103**

"If any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States." 26 U.S.C. §7431(a)(1).  The term "return

14

information" is defined as "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing..." 26 U.S.C. §6103(b)(2)(A). Against the United States only, Plaintiffs allege "Within the last 2 years, agents of defendant United States disclosed tax information about plaintiff Michael Ioane, Sr. multiple times to third-parties without plaintiffs' consent and when no statutory exception allowed for any such disclosures. The above disclosures included accusations of tax evasions against plaintiffs to third-parties by some of the individual defendants herein, as well as other IRS agents. These disclosures were made in violation of 26 U.S.C. §6103, and Michael Ioane, Sr. are entitled to damages under 26 U.S.C. §7431." Doc. 39, Amended Complaint, at 5:27-6:5.

Defendants argue Plaintiffs fail to allege sufficient facts to state a claim: "The Amended Complaint does not state what tax information was allegedly disclosed, when it was disclosed, and to whom it was impermissibly disclosed." Doc. 44, Part 2, Defendants' Brief, at 13:20-21. The only solid factual allegation is that the Federal Agents told unidentified third parties that Plaintiffs were being accused of tax evasion. "[T]o state a claim for unauthorized disclosure under 26 U.S.C. § 7431, Plaintiffs must allege '(1) that the disclosure [by IRS] was unauthorized; (2) that the disclosure was made knowingly or by reason of negligence; and (3) that the disclosure was in violation of section 6103.'" Aloe Vera of Am., Inc. v. United States, 128 F. Supp. 2d 1235, 1246 (D. Ariz. 2000), quoting Weiner v. IRS, 789 F. Supp. 655, 656 (S.D.N.Y. 1992). Plaintiffs simply assert this legal standard without providing any of the necessary factual detail. Such a statement is inadequate. See Chapin v. Hutton, 1999 U.S. Dist. LEXIS 10560, *24-25 (D. Idaho 1999) ("Plaintiffs have alleged that the Defendants have discussed Plaintiffs' tax liabilities and other confidential matters with unauthorized persons and that the disclosures are not within a statutory exception....Plaintiffs have not alleged sufficient facts to state a claim under Section 7431").

**IV. Order**

Defendants' motion to dismiss for failure to state a claim is GRANTED in part and DENIED in part. The second, fourth, and sixth causes of action are dismissed without prejudice. Any amended complaint (a second amended complaint) must be filed within twenty (20) days of the date this order is filed. If no amended complaint if filed by that date, Defendants are directed to file an answer to this first amended complaint as narrowed by this order within thirty (30) days of that date.

IT IS SO ORDERED.

**Dated:   September 23, 2008**          /s/ **Anthony W. Ishii**
                                                                 CHIEF UNITED STATES DISTRICT JUDGE