# EXHIBIT 1

UNITED STATES OF AMERICA
EASTERN DISTRICT OF CALIFORNIA

### AFFIDAVIT OF KENT R. SPJUTE

I, Kent R. Spjute, being duly sworn, depose and say:

1. I have been employed as a Special Agent for the Criminal Investigation Division of the Internal
   Revenue Service (hereinafter "IRS-CID") from September 1977 to November 1989 and from June
   1991 to the present date. During that time, I have been a Supervisory Special Agent or management
   official for about 6 years.  During my employment as a Special Agent with the Internal Revenue
   Service, I have conducted numerous criminal investigations of individuals, partnerships, businesses,
   corporations and various business entities, for violations of Federal laws relating to money
   laundering, false claims, mail and wire fraud, conspiracy and income tax violations (Title 18 & 26
   USC).  I have taught classes at FLETC to IRS-CID Investigative Analysts and have provided
   lectures to Federal and State criminal investigators on white collar and financial crimes and have
   taught financial, evidence and tax related classes to Internal Revenue Service Special Agents.  I have
   investigated tax, false claims, conspiracy and money laundering related crimes in various industries.
   I have investigated individuals who have used numerous trusts and corporations, who have set up
   numerous bank accounts to hide, conceal income and assets from the IRS, and further obstruct the
   IRS in the administration of the tax laws.  I am familiar with the modus operandi of persons engaged
   in setting up trusts, corporations and using shell entities to file false tax returns, obstruct the IRS and
   the United States government.  I have also been involved in drafting financial search warrants for
   records of tax violations, obstruction, false claims involving refund checks, and money laundering
   violations.  I have also participated in drafting complaints and indictments for the arrest and

charging of individuals for various tax and financial crimes.   As a result of my training and

experience, I have developed an expertise in the areas of financial criminal investigations involving

tax and other financial violations, business record keeping, financial analysis, tracing the flow of

funds, and persons who file false tax returns by concealing their income or asset through phony

entities.  I was also the Chief of the Internal Revenue Service Fraud Detection Center in Fresno for

three years and Supervisory Special Agent for about 2 years over financial investigative analysts

who research information on individuals who set up trusts and other entities to violate the tax laws.

2.   Based on my training and experience, I know that the following federal criminal statutes are

pertinent to this investigation and are stated below:

    A.  It is a violation of Title 26, United States Code, Section 7212(a) (Obstructing or impeding

        the IRS) for any individual to obstruct or impeded the Internal Revenue Service in the due

        administration of the tax laws.

    B.  It is a violation of Title 18, United States Code, Section 371, Conspiracy to commit offense

        against the United States.

3   I make this affidavit in support of an application for a search warrant concerning the offenses in

Title 7212(a) Obstruction or Impeding the IRS, Title 18 § 371 Conspiracy to commit offense against

the Taxes; plus Title 18 U.S.C. § 2 - Aiding and Abetting.

4.   This affidavit is made to support a Search Warrant for the following one address:

    A. The property at 1521 Fruitland Ave. Atwater, CA, including the residence, garage, single

wide trailer on the property, any vehicles on the property and any outbuildings of Michael Scott

Ioane and Shelly Olsen Ioane. The main residence is described as a one story residence, with a

open carport on about 2.8 acres of land, more particularly described in Attachment A.

## Summary of Investigation

5. Based upon my actions, observations, interviews and my review of numerous IRS and other financial documents; plus the interviews, actions and observations of other Internal Revenue Agents, the following information is presented in support of this search warrant.

6. This investigation has shown that beginning in 1995 and continuing to the present that Steven Booth, Louise Booth and Michael S. Ioane Sr. and others, have used trusts to conceal income and assets from the IRS, to obstruct the collection of taxes and to evade the payment of taxes by transferring property into the names of trusts. This investigation further has shown that the Booths created phony liens, again assisted by Michael Ioane and others, against various properties to create the appearance of no equity in the properties to further impede the IRS in its duties.

Explanation of Trusts

7. A trust is a contract between three parties. One party ("Grantor") transfers property into an entity, where another party ("Trustee"), who takes title to the property pays out income and principal to the benefiting parties ("Beneficiaries"). The trust instrument defines the terms which the Trustee uses to administer the property and make distributions to the Beneficiaries.

8. The interests of the Trustee and the Beneficiaries combine to form a fiduciary relationship--a relationship where one person holds legal title to property, subject to an enforceable obligation to keep or use the property for the benefit of another. This fiduciary relationship applies to property only and not services. Put another way, a trust allows the Grantor to transfer assets to the Trustee and rely on the Trustee to distribute the assets to the Beneficiaries. A trust cannot have services.

9. There are two main types of trusts are: (1) A revocable trust and (2) an irrevocable trust. A revocable trust is created during a Grantor's life. The Grantor retains the power to change the terms

3

and conditions, or amend, revoke, or terminate it. For tax purposes, revocable trusts have insignificant consequences, because the Grantor is treated as owning the assets. The Grantor, and not the trust, therefore, is subject to income tax on the income and gains generated by the trust. An example of a common revocable trust is a living trust. This allows the Grantor to avoid probate, manage and control assets, and maintain privacy. Living trusts do not therefore need to file a separate tax return, a Form 1041, for Trusts.

10. An irrevocable trust is created during a Grantor's life, and the Grantor cannot change the terms after he or she creates it. At this point, the Grantor has relinquished all of his or her control over the assets. The key is that the Grantor has no more control over the assets and relies on the Trustee to administer the assets, without control or direction from the grantor. Under tax law, since the grantor has no more control and ownership of the assets and the earnings from the assets, a Form 1041, Trust Tax return, must now be filed with the IRS by the Trustee for the Trust. The trust pays taxes on the income earned by the trust.

11. The key to an irrevocable trust is control and ownership of the asset. The IRS knows that many trusts are set up to evade taxes and conceal ownership of assets and the income from these assets, by placing property in the name of a trust. The person who sets up the trusts to evade taxes frequently has a friend, relative or associate be the trustee, but the grantor, still controls the assets and is secretly the owner.

Key Individuals, Entities and Parties

12. For convenience, the following are a listing of the key individuals, entities and properties:

    Individuals

    Dr. Vincent. Steven (V. Steven) Booth- subject

    Louise Q. Booth- subject & wife to Steven Booth

    James H. Baker – Trust promoter, "accountant" & return preparer, Denton TX

Michael S. Ioane Sr.- Trust promoter and asset protection advocate, aiding the Booths.

Dr. John Innis Jr. D.C. – Friend/Employee/chiropractor of Booth's corp. and Trustee for Booth

Jean Annette Liascos – Louise Booth's sister & Trustee for Bakersfield Properties

Dr. Lorne McCan D.C. – Friend of Booth and Trustee for Alpha Omega & Aligned Ent.

Dr. Tomas Rios M.D. – Med Dir of Booth's Corp & 51% owner; Trustee for Alpha & Aligned

Margaret Squires – "best friend of Louise Booth; trustee of 21st Century Management

Entities

Alpha Omega Complex Trust (Alpha) – set up and used by Booth

Aligned Enterprises Trust (Aligned)- set up and used by Booth

Bakersfield Properties & Trust Co (BPTC)- Booth uses for properties

San Joaquin Wellness & Medical Group Prof. Corp (SJWMG)- dba Booth Chiropractic

Booth's Health Management Organization Inc- Booth's corporation to manage SJWMG.

Southern Financial Services- Trust- with Dr John Innis as Trustee- Booth uses for properties

21st Century Management & Trust – with Margaret Squires as trustee- Booth uses for properties

Acacia Corporate Management, LLC- entity created by Michael Ioane and used by the Booths to hide property

First Amendment Publishers- Trust used by Michael Ioane

Booths' Properties

5705 Muirfield Dr Bakersfield, CA 93306 (Muirfield) – Booth's property

5717 Roundup Way Bakersfield, CA 93306 ( Roundup)- Booth's residence

1927 21st Street, Bakersfield, CA 93301 – (21st Street) SJWMG office

U.S. v. Booth,  06/15/09  ER 92

Background of Booth Investigation & Creation of Entities

13. Vincent Steven Booth (AKA V. Steven Booth and Steven Booth), DOB ████████ is a licensed chiropractor operating in Bakersfield, California under two corporations, San Joaquin Wellness and Medical Group Inc. (San Joaquin Wellness) and Booth Health Management Organization Inc. (Booth Health Management).

14. Starting in 1995 and continuing through the present, Steven Booth and Louise Booth, who have been assisted by Michael Ioane and other people, set up trusts, corporations and other entities to conceal their income from the IRS, to hide their assets, to not pay taxes to the IRS, and to obstruct and impede the IRS. The Booths initially created two main trusts initially, one called Aligned Enterprises (Aligned), with Steven Booth as the trustee and Alpha Omega Trust (Alpha), with Louise Booth as trustee. Later the Booths further removed themselves from the trusts by naming new trustees. The new trustees named were Tomas Rios who Booth hired to be the medical director for San Joaquin Wellness and a Lorne McCan, another local chiropractor who attends the same church as Steven Booth and whose office is a few blocks away. The Booths further attempted to conceal and hide their assets by creating new entities to set up phony liens on the properties to create an image that the Booths' properties, in nominee names, had no equity.

15. Ioane has set up an entity called Acacia Corporate Management LLC (Acacia) through Steven Stucker of Carson City, Nevada. Acacia, which is owned by Paradise Solutions Trust and American Federal Trusts, was the entity that "purchased" the properties in Bakersfield from Bakersfield Properties.

16. James H. Baker in Denton, Texas has prepared their trust tax returns, their personal tax returns and the two corporation tax returns, San Joaquin Wellness and Booth Health Management from 1995 to the present. Baker communicates frequently and obtains direction from Michael Ioane regarding

6

Booth. James Baker is currently under criminal investigation by the Internal Revenue Service, Criminal Investigation Division in Texas for aiding and assisting the filing of false tax returns for various clients all over the country. During this investigation records from Baker have been obtained and reviewed. The records show a continual relationship of Baker and Ioane assisting Booth in Booth's obstructive activity against the IRS.

17. Steven Booth and Louise Booth owned and later transferred all their interest in their three properties to their two trusts, in the middle and late 1990s. These three properties are; (1) their residence at 5717 Roundup Way, Bakersfield, CA; (2) their property at 5705 Muirfield Drive, Bakersfield, CA and (3) the business building at 1927 21st Street, Bakersfield, CA. The Booths have continued to reside in the residence at 5717 Roundup Way. Since about 2002, Steven Booth's mother, Reba Booth, has been living in the property at 5705 Muirfield Dr. Steven Booth continues to operate his chiropractic business called San Joaquin Wellness Corporation from his office building at 1927 21st Street, Bakersfield, CA. The Booths placed liens (Deeds of Trusts for $500,000 each) on the properties. Later in January, 2002, the same three Booths' properties were transferred to Bakersfield Properties and Trust Company. The existing $500,000 Deeds of Trusts on each of these properties were continued. The Documentary Transfer Tax of $1.10 was paid indicating the equity was no more than $1,000 each. There was no escrow involved in the transfers. No loan or deed of trust documents were executed by Bakersfield Properties at that time.

18. A check was conducted of databases for California corporate filing and business registrations for Bakersfield Properties and Trust Company. There are no corporations filing in California or any businesses registrations under Bakersfield Properties. The only record located in the database checks was connected to property ownership at 114 Quincy St. Bakersfield, CA. The property at 114 Quincy St is owned by Jean Liascos, who is Louise Booth's sister. The property at 114 Quincy

St, Bakersfield, Ca is a duplex that was transferred as a gift transfer from Steven and Louise Booth to Jean Liascos in December 1993.

19. From 1995 through 1998 the Booths had positioned themselves to reflect very little personal income on their own tax returns.  They also set up trusts, diverted income to these trusts, filed trust tax returns, and hid there true income and assets from the IRS through these created entities.

Summary of IRS Audits of the Booths' Tax Returns

20. In about November 1998 the IRS began an audit of Booths' 1995-1997 personal tax returns (Form 1040) and Booth's trust tax returns (Forms 1041) for Aligned and Alpha.  This audit of the Booths' 1995-1997 personal tax returns (Forms 1040) found the Booths owed approximately $1.3 million (only taxes, not including interest or penalties) and against the trusts for approximately $790,000 (not including interest or penalties).

21. The IRS continued collection action by filing tax liens within the county where the Booths' reside and by sending tax notices to the Booths.

22. In about September 2004, the IRS began a second audit of the Booths, which also involved the two trusts (Alpha Omega & Aligned Enterprises), Booth's two corporations, (San Joaquin Wellness & Booth Health Management), and other entities that Booth appeared to be involved with or have control or direction over ( Bakersfield Properties & Southern Financial Services).

23. As a result of the second IRS audit, in September through December 2004 the IRS served summonses on the following: (1) Lorne McCan, as trustee for Aligned Enterprises and Alpha Omega Trust; (2)  Dr. Tomas Rios, a trustee for Aligned Enterprise Trust.  (3 & 4)Steven Booth and Louise Booth  individually and as current or former trustees of Aligned Trust and Alpha Trust; (5) Jean Liascos, Louise Booth's sister to provide testimony and records on Bakersfield Properties Trust company and (6) John Innis, a trustee for Southern Financial and he worked at Booth's office.

24. On December 22, 2005, the IRS filed three nominee tax liens on the same three properties (of Booth) against Acacia Properties, as nominees of Alpha Omega Trusts, Steven Booth and Louise Booth, on the amounts $2,009,088.

Trusts and Acacia Properties

25. Since, 1995 Steven Booth & Louise Booth have opened and operated bank accounts under the names of Alpha Omega Trust and Aligned Enterprises Trusts, where the Booths have been the only signatures on these accounts. Even though the Booths' claimed they transferred all rights, interest and control of the Alpha Omega Trust and Aligned Enterprise Trust as of about May 2, 2000 as trustees to the new trustees, the Booths continued to control the four bank accounts for Alpha Omega and Aligned Enterprise until at least 2004. Acacia Properties is a trust created by Michael Ioane at the directions of the Booths to hide their personal properties following the second IRS audit.

26. The Booths transferred their three properties to other trusts. Eventually, on December 5, 2005 Bakersfield Properties and Trust Company transferred by three Grant Deeds the three properties (Booth) to Acacia Corporate Management, LLC, Attn: Steven Stucker, 108 East John St., Carson City, Nevada. There was no escrow used and all three Deeds were signed by Jean Liascos, as Trustee of Bakersfield Properties and Trust Company, before a notary December 5, 2005. However, Jean Liascos resigned as trustee of Bakersfield Properties & Trust on November 2, 2004, and would not be authorized to sign as trustee of Bakersfield Properties & Trust. Steven Stucker in Carson City, Nevada, who the Deeds were mailed to as owner/agent of the properties.

27. On about January 9, 2006, the IRS received a letter dated January 5, 2006 from Steven Stucker, Acacia Corporate Management, Reno, Nevada. The letter stated that Steven Stucker is the manager of Acacia Corporate Management, not an owner, and Acacia had recently purchased real estate in an arms length transaction, on property which a title company issued title insurance. (A review of

9          U.S. v. Booth,  06/15/09   ER 96
                                                2266

the three deeds filed December 5, 2005 shows no title company or escrow company).  The letter

further states that Acacia is under contract to sell the property and threatens suit if the IRS lien is

not removed in 72 hours and if the tax lien "thwarts" the sell of the property.  It has been

determined that Steven Stucker pled guilty in 2003 to charges of obstructing the IRS through

setting up trusts and other entities.  He is currently on federal probation.

<u>Recent Investigative Findings</u>

28.  On about January 18, 2006, the IRS received from Steven and Louise Booth a Request for a

Collection Due Process Hearing, dated January 15, 2006, stating, We are not parties to Bakersfield

Properties or Acacia LLC, nor are they nominees for us.  Around 1999 we sold our property to

Bakersfield Properties for valuable consideration."

29.  On about January 20, 2006, the IRS received a document allegedly from Southern Financial

Services, 1001 N. Beckley 108 209, Desoto, Texas 75115, entitled "<u>STIPULATED JUDGEMENT</u>

<u>FOR $2,566,625.20 AND FINDING OF FACTS</u>" for the tax years 2000-2003.  The document

alleges the IRS had received back a notice of return of erroneous presentments and the IRS had

acted with fraud to cause damages to Southern Financial Services totaling $2,566,626.20.

30.  On about January 20, 2006, the IRS received a "Request for a Collection Due Process Hearing

(IRS Form 12153) from Bakersfield Properties & Trust Company, 1001 N. Beckley 108 209,

Desoto, Texas 75115.  This request pertains to 1995-1997 tax liens against Steven & Louise Booth

.  The statement from Bakersfield Properties, trustee Jonathan Imola, claims no tax deficiency was

ever issued, claims that all properties in California have been sold, and we are not nominees of

Steven Booth.

31.  On about January 23, 2006 the IRS received a "Request for a Collection Due Process Hearing (IRS

Form 12153) from Acacia Corporate Management, 108 East John St, Carson City, Nevada 89706.

This request pertains to 1995-1997 tax liens filed in connection with the tax liabilities of Steven & Louise Booth.

32. IRS Investigation into Michael S. Ioane's Activities

33. For the past several years, the IRS in Sacramento California, through Revenue Agent Dennis Brown, has independently been conducting an audit into the tax matters of Michael Ioane for the period of time 1998 through 2003. The IRS audit alleges that Ioane has been promoting and advising clients to set up trusts and other entities to hide income and not pay taxes go the IRS. The IRS obtained numerous bank records of entities that Ioane uses such as First Amendment Publishers, Acacia Corporation Management, Acacia Charitable Foundation, American Federal Trust and Paradise Solutions Trust. Ioane does not receive any income in his name. Instead, he is paid in the name of corporate or trust entities. Ioane does not have bank accounts in his own name nor does he have any real property or vehicles in his own name. Ioane has filed numerous bankruptcy petitions, which have all been rejected by the bankruptcy court. A bankruptcy judge in Reno Nevada in 2004 told Michael Ioane not to file any bankruptcy petitions for at least 10 years and ruled that Ioane did not live in the Reno area and this petition was wrongly filed.

34. Ioane has set up an entity called Acacia Corporate Management LLC (Acacia) through Steven Stucker of Carson City, Nevada. Acacia, which is owned by Paradise Solutions Trust and American Federal Trusts, was the entity that "purchased" the properties in Bakersfield from Bakersfield Properties.

35. During the IRS audit Ioane did not cooperate at all with meeting with the IRS agent nor did Ioane provide records as requested by the IRS. An analysis of the various entities' bank accounts controlled by Ioane showed that his personal expenses were paid for by these entities, just the same as Ioane and Booth promote to others.

36. While conducting the IRS audit, Agent Brown, On October 22, 2002 determined that Ioane rented

a residence at 3541 Solano Court, Merced, Ca in 2002.  The property was leased by First

Amendment Publishers, an entity used by Ioane.  The rental was negotiated by Mike and Shelly

Ioane with the owner.  Agent Brown spoke to Blaine Hirschkorn the owner of the Solano Court

Property.  Hirschkorn indicated that one time when he went to the house to check on some repair

work, he noticed that Mike Ioane had converted the living room to an office with a couple of

computers and filing cabinets. Clearly Ioane uses his residence as his office and uses computers.

37. I have reviewed records from IRS agent Brown's audit activity of Ioane and have spoken to him

regarding the audit.  It appears that Ioane is aiding and assisting Booth and other individuals in

concealing their true income and assets from the IRS through layering of trusts and other entities.

38.  Michael Scott Ioane Sr., DOB of ███████, is believed by IRS agent Brown to live in Atwater at

1521 Fruitland Ave, Atwater, California, in Merced County.  A review of records by Agent Brown

shows that Acacia Charitable Foundation purchased the property at 1521 Fruitland in 2003.  A

review of checks from the bank account of Acacia Charitable Foundation show funds used to

repair and improved the property after it was purchased.  In addition, as will be discussed below,

two mail carriers recognized Ioane's photo and identified him as one of the current residents of

1521 Fruitland, Atwater, California

Execution of Search Warrants on Booths' residence and office

39. On March 14, 2006, pursuant to a sealed affidavit, two search warrants were executed in this

investigation at two locations: (1) the Booths personal residence located 5717 Roundup Way,

Bakersfield, CA and (2) Steve Booth's chiropractic offices of San Joaquin Wellness Inc. located at

1927 21st Street, Bakersfield, CA.

40. Various records and evidence of tax violations, including conspiracy to obstruct the IRS and to

evade the payment of the Booths' tax were seized, including documents and records showing

Michael's Ioane's conspiratorial role in aiding and assisting the Booths in obstructing the IRS and

evading the payment of their taxes through the hiding of income and assets through nominee

entities and trusts.

41.  The following records were obtained from the Booths' residence pertaining to Michael Ioane's

assistance and conspiratorial role:

a.  Large manila envelope, (not US postmarked), showing the return address of "Mike

Ioane" (Handwritten) and (stamped) "C/O 855 Jefferson Ave/ PO Box 1253, Redwood

city, CA 94064" "650-771-1506" handwritten; and the handwritten addressed to "Steven

Booth, 5717 Roundup Way, Bakersfield, CA 93306, 661-703-7070" All of the

handwriting on the envelope was in red ink pen and appeared to made by the same

person. Above the Mike Ioane return address was handwritten and then scribbled out in

the same red ink pen and handwriting, was the address "5717 Roundup Way, Bakersfield,

CA 93306". The contents of the envelope were seven pages of papers. The first page had

the same red ink pen stating " F.Y.I." it was a computer generated letter dated February

14, 2006 and address to "Dear James" ( assumed to be James Baker in Texas). The

contents of the letter talk about confirming the minutes and agreements to correctly

reflect the "re-negotiated balance of $300k". (Referring to the false liens of $300,000

placed upon each of the Booths' three properties). Next there are discussions of the rent

contract services with Bakersfield Properties and how the corporation paid $12,000 of

rent to Bakersfield Properties on behalf of SB (Steven Booth). Next there are discussions

of money paid to 21st Century for contract services estimated at "$150K to $200K" , then

stating that "21st Century usually donates this amount to charity". Next there are

accounting directions to change the ledge figures and to prepare tax returns to reflect the

discussion in the letter. The letter concludes, "sincerely Michael". The second page

13

shows this same letter being faxed to James Baker in Texas. The third letter is a fax from James Baker to Michael Ioane dated February 9, 2006. This letter it states in part, " With regards to rent payments, I have no record of any specific payments from the corporations or from Steven booth or Reba Booth to Bakersfield Properties which were designated as rents. I realize from your end of year memo 2004 that they should have been paid". There are copies or two "Over sight Agreements one with 21st Century Management and San Joaquin Wellness Inc dated October 2000; and the second with 21st Century Management and Booth Health Management dated October 2003. (IRS records show 21st Century did not file any tax returns in 2000, 2001 or 2002)

b. A Large manila envelope U.S. postmarked Stockton, dated January 30, 2006 from Ioane's same Redwood City address to Louise Booth. In the envelope was a court document with a post-it note saying, " Louise, I need tax court orders, not District court orders. Mike".

c. Two letters with a post-it note on each, in the same red ink pen Ioane handwriting stating, "Steve, This is updated through the other one away". Both letters were from "Acacia Corporation Management, LLC , 108 E. John St. Carson City, Nevada" and an "s" for a signature in the same red ink pen and handwriting. The letters seem to substantiate rents to be paid Acacia as the (alleged) purchaser of the two properties: 5717 Roundup Way and 1927 21st Street.

d. A large manila envelope from Ioane to Steven Booth with the red ink pen on the cover stating, "Copies for Steve". This was not postmarked or mailed.

e. A large manila envelope from Ioane's Redwood City address to Steven Booth in the same handwriting, US postmarked dated January 16, 2006. The contents of the envelope had 5 stapled sets of papers. On the first set of papers, was a post-it note in the same red

14

U.S. v. Booth,  06/15/09   ER 101

ink handwriting from Ioane stating, "Trash when completed". The papers were a letter

dated February 9, 2006 to " Jonathan Imiola" who has signed as trustee on at least two of

Booths' trust tax returns and other IRS correspondence. The letter discusses rent

payments to Bakersfield Properties that should have been paid by the Booths, the

corporations and Reba Booth (Steve Booth's mother, A large manila envelope

postmarked February 9, 2006 from Stockton, CA (where Ioane mailed the other

envelopes) with Booths name and address as the sending and return address, written in

the same red ink pen handwriting. Inside the envelope, with a post-it note with "F.Y.I."

on it, in the same red ink pen, was a bundle of papers. The papers included a page of

2005 Tax information for Account for Bakersfield Properties, Southern Financial and 21st

Century. Also included where some schedules for the same entities on transactions and

checks written.

f. Two small envelopes to Steven Booth from Ioane's Redwood City address. Two related

folded documents were with the letters. One document was emails between "Mike

Ioane" to Jim Baker printed by Citizen One (appears to be Mike Ioane) discussing the

income and expenses and how figures need to be reallocated. There was a statement of

correcting entries made by SB (Steve Booth) that it" correctly reflects the rent owed to

Bakersfield Properties".

g. A copy of a computer generated letter to James Baker from "Michael" dated February 9,

2006. The letter appears to discuss the calculations of the three loans on Booths'

properties, and the needed calculations on the $500,000 (false) loans from March 2000 to

December 2003. The letter further discusses the rent payments on the properties, and

wanting this information ASAP since "we are in the middle of a three leg transaction"

U.S. v. Booth, 06/15/09   EB-102
2272

and the numbers are needed. Handwritten on the letter in the same handwriting in the same red ink pen is " Steve, F.Y.I.".

h.  A bundle of papers from Acacia Corporation in Carson City, Nevada to the Property Tax Assessor on all three of Booths properties with a post-it note, in the same handwriting saying, "Review then trash".

i.  A one page document, undated, and no listed author.  The document states in part: "These items are for your review and to then be destroyed.  There is a lot more that is being done and I will continue to update you. ( i.e. assignment of rental agreement, care taker agreements, new agreements with the corporation, documenting everything now that the IRS thinks that Acacia is you. I think they are going to have a very hard time."…….. "In any case don't forget to destroy all these extra copies.  The information that relates to you and Louise can stay with you and I have marked those items clearly the rest need to be destroyed after reviewed."  "I still have lots to do to prepare for removing these liens…."

j.  Letters from Michael Ioane's First Amendment Publishers in 1999 where Ioane provides letters to send to the IRS regarding Summons action and freedom of information request, typical of "tax protestor" type tactics and discussions, of which I am familiar.

k.  Letter dated June 22, 1999 from Michael Ioane to Steven & Louise Booth where he forwards IRS tax abatement correspondence regarding Alpha Omega with instructions to sign, date and forward these abatement letters to the Secretary of the Treasury.

l.  A handwritten letter dated April 11, 2002 addressed to 'Mike" in what appears to be Booth's handwriting, as found in their home.  The one page letter refers, in part, to Booth, not being happy to pay Ioane $75 per month per trust for Ioane to create minutes

16

for each of these trusts ( listing Alpha Omega Family Trust, Agape Foundation, Aligned Enterprises and Educational Trust).

m. A billing to "Booth" for services for Agape, BP(Bakersfield Properties), 21st Century, Aligned, Alpha Omega, Southern Financial, and Educational for $1,862.50 marked paid, dated July 10, 2003. The statement was in an envelope to Booth at 5717 Roundup Way, Bakersfield, with Ioane's return address of Acacia Corporation, 801 Woodside Rd., #14-404, Redwood City, CA 94001. A handwritten note on the envelope says, " Pay Mike".

n. A FedEx envelope from Mike Ioane's, 801 Woodside Rd. address dated November 11, 2003 with billings statements under Acacia Corporate Management (Ioane's company) dated November and December 2003 for services for: Educational Trust, Southern Financial, Aligned Enterprises Trust, Alpha Omega Trust-Steve Booth, Agape Foundation, Bakersfield Properties and 21st Century; all invoices showing Booth's residential address of 5717 Roundup Way, Bakersfield, CA. Also was a cove letter dated December 1, 2003 to Steve Booth, from Acacia Corporation Management stating that updated statement for 6 trusts and foundations were included for payment of $3,560 in total due. Directions to Booth that payment for his services was to "our favorite charity The Charitable Scholarship Foundation" and proper credit would be given to each entity for a donation."

o. An email dated December 6, 2006 from Mike Ioane to Jim Baker, with a copy sent to Steven Booth. Ioane tells Baker to keep the box and to pay the bills that still come there and to send the bills for the PO Box rental. Ioane expressed concern about the IRS audit, closing out the entities and completed the projects.

Other Contacts Showing Ioane's connection to Booth

42. On about March 23, 2006 Steven Stucker, an attorney in Nevada was interviewed. Stucker sets up Nevada corporations and LLCs and acts as agent for these companies, plus he provides other services for businesses. Stucker's office address is 108 John Street, Carson City, Nevada. Stucker said he does substantial work for Michael Ioane, who also frequently uses an empty office at his location. Stucker also receives mail for Ioane and his office staff forwards the mail to Ioane's address. Stucker said he set up a corporation called Acacia Corporation Management for Ioane but said Ioane is not the owner, Ioane said the corporation is owned by a trust, which Ioane claims to manage. Stucker has only dealt with Ioane for these various trusts and for Acacia Corporation Management, and its subsequent company called Acacia Corporate Management LLC (Acacia). Stucker said that he performs Nevada resident agent work for Acacia and signs tax returns for Acacia, but all directions and payments for work done for Acacia comes from Ioane. When Stucker was aware of the IRS scheduled interview, Stucker called Ioane concerning the interview, prior to the interview occurring.

43. Stucker stated that he recently handled three property transactions for Acacia in about December 2005: 5717 Roundup Way, Bakersfield, Ca; 1927 21st Street, Bakersfield, Ca; and 5707 Murfield, Bakersfield, Ca. Stucker said that all contracts, letters and information involving the purchase of these three properties, including letters to the IRS regarding liens, where prepared and brought to Stucker by Ioane. Stucker said that he was directed by Ioane to sign as the buyer of the properties, reflecting Stucker as the representative of Acacia. Ioane signed the three real estate contracts as the agent for the seller of the properties, Bakersfield Property. Since Ioane is the person who controls and directs Stucker in all activity regarding Acacia, Stucker agreed that Ioane could have signed as buyer and seller on this transaction due to his relationship in directing all of Acacia's financial affairs. Stucker was shown copies of the recorded Gant Deeds for the sale of the three properties from Bakersfield Properties to Acacia in December 2005, as stated above, filed in the

County Record's office.  These three Deeds showed Jean Liascos, (Louise Booth's sister) signing as trustee for Bakersfield Properties, and not Ioane, yet Stucker did not know who Liascos was and only dealt with Ioane on this transaction.

44. Stucker said that Ioane freely states typical "anti-tax Tax Protestor" rhetoric when talking to Stucker.  Stucker has told me that Ioane does at least some work from his residence , wherever that may be.

45. On about March 30, 2006, Stucker voluntarily made a telephone call to Ioane, which telephone called was recorded as an approved consensual monitored telephone call.  I listened during the monitored telephone call while it was occurring.  I have also reviewed transcripts of the recorded conversation.  Based upon the telephone conversation with Stucker and Ioane the following is provided:

   a.  Ioane said that Acacia bought three pieces of property which the IRS is not too happy about, being the same three pieces of property of Booth's.

   b.  Ioane said that Booth did not own the properties, but Acacia bought the three properties through a valid purchase.  Ioane said there were no IRS liens on the property when Acacia purchased the properties.

   c.  Ioane claimed to Stucker that there was no title insurance used in the December 2005 "sale" since Ioane claimed there was title insurance three years earlier. This statement by Ioane to Stucker was false, since in about 2000, the same three properties were transferred from Booth's trusts (Aligned Enterprises and Alpha Omega) to Bakersfield Properties without any Escrow or Title company involved.

   d.  Ioane told Stucker, concerning the sale of the three properties from Bakersfield Property to Acacia in December 2005, that ,"It's kind of an inside deal, the parties know each other to some degree……".  Concerning the same three properties, Ioane told Stucker,

that there are three separate corporations as part of a "three leg transaction" that want to

buy the properties.

   e.   Ioane told Stucker that Jonathan Imola (allegedly is in the Philippines and is the trustee

        of Bakersfield Property) is appointing Ioane as Power or Attorney to handle Bakersfield

        Properties matters.

   f.   Ioane told Stucker that Ioane was concerned about the arm length transaction.

<u>Summary of Probable Cause for Residence at 1521 Fruitland Avenue, Atwater, CA</u>

46.  On about March 22, 2006, I obtained copies of recorded property documents from the Merced

     County Recorder's office pertaining to 1521 Fruitland Ave., Atwater, CA as follows:

   a.   On about May 19, 2003 (recorded June 9, 2003), per a recorded Grant Deed, the property

        at 1521 Fruitland Ave, Atwater was purchased for about $445,000 by a David & Ester

        Curtis ( David Curtis later signs as trustee for Acacia Charitable Foundation in

        subsequent documents).

   b.   On October 10, 2003 (recorded October 24, 2003) Acacia Charitable Foundation, a

        known entity used by Ioane "purchased" the property for $360,000 from David & Ester

        Curtis using a regular Title Co (Fidelity National Title Company) and Escrow file

        number.

   c.   On January 12, 2004 a Deed of Trust dated December 8, 2003 was recorded on the 1521

        Fruitland property showing Acacia Charitable Foundation borrowed $420,000 from

        Idaho Financial Services, 801 Woodside Road, Suite 14-404, Redwood City, Ca (an

        address used by Michael Ioane) with a David Curtis signing as Trustee of Acacia

        Charitable Foundation.  There are no monthly payments on this alleged note and all

        interest and principle are due and payable in five years.  This loan was not part of the

        initial purchase in 2003.

U.S. v. Booth,  06/15/09   ER 107
2277

47. On about May 12, 2006 I contacted Annie Hailstock, Financial Operations Manager for the City of Atwater to determine the city services at 1521 Fruitland Ave, Atwater, Ca. Hailcock said their records showed, since about June 2003, the occupants of 1521 Fruitland Ave, had requested no water services, no garbage services and no sewer services. Their records showed no name on the 1521 Fruitland property, it was listed as vacant and the property showed no city services to the property.

48. On about May 12, 2006 I drove by the residence at 1521 Fruitland Ave., Atwater, CA. The house was a large single story home, with a nice well kept green yard, and at least four vehicles on the property. The house appeared occupied and not vacant. The vehicle licenses that were observed were as follows plus their registered owner and later checked through DMV records:

    a. ▇▇▇▇▇ California Plate – white dodge 2000 SUV- ; registered owner is Star Leasing Co. C/O Jewish Educational Society, 2724 Orchard Hone Dr., Medford, Oregon. There was no legal owner or lien on the vehicle. A check of Star Leasing at the address of 2724 Orchard Home Dr, Medford Oregon in Nexus Lexus show it to be a single family residence with the following currently associated at the same address: Kimberly Clark- owner, and Acacia Corporate Management Inc, an entity created and used by Ioane.

    b. ▇▇▇▇▇- Oregon Plate – white Toyota 2005, registered owner is Staring Leasing/C/O Jewish Educational Society at 2724 Orchard Home Dr., Medford, Oregon. The purchase of that vehicle was in September 2004 by Star Leasing or Kim Clark at the same address in Medford, Oregon with no loan on the vehicle.

    c. ▇▇▇▇▇ – pick up Truck 1977 Chevrolet- register owner is Sandra Bongiovanni, at 281 E. Bellevue Rd., #45, Atwater, CA, showing the vehicle was purchased in August 2005 using that address.

U.S. v. Booth,   06/15/09   ER-108   2278

d. A Black 2003 GMC Denali, Montana LC# ███████ registered owner is Sara Magoon,

PO Box 1253 Redwood City, Ca with a lien holder of Baylor Trust, PO Box 480, Union

City, CA. ( The address of PO Box 1253, Redwood City, CA is used by Ioane on letters

to and from Booth dated February 2006.)

49. I obtained copies regarding the payment of the Merced County property taxes for 1521 Fruitland

Ave, Atwater, in 2006 and the current summary of the property.  The property indicates that it is

about 2.8 acres.  On about April 4, 2006 property taxes of $2,584.92 were paid by two $1,000

Postal Money orders purchased in Turlock, CA and $584.92 in cash.  I contacted Postal Inspector

Phillip Hirsch in Stockton, CA regarding the two postal money orders and provided copies to him

to locate the purchaser.  Hirsch said that based upon the serial numbers, these two postal money

orders were counterfeit.



22

50.  On about May 22, 2006 I interviewed Ricky Stubbs, a US Postal mail carrier that delivers mail to 1521 Fruitland Ave, Atwater, CA.  Stubbs said he had only been the mail carrier for this route for about three weeks. Stubbs said that he recognized the name Michael Ioane as mail going to that address under that name. Stubbs said that he had recently delivered mail under Michael Ioane and it was returned to him as no one living at that address.  Stubbs said he recognized there was mail coming to some non-profit entity and also Michael Johnson.  Based on this investigation, Michael Ioane is known to use the alias Michael Johnson.  Based on my training and experience is it common for tax protestor to use other names and address to avoid service of liens and other documents from the IRS.

51.  On May 23, 2006 Stubbs contacted the residences at 1521 Fruitland to determine who lived there, as there were numerous names receiving mail.   Initially a female answered the door and said there was a non-profit charity at the house but she could not provide the name of the entity.  Next a male came up to the door, and nudged the female.  The male said he could give a list of the names of the occupants.  He provided three names: Bongiovanni, Michael Johnson and Fierro.  He also said, "we are also a charitable non-profit organization" at the residence.  Stubbs described the male as medium tan,  5'10" - 6'1" , about 220-230 pounds, short black hair-military style haircut, age about 40-45 years old.  Stubbs said he could probably identify the male if shown a photo. Stubbs asked about the name Michael Ioane.  The male said that he had never heard of the name.  They said that they have lived there for about 2 years.

52.  On about May 31, 2006, I interviewed Ricky Stubbs and Diane Dudley, also a US Postal mail carrier.  I showed to Ricky Stubbs the most current California DMV photo of Michael Scott Ioane Sr.  Stubbs confirmed that male at the residence whom he spoke to on May 23, 2006 was the same in the DMV photo, Michael Ioane.

U.S. v. Booth,  06/15/09   ER 110
2280

53. Diane Dudley stated that she had been the prior mail carrier for the route that covered Fruitland and delivered mail at Fruitland, (including 1521 Fruitland) for about 5 years. She left that route about 4 weeks ago. Dudley said that a Morimoto had previously lived in the house and the new owners had taken over the house in about June- Sept 2003, about 2-3 years ago. Dudley said when Morimoto owned the property is was run down and needing repair. Dudley said that she recognized the name Ioane and had delivered mail to an Ashley Ioane, who was a daughter at the residence. Dudley immediately recognized Ashley Ioane from a color California DL photo shown to her of Ashley Ioane. Dudley said that Ashley Ioane received teen girl mail and magazines and mail under that name, and it was never returned. She had seen Ashley Ioane at the residence.

54. I showed to Dudley a color California DL photo of Michael Scott Ioane Sr. Dudley immediately recognized this person as living at 1521 Fruitland Ave, and said that his name was Michael Johnson. I asked Dudley how she knew his name was Michael Johnson. Dudley said that she had inquired of the occupants of 1521 Fruitland Ave, as to who resided there. Ioane had identified himself as Michael Johnson. Johnson had also said that they had a non-profit organization called Acacia Charitable Foundation and Dudley stated that this entity received mail at 1521 Fruitland.

55. Based upon my investigation and the audit activity of IRS Agent Dennis Brown, Michael Ioane does not use any known office or business location to conduct his trust activities, but uses mail drops, PO boxes and an address of Steven Stucker in Carson City Nevada for his business addresses.

**Record Keeping Requirements**

56. Under IRS rules, a person is required to keep and maintain records used to substantiate their filed tax returns and of their business or income generating activity for at least three years.

57. It is also my experience and training that individuals who operate businesses or purported trusts from their home keep business or trust records in their home, make copies of certain records

U.S. v. Booth, 06/15/09   ER 111 2281

provided to their tax preparer, especially when the person has been in the same residence for a few

years. People who conduct business activity who used computers in past years, continue to use

computers in their home for business. They also store business records regarding their trust or

other financial activity, and store records, letters and other business information on their computer.

## Computer

58. It is evident from records taken from the search warrant at Booth's residence that Ioane prepares

documents using a computer and he has used a computer while working out of his residence in the

past.

59. Based upon my knowledge, training and experience, and consultations with other computer IRS

CID Special Agents, whom have had special training in computer searches, I know that computer

data can be stored on a variety of systems and storage devices including hard disk drives, floppy

disks, compact disks, magnetic tapes, and memory chips. I also know that during the search of the

premises, it is not always possible to search computer equipment and storage devices for data for a

number of reasons, as stated later on.

60. Searching computer systems is a highly technical process, which requires specific expertise and

specialized equipment. There are so many types of computer software in use today that it is

impossible to bring to the search site all of the necessary technical manuals and specialized

equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult

with computer personnel who have specific expertise in the type of computer, software application,

or operating system that is being searched.

61. Searching computer systems requires the use of precise, scientific procedures, which are designed

to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted,

or password-protected data. Computer hardware and storage devices may contain "booby traps"

that destroy or alter data if certain procedures are not scrupulously followed. Since computer data

is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled, environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

62. The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises. A single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Storage devices capable of storing fifteen gigabytes of data are now commonplace in desktop computers. Consequently, each non-networked, desktop computer found during a search can easily contain the equivalent of 7.5 million pages of data, which, if printed out, would completely fill a 10' x 12' x 10' room to the ceiling.

63. Computer systems can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography, a computer user can conceal text in an image file, which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband, or instrumentalities of a crime.

U.S. v. Booth, 06/15/09    ER 113
Z283

64.  As set forth above, the actual search of a computer and related software in the controlled

environment of a laboratory is a complicated process that may take in excess of ten days to

complete.  It often takes weeks or months to complete.  Against this background and based on my

training and experience, I hereby request sixty (60) days from the date of seizure to complete the

search under controlled conditions. In order to fully retrieve data from a computer system, the

examiner needs all electronic storage devices as well as the central processing unit (CPU).  As in

this case where the evidence may consist partly of printed documents, the monitor and printer are

also sometimes necessary to show the nature and quality of the graphic images, which the system

could produce.  In addition, the analyst needs all the system software (operating systems or

interfaces, and hardware drivers) and any applications software, which may have been used to

create the data (whether stored on hard drives or on external media). The term "computer", as used

herein, is defined pursuant to Title 18, United States Code, Section 1030(e)(1), as "an electronic,

magnetic, optical, electrochemical, or other high speed data processing device performing logical

or storage functions, and includes any data storage facility or communications facility directly

related to or operating in conjunction with such device."  Computer hardware consists of all

equipment, which can collect, analyze, create, display, convert, store, conceal, or transmit

electronic, magnetic, optical, or similar computer impulses or data.  Hardware includes (but is not

limited to) any data processing devices (such as central processing units, self-contained "laptop" or

"notebook" computers, hand-held electronic organizers, and "personal digital assistants"; internal

and peripheral storage devices (such as fixed disks, external hard disks, tape drives, and other

memory storage devices), and related communications devices such as modems, cables and

connectors, programmable telephone dialing or signaling devices, and electronic tone generating

devices, as well as any device, mechanism or part that can be used to restrict access to computer

hardware such as physical keys, dongles and locks.  As part of his search of the computer system

and peripherals, the computer specialist searching the computer may need to make a mirror image copy of the hard drives, backup media, floppy diskettes, disk carriage, CD-ROMS, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks on which data was stored. A mirror image copy is an exact copy of the storage media. This is necessary to accurately reproduce the documents on the storage devices and to preserve the integrity of the data. The search will then be conducted using the mirror image copy. Permission is requested for the computer specialist to make a mirror image copy of the above storage media and conduct a search of the computer systems, hardware, software and backup media for the specific items described in this Affidavit and Attachment A & B.

65. Based on the above facts and circumstances, I believe there is probable cause that evidence, fruits, instrumentalities, and proceeds of illegal activity in violation of Title 26 U.S.C. § 7212(a) Obstruction or Impeding the IRS, Title 18.U.S.C § 371 Conspiracy to commit offense against the United States, plus Title 18 U.S.C. § 2 - Aiding and Abetting exists at the location of 1521 Fruitland Ave, Atwater, CA.


This affidavit is made to support a Search Warrant for the following one location:


**The residence, garage, trailer and any outbuildings on the property (2.8 acres) at**

**1521 Fruitland Ave. Atwater, Ca of  Michael Ioane & Shelly Olsen-Ioane.**


Such evidence, fruits, instrumentalities, and proceeds of illegal activity to be searched for at the location described above are for the period of time beginning January 1, 1999 to the present, and to be seized if found are more fully described in Attachment A .

U.S. v. Booth,  06/15/09  ER 115
2285

## Search Warrant Requested

Based upon all the forgoing, I respectfully request a search warrant for the one location indicated above, based upon the information as contained in this affidavit.

## Attestation

The above facts are true and correct to the best of my knowledge and belief.

Kent R. Spjute
Special Agent
Internal Revenue Service
Criminal Investigation Division
Fresno, California

Read and Approved
as to form:

Virna Santos
Assistant U.S. Attorney

Subscribed and sworn to before
me this 7 day of June, 2006

LAWRENCE J. O'NEILL
United States Magistrate Judge

29