No. 12-10068

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | D.C. No. 1:09-CR-0142-LJO |
| *Plaintiff-Appellee,* | ) | |
| v. | ) | |
| MICHAEL S. IOANE, | ) | |
| *Defendant-Appellant.* | ) | |
| _____ | ) | |

On Appeal From The United States District Court
For The Eastern District of California
Fresno, California

Hon. Lawrence J. O'Neill
U.S. District Judge

_____

# BRIEF OF APPELLANT

_____

JOHN BALAZS
Attorney At Law
916 Second Street, Second Floor
Sacramento, CA 95814
Telephone:  (916)  447-9299
Facsimile:  (916)  557-1118
John@Balazslaw.com

Attorney for Defendant-Appellant
MICHAEL S. IOANE

# TABLE OF CONTENTS

I.     STATEMENT OF JURISDICTION        1

II.    ISSUES PRESENTED FOR REVIEW      2

     A.    WHETHER THE DISTRICT COURT ERRONEOUSLY DENIED DEFENDANT MICHAEL IOANE'S MOTION TO DISMISS FOR A VIOLATION OF HIS RIGHTS UNDER THE SPEEDY TRIAL ACT.

     B.    WHETHER THE DISTRICT COURT ERRONEOUSLY DENIED IOANE'S MOTION TO SUPPRESS BECAUSE THE WARRANT TO SEARCH HIS HOME WAS FACIALLY OVERBROAD IN VIOLATION OF THE FOURTH AMENDMENT.

     C.    WHETHER THE EVIDENCE IS INSUFFICIENT TO SUSTAIN IOANE'S CONVICTIONS ON COUNTS 5-8 FOR VIOLATING 18 U.S.C. 514(a)(2) BECAUSE THE BILLS OF EXCHANGE IN THOSE COUNTS ARE NOT FICTITIOUS FINANCIAL INSTRUMENTS PURPORTING TO BE "ISSUED UNDER THE AUTHORITY OF THE UNITED STATES."

     D.    WHETHER THE CONSPIRACY CONVICTION MUST BE REVERSED BECAUSE THE COURT'S INSTRUCTIONS CONSTRUCTIVELY AMENDED THE INDICTMENT AND PERMITTED THE JURY TO CONVICT IOANE ON A NON-EXISTENT *PINKERTON* THEORY OF LIABILITY.

     E.    WHETHER THE DISTRICT COURT ERRED IN CALCULATING IOANE'S GUIDELINE LOSS AS $1.3 MILLION RATHER THAN THE $207,310 AMOUNT IN HIS CO-DEFENDANT'S PLEA AGREEMENT AND IN APPLYING AN AGGRAVATING ROLE ENHANCEMENT.

III.   BAIL STATUS                                                          2

IV.   STATEMENT OF THE CASE                                    3

V.    STATEMENT OF FACTS                                        5

    A.   Government's Case-In Chief                          5

        1.   Testimony of IRS agents                        5

        2.   Dr. Vincent Booth's testimony             7

        3.   Other witnesses                                  10

    B.   Defense Case                                           11

VI.   SUMMARY OF ARGUMENT                                  15

VII.  ARGUMENT                                                     17

    A.   The District Court Erroneously Denied Ioane's Motion
       To Dismiss For Violation Of The Speedy Trial Act
       Because The Court Excluded Time For Dr. Booth's Need
       To Prepare For Trial Even After He Had Pled Guilty
       And The Court Ordered Three Other Continuances
       Without Facts Or Findings Justifying An "Ends Of
       Justice" Exclusion.                                    17

        1.   The exclusion of time under the Speedy Trial
           Act based on co-defendant Vincent Booth's
           need to prepare for trial terminated after he
           pled guilty.                                          19

        2.   There were insufficient facts and findings on the
           record to support the conclusion that the ends of
           justice warranted the district court's continuances.   22

**B.**    **The District Court's Erroneous Denial of Ioane's Motion To Suppress Evidence Requires Reversal For A New Trial.**    26

**C.**    **Because The Bills Of Exchange In This Case Are Not Fictitious Financial Instruments Purporting To Be Issued "Under The Authority Of The United States," The Evidence Was Insufficient To Sustain Ioane's Convictions For Violating 18 U.S.C. § 514(a)(2) In Counts 5-8.**    29

**D.**    **The District Court's Jury Instructions Constructively Amended The Conspiracy Charged In Count 1 And Improperly Permitted The Jury To Convict Ioane Of That Conspiracy Under A Non-Existent *Pinkerton* Theory Of Liability.**    32

   **1.**    **The district court's instructions constructively amended the conspiracy charged in count 1.**    32

   **2.**    **The district court erred in instructing the jury that under the *Pinkerton* doctrine, it may convict Ioane of the conspiracy charged in count 1 –rather than a substantive offense committed by a co-conspirator of the conspiracy.**    34

**E.**    **The District Court Erred In Calculating The Tax Loss Under The Sentencing Guidelines At $1.3 Million Instead Of $207,310 And In Applying An Aggravating Role Enhancement.**    36

   **1.**    **The district court erred In finding the tax loss to be $1.3 million rather than $207,310.**    38

   **2.**    **The district court erred in applying a 2-level aggravating role enhancement.**    41

**3.      On remand, the court should reassign this case
        to a different district court judge.**                 44

VIII.  <u>CONCLUSION</u>                                              45

# TABLE OF AUTHORITIES

## CASES:

*Bloate v. United States,*
130 S. Ct. 1345 (2010)                                  17

*Chapman v. California,*
 386 U.S. 18 (1967)                                     28

*Gall v. United States,*
 552 U.S. 38 (2007)                                     37

*In re Winship,*
397 U.S. 358 (1970)                                     36

*Jackson v. Virginia,*
443 U.S. 307 (1979)                                     29

*Pinkerton v. United States,*
328 U.S. 640 (1946)                                     35

*Russell v. Rolfs,*
893 F.2d 1033 (9th Cir. 1990)                           40

*United States v. Alferahin,*
433 F.3d 1148 (9th Cir. 2006)                           36

*United States v. Alvarez-Perez,*
629 F.3d 1053 (9th Cir. 2010)                         18, 24

*United States v. Ameline,*
409 F.3d 1073 (9th Cir. 2005)(en banc)                  39

*United State v. Armstrong,*
619 F.3d 380 (5th Cir. 2010)                            35

*United States v. Benabe,*
654 F.3d 753 (7th Cir. 2011),
*cert. denied sub nom.,* 132 S. Ct. 1986 (2012) ..................... 35

*United States v. Booker,*
543 U.S. 220 (2004) ..................... 36

*United States v. Brandau,*
578 F.3d 1064 (9th Cir. 2009) ..................... 44

*United States v. Butz,*
982 F.2d 1378 (9th Cir. 1993) ..................... 19

*United States v. Carty,*
520 F.3d 984 (9th Cir. 2008) ..................... 37

*United States v. Castillo-Basa,*
483 F.3d 890 (9th Cir. 2007) ..................... 40

*United States v. Clark,*
21 F.3d 831 (9th Cir. 1994) ..................... 26

*United States v. Crozier,*
777 F.2d 1376 (9th Cir. 1985) ..................... 28

*United States v. Forrester,*
512 F.3d 500 (9th Cir. 2008) ..................... 26

*United States v. Gonzalez-Aparicio,*
662 F.3d 419 (9th Cir. 2011) ..................... 35

*United States v. Harper,*
33 F.3d 1143 (9th Cir. 1994) ..................... 43

*United States v. Hoac,*
990 F.2d 1099 (9th Cir. 1993) ..................... 43

*United States v. Holzman,*
871 F.2d 1496 (9th Cir. 1989)                                     26

*United States v. Howick,*
263 F.3d 1056 (9th Cir. 2001)                                   30, 31

*United States v. Jingles*,
682 F.3d 811 (9th Cir. 2012)                                      32, 33

*United States v. Jordan,*
915 F.2d 563 (9th Cir. 1990)                               20, 21, 23

*United States v. Kow,*
58 F.3d 423 (9th Cir. 1995)                                15, 26, 27

*United States v. Lopez-Sandoval,*
146 F.3d 712 (9th Cir. 1998)                                       43

*United States v. Medina,*
524 F.3d 974 (9th Cir. 2008)                                       18

*United States v. Moran,*
493 F.3d 1002 (9th Cir. 2007)                                      35

*United States v. Paul,*
561 F.3d 970 (9th Cir. 2009)                                       43

*United States v. Perez-Revelez,*
715 F.2d 1348 (9th Cir. 1983)                                      18

*United States v. Ponce,*
51 F.3d 820 (9th Cir. 1995)                                        43

*United States v. Rising Sun,*
552 F.3d 989 (9th Cir. 2008)                                       37

*United States v. Robinson,*
920 F.2d 1157 (3rd Cir. 1991)                                      39

*United States v. Salman,*
531 F.3d 1007 (9th Cir. 2008)                                           30, 31, 32

*United States v. Shipsey,*
190 F.3d 1081 (9th Cir. 1999)                                                  36

*United States v. Seideman,*
No. 11-30103, 2012 U.S. App. Lexis 13165 (9th Cir. June 27, 2012)         33

*United States v. Sierra-Penaloza,*
312 Fed.Appx. 869, 2009 U.S. App. Lexis 3348 (9th Cir. 2009)             24

*United States v. Spilotro,*
800 F.2d 959 (9th Cir. 1986)                                               26, 27

*United States v. Springer,*
51 F.3d 861 (9th Cir. 1995)                                                    21

*United States v. Stubbs,*
873 F.2d 210 (9th Cir. 1989)                                                   28

*United States v. Tinkleberg,*
131 S. Ct. 2007 (2011)                                                         17

*United States v. Von Stoll,*
726 F2d 584 (9th Cir. 1984)                                                    32

*United States v. Whitney,*
673 F.3d 965 (9th Cir. 2012)                                               41, 43

*United States v. Williams,*
441 F.3d 716 (9th Cir. 2006)                                                   36

*United States v. Woods,*
335 F.3d 993 (9th Cir. 2003)                                                   43

*Whaley v. Belleque,*
520 F.3d 997 (9th Cir. 2008)                                                   40

*Zedner v. United States,*
547 U.S. 489 (2006)                                        18, 22, 23, 24


STATUTES:

18 U.S.C. § 371                                              3, 14, 30

18 U.S.C. § 514(a)(2)                             3, 14, 15, 28, 29, 30, 31

18 U.S.C. § 3161(c)                                               17

18 U.S.C. § 3161(c)(1)                                            18

18 U.S.C. § 3161(h)(1)                                            20

18 U.S.C. § 3161(h)(7)                             17, 21, 22, 23, 24, 25

18 U.S.C. § 3162(a)                                           18, 21

18 U.S.C. § 3553(a)                                               35

26 U.S.C. § 7201                                                   3


OTHER AUTHORITIES:

U.S. Const. amend IV                                       15, 26, 27

U.S. Const. amend VI                                              34

Fed. Rule Crim. P. 29 (c)                                         29

U.S.S.G. § 2B1.1                                             36, 38

U.S.S.G. § 3B1.1                                         36, 40, 42

U.S.S.G. § 3C1.1                                                      38

Ninth Circuit Model Crim. Jury Instr. 8.21                           33

Ninth Circuit Model Crim. Instr. 8.25                                35

No. 12-10068

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | D.C. No. 1:09-CR-0142-LJO |
| *Plaintiff-Appellee,* | ) | |
| v. | ) | BRIEF OF APPELLANT |
| MICHAEL S. IOANE, | ) | |
| *Defendant-Appellant.* | ) | |
| ——————————————— | ) | |

## I.  STATEMENT OF JURISDICTION

The district court had jurisdiction over this criminal case under 18 U.S.C. § 3231.  On January 30, 2012, the district court sentenced defendant Michael S. Ioane to 108 months imprisonment and three years supervised release.  On February 6, 2012, the court made additional findings regarding sentencing.  The court's judgment was entered on February 7, 2012.  Excerpts of Record (ER) 249-54.  An amended judgment was entered on February 14, 2012.  ER 255-60.

Ioane timely filed a notice of appeal on January 31, 2012, ER 246, and an amended notice of appeal on February 7, 2012.  ER 248; *see* Fed. R. App. P. 4(b)(2) ("A notice of appeal filed after the court announces a decision, sentence, or order–but before the entry of the judgment or order–is treated as filed on the date of and after the entry.").  This Court thus has jurisdiction over Ioane's appeal under 28 U.S.C. § 1291.

## II.  ISSUES PRESENTED FOR REVIEW

A.    WHETHER THE DISTRICT COURT ERRONEOUSLY DENIED
      DEFENDANT MICHAEL IOANE'S MOTION TO DISMISS FOR A
      VIOLATION OF HIS RIGHTS UNDER THE SPEEDY TRIAL ACT.

B.    WHETHER THE DISTRICT COURT ERRONEOUSLY DENIED
      IOANE'S MOTION TO SUPPRESS BECAUSE THE WARRANT TO
      SEARCH HIS HOME WAS FACIALLY OVERBROAD IN VIOLATION
      OF THE FOURTH AMENDMENT.

C.    WHETHER THE EVIDENCE IS INSUFFICIENT TO SUSTAIN IOANE'S
      CONVICTIONS ON COUNTS 5-8 FOR VIOLATING 18 U.S.C.
      § 514(a)(2) BECAUSE THE BILLS OF EXCHANGE IN THOSE COUNTS
      ARE NOT FICTITIOUS FINANCIAL INSTRUMENTS PURPORTING
      TO BE "ISSUED UNDER THE AUTHORITY OF THE UNITED
      STATES."

D.    WHETHER THE CONSPIRACY CONVICTION MUST BE REVERSED
      BECAUSE THE COURT'S INSTRUCTIONS CONSTRUCTIVELY
      AMENDED THE INDICTMENT AND PERMITTED THE JURY TO
      CONVICT IOANE ON A NON-EXISTENT *PINKERTON* THEORY OF
      LIABILITY.

E.    WHETHER THE DISTRICT COURT ERRED IN CALCULATING
      IOANE'S GUIDELINE LOSS AS $1.3 MILLION RATHER THAN THE
      $207,310 AMOUNT IN HIS CO-DEFENDANT'S PLEA AGREEMENT
      AND IN APPLYING AN AGGRAVATING ROLE ENHANCEMENT.


## III.  BAIL STATUS

In an order filed March 20, 2012, this Court granted Ioane's motion for bail

pending appeal.  On April 2, 2012, the district court released Ioane on bail pending

appeal after imposing stringent conditions, including home incarceration,

electronic monitoring, and a bar on employment.

2

IV.  <u>STATEMENT OF THE CASE</u>

In an Indictment filed April 9, 2009, the government charged defendants Vincent Steven Booth, Louise Q. Booth, and Michael S. Ioane with one count of conspiracy to defraud the United States by willfully attempting to evade or defeat an income tax, or the payment thereof, to the Internal Revenue Service in violation of 18 U.S.C. § 371 (count 1).  ER 71-79.  Vincent and Louise Booth, husband and wife, were also charged with three counts of attempting to evade and defeat the payment of income taxes for tax years 1995-97 by presenting documents entitled "Bills of Exchange" in lieu of payment and by concealing and attempting to conceal their assets in violation of 26 U.S.C. § 7201 (counts 2-4).  Vincent Booth and Ioane were also charged with four counts of presenting false or fictitious financial obligations within the United States with the intent to defraud in violation of 18 U.S.C. § 514(a)(2) (counts 5-8).

On August 27, 2009, Ioane moved to suppress evidence on the ground that IRS agents seized evidence on the basis of a facially overbroad search warrant.  ER 267 (Document 47).  On October 8, 2009, the district court denied the motion, in large part, holding the warrant was not overbroad.  Reporter's Transcript (RT), 10/8/09, at 4-7, ER 136-39.

At a number of pretrial hearings, Ioane objected to continuances of the trial sought and granted on behalf of his co-defendants Vincent and Louise Booth.  On July 30, 2010, Vincent Booth pled guilty, pursuant to a plea agreement which contemplated that the government would dismiss all charges against his wife Louise at the time of sentencing.  ER 274 (Dkt. Entry 78); ER 173-86 (Plea Agreement of Vincent Booth, at 9, ¶4(f)).

After other continuances, a jury trial began on the charges against Ioane on

3

September 26, 2011.  On October 3, 2011, the jury returned a verdict of guilty on all counts and the district court remanded Ioane into custody.  On October 5, 2011, the court denied his motion for release pending sentencing.  ER 275 (Dkt. Entry 140).

On November 4, 2011, the district court granted Ioane's renewed motion for release on a bond secured by the equity of three real properties with stringent release conditions, including home incarceration, electronic monitoring, and a *Vaccaro* bond.  ER 275 (Dkt. Entry 148).  Ioane was ordered to appear for sentencing on January 23, 2012.

On November 7, 2011, Ioane filed a motion for judgment of acquittal or, alternatively, a motion for new trial.  ER 275 (Document 150).  At a hearing on January 3, 2012, the court denied Ioane's motion for acquittal and new trial and continued his sentencing hearing to January 30, 2012.  RT, 1/3/12, at 1-19, ER 3-21.

On January 30, 2012, the district court sentenced Ioane to 108 months imprisonment, a 36-month term of supervised release, and $500 in special assessments.  RT, 1/30/12, at 38-39, ER 59-60.  The court remanded Ioane immediately after sentencing.

On February 6, 2012, the district court denied Ioane's motion for bail pending appeal and made additional findings regarding the sentencing guidelines.  ER 275 (Dkt. Entry 193).  On February 27, 2012, the district court sentenced defendant Vincent Booth to probation with a condition that he serve six months in home detention and dismissed the charges against Louise Booth.  ER 279-80 (Dkt. Entry 201, 202).

On March 20, 2012, this Court granted Ioane's motion for bail pending

appeal and remanded for the district court to set appropriate conditions of release. On April 2, 2012, the district court released Ioane on bail pending appeal with extremely restrictive conditions, including home incarceration, electronic monitoring, and a bar on any employment.  ER 282 (Dkt. Entry 229).

## V.  STATEMENT OF FACTS

### A.  Government's Case-In-Chief

#### 1.  Testimony of IRS agents

IRS agent Ed Whittinghill testified as an expert on trusts.  RT 134-36.  He defined how trusts work, their purposes, and explained that a trustee is responsible for filing a tax return for the trust when it has earnings.  RT 138-42.  In a trust, the "trustee" holds the property transferred into the trust by the "grantor" as the "fiduciary" for the "beneficiary" of the trust.  RT 139-40.  Trusts may be created for many legitimate purposes, such as charity or probate.  RT 140-41.  Agent Whittinghill described an "abusive" or "sham" trust as a trust that looks normal on paper, but where the grantor still controls the trust assets and makes all of the trust decisions.  RT 142-43.  When the IRS discovers an abusive trust, it "collapses" the trust and moves the trust assets back to the person who created the trust.  RT 143.

Agent Whittinghill reviewed discovery and various trust documents regarding Dr. Vincent Booth, a chiropractor who owned and operated San Joaquin Wellness and Group in Bakersfield, California.  Agent Whittinghill opined that the various trusts created for Vincent Booth were sham trusts, including the Alpha Omega, Aligned Enterprises, 21st Century Management, Southern Financial, and Bakersfield Properties trusts.  RT 163-64.  He testified that the only apparent purpose of these trusts was to avoid taxes and impede the IRS's ability collect Dr.

5

Booth's assets.  RT 164.

IRS revenue agent Francisco Reyes audits tax returns.  RT 181-82.  He reviewed Dr. Booth's tax returns and the Alpha Omega and Aligned Enterprises trusts.  RT 182.  Agent Reyes sent the Booths two letters stating that they may be using trusts in a tax avoidance scheme.  RT 182-83, 198-204; Gov't Exh. 3b-1. After the second letter dated December 11, 1998, Dr. Booth replied that he would consult a tax professional and get back to agent Reyes.  RT 185.  Agent Reyes sent additional letters to the Booths advising them that he intended to audit their returns and that the IRS believed the Alpha Omega trust was used improperly to avoid taxes.  RT 187.  When the Booths didn't respond to the audit letters, Reyes sent them a summons requesting records.  RT 190.  The Booths did not respond to the summons.  When the IRS had the summons enforced, Dr. Booth was brought to court in custody and made to answer questions.  RT 250-51.

Agent Reyes prepared a report titled "Notice of Deficiency."  A notice of deficiency gives the taxpayers 90 days to respond in tax court.  RT 208-10. Because Reyes could not verify the amount on the Booths' returns, the trusts were disallowed and the report taxed everything on an individual level for the Booths. The total tax calculated in the deficiency notice for tax years 1995, 1996, and 1997 was about $1.6 million.  RT 194-95.

Michael Hoos is an IRS revenue officer who was assigned the job of securing payment from the Booths.  RT 211.  The IRS sent the Booths a "final notice" dated March 6, 2000 advising them that their taxes were not paid, that a total of about $1.9 million was owed, and that the IRS may file a lien on their property.  RT 213-14; Gov't Exh. 3d-4.2.  Afterward, the IRS filed a federal tax lien for $1.85 million at the Kern County Recorder's Office with respect to

properties belonging to the Booths.  RT 214-15; Gov't Exh. 3d-7.1.  In response, the Booths sent a letter to the Kern County clerk stating that the IRS's tax lien is inoperative and threatening a civil action.  RT 215-17; Gov't Exh. 3g-4.1 & 3g-4.2.

The IRS later filed a similar notice of federal tax lien on Acacia Corporate Management, LLC (Acacia).  RT 218-19.  This was a "nominee lien," defined as a lien on property in the name of one entity that actually belongs to a different taxpayer.  RT 218.  In this case, the nominee lien listed a Bakersfield office building containing Dr. Booth's chiropractic practice that purportedly belonged to the Booths, but was held in the name of Acacia.  RT 218-23.  The IRS also recorded another nominee lien on Acacia for a condominium property in Bakersfield where Booth's mother had lived.  RT 223-25; Gov't Exh. 3j-2.7 to 3j-2.14.

### 2.      Dr. Vincent Booth's testimony

Dr. Booth pled guilty to conspiring with Ioane to defraud the government. RT 256, 457-59.  Under his plea agreement, the charges against his wife would be dropped and he would receive up to a 50% sentence reduction.  RT 256, 458, 462; Def. Exh. A (ER 173-86).  In his plea agreement, Dr. Booth and the government agreed to a tax loss under the Sentencing Guidelines of $207,310.  Def. Exh. A, at 9, §4(d); RT 455, ER 219.

Dr. Booth lives in Bakersfield and had been a chiropractor for 29 years.  RT 257.  Up until 1995, he always paid his income taxes.  RT 464-65.  In 1995, Dr. Booth went to a seminar in San Jose hosted by a company called Trust Management Services (TMS) where he met Jim Baker.  RT 258, 465.  The seminar was about trusts and how persons could save taxes and protect assets by using trusts.  RT 262-63.  Dr. Booth didn't think there was anything wrong with using

7

trusts to reduce his taxes.  RT 466.  At the seminar, TMS told him that their trusts arrangements met all the guidelines and passed muster with the IRS.  RT 467.  After the seminar, National Trust Services (NTS) set up three separate trusts for Dr. Booth:  a family trust called Alpha Omega, a business trust, Aligned Enterprises, and a charitable trust, Agape.  RT 264-65.  In all three trusts, Dr. Booth and his wife were the trustees and his children were the beneficiaries.  RT 264-66.  Dr. Booth entered into a contract with TMS to administer the trusts.  RT 266-67.  Dr. Booth also went to other trust events after the initial 1995 seminar, including one in Cancun, Mexico.  RT 483-84.

Dr. Booth received a letter from the IRS dated November 23, 1998.  The letter stated that the IRS believed he may have been using trusts improperly for tax avoidance purposes.  Gov't Exh. 3b-1; RT 268.  Baker told Dr. Booth that the IRS was on a fishing expedition and referred him to Ioane.  RT 270-71.  Dr. Booth testified that he gave the IRS letter to Ioane, who drafted a response.  RT 271-73; Gov't Exh. 3b-2 (response letter).  The IRS sent Dr. Booth additional letters asking for information or records.  RT 275-76; *see* Gov't Exhs. 3c-1.1, 3c-2.1, 3c-3.1.  Dr. Booth responded by asking for more time.  RT 276-77.  Dr. Booth also sent letters to rescind the notice of tax deficiency and requesting abatements to the IRS, which he claimed were drafted by Ioane.  RT 284-88, 295-96.  The IRS did not rescind or abate the tax deficiencies.  Dr. Booth paid Ioane for his advice and work.  RT 299.  Dr. Booth also hired an attorney, Mike Kaia, who informed the IRS that Dr. Booth would "plead the Fifth" to every question.  RT 477-78.

Dr. Booth received a notice of tax due on a federal return for tax year 1995 with a balance due of $520,000.  RT 300; Gov't Exh. 3c-27.  Ioane drafted a response with objections and purportedly advised the Booths to put liens on their

property to protect their equity from the IRS.  RT 301-02.  Dr. Booth also submitted responses to an IRS summons and to a notice of deficiency with advice from Ioane.  RT 304-15.  After receiving a notice from the IRS that his taxes have not been paid and that the IRS would be filing liens, RT 326-32, Dr. Booth's home, his office, and his mother's home were transferred from the Alpha Omega and Aligned trusts to the Bakersfield Properties trust.  RT 333-44.  Dr. Booth then had liens recorded on these properties.  RT 345-47.  Later, after transferring the properties again from Bakersfield Properties into Acacia, Dr. Booth signed a lease agreement to rent his own property from Acacia.  RT 346-48.

The government executed a search warrant at Dr. Booth's home and seized numerous documents.  RT 386.  Dr. Booth identified the four Bill of Exchanges charged in counts 5-8.  RT 427-31; Gov't Exhs. 3i-3.1, 3i-4.1, 3i-5.1 & 3i-6 (ER 208-14).  He testified that he didn't know what the language in the documents meant but that he though they would eliminate his tax debt.  RT 428-29.  He signed and mailed them, purportedly on Ioane's instruction.  RT 429-30.

 In 2005, Dr. Booth received a summons to appear and produce documents.  RT 436-37.  Dr. Booth didn't appear and was arrested.  RT 437-38.  After two weeks in jail, he was deposed and was released.  RT 438.  In 2006-08, Dr. Booth also worked with attorneys on his tax issues and dealings with the government.  RT 527-32.

Dr. Booth testified that he received a letter confirming that Acacia purchased his home and office from the Bakersfield Properties trust.  RT 442-45; Gov't Exh. 3i-15 & 3i-16.  Acacia is a company where Ioane worked.  RT 443.  In 2007, Dr. Booth willingly signed a stipulation in an action to quiet title that signed over his properties to Acacia, purportedly to keep them at arm's length from the IRS and

his creditors.  RT 449-50.  Dr. Booth is in litigation to try to get the properties back.  RT 452.

Dr. Booth's intention was to pay as little as possible to the IRS and he didn't think he did anything wrong.  RT 480-81.  Dr. Booth believed that Ioane was helping him to reduce his tax liability in a legal way.  RT 534.  Dr. Booth thought he was doing the right thing in bringing his wife, friends, and relatives in his matters.  RT 454.  He didn't think he was doing anything wrong in contesting his taxes with the IRS.  RT 456, 512, 534.  After being charged, Dr. Booth hired a forensic CPA, who determined that he owed only $207,000 for tax years 1995-97, not the more than $1 million in the IRS tax deficiency notice.  RT 454-55, 457.

### 3.    Other witnesses

Lorne McCan, Margaret Squires, John Innis, and Jean Liascos each testified that Dr. Booth or his wife asked them to sign paperwork to be trustees for various trusts, but that they never exercised control over any of the assets or acted as actual trustees.   RT 542-74, 614-22.

Matthew Johnson testified as a fraud specialist with the Office of the Controller of the Currency.  RT 660.  He testified that a "Bill of Exchange" is a legitimate financial instrument, typically used in international trade for buying or selling goods overseas.  RT 661.  He opined that the four documents labeled Bills of Exchange in this case are worthless, fictitious financial instruments.  RT 662, 672-75; Gov't Exhs. 3i-3.1, 3i-4.1, 3i-5.1, 3i-6 (ER 208-14).  The U.S. Department of Treasury neither honors nor issues Bills of Exchange.  RT 662.  The parties also stipulated that the four Bills of Exchange and other documents were in fact received by the Internal Revenue Service.  RT 735.

IRS agent Michele Casarez was the lead case agent and testified as an expert

in tax investigations and the tracing of money and assets between trusts and other entities.  RT 683.  A search warrant was executed at Ioane's home on June 8, 2006.  RT 684, 735.  Among the documents seized during the execution of the warrant was a "thick document" called "Taxing Perceptions, Trusts, The Good, The Bad, and The Ugly."  RT 686-87; Gov't Exh. 6a.  The document contained a section entitled "IRS Cautions on Abusive Trusts" and describes abusive trusts and how they work.  RT 688-94; Gov't Exh. 6a; *see also* RT 696-98; Gov't Exh. 6b.  Agent Casarez also reviewed mirror images of hard drives of computers seized from Ioane's residence.  RT 702, 735-36.  She testified that there were numerous unsigned copies of documents on Ioane's computer that were later found at the Booths' residence.  RT 702-07.[1]  She also prepared summary charts of the trusts involved in this case.  RT 707-20; Gov't Exh. 6l and 6m.

### B.    Defense Case

In the defense case, Terri Norgrove testified that she is an independent contractor who worked for attorney Steve Stucker and later for Ioane in record-keeping, mail forwarding, and other business administration matters.  RT 736-37.  Starting in late 2008 or early 2009, Norgrove started talking with Dr. Booth, who was one of Ioane's clients.  RT 738.  Dr. Booth often called and requested information, forwarding mail, drafting documents, and other tasks.  RT 738.  He wanted them to draft particular documents or submitted documents for their

---

[1]    Agent Casarez testified the following documents from Ioane's computer were later found at the Booths' residence:  Gov't Exhs. 3c-6a, 3c-10.2, 3c-10,3, 3c-16.2, 3c-25, 3c-30.2, 3c-31.3 to 3c-31.17, 3d-2.1, 3d.5.1, 3d-6.2, 3d-8.1, 3d-10.3, 3d-10.6, 3d-12.1, 3d-12.2, 3d-13.1 to 3d-13.21, 3d-13a1, 3d-13b1, 3d-14.1, 3d-15, 3d-16.1, 3e-4, 3f-1.1, 3f-1.2, 3f-5.1, 3f-5.3, 3f-6.1, 3g-1, 3g-3, 3g-9, 3g-11.1, 3h-5.1, 3h-5.2, 3h-6.1, 3h-6.2, 3h-14.1 to 3h-14.12, 3i-3.1, 3i-4.1, 3i-5.1, 3i-6, 3i-9, 3i-9.2 to 3i-9.12.  RT 702-06.  And other documents were substantially the same with somewhat different language: Gov't Exhs. 3i-12.1, 2i-13.1, 3i-14.1, 31-15, 3i-16, 3j-1.1, 3j-2.1 to 3j-2.3.  RT 706-07.

review.  RT 739.  From the questions he asked, it was clear that Dr. Booth knew what was in the trusts.  RT 741.  After Dr. Booth and Ioane were indicted, Dr. Booth told her all the time that he and Ioane were not guilty, that they should "hang tough," and that "he didn't understand why all this was happening."  RT 742-43.

Ioane testified that he was 50 years old, a high school graduate, and has been married 25 years with three children.  RT 765-66.  He is a licensed building contractor.  RT 766.  He also works in administering corporations, trusts, and business entities for Acacia Corporate Management, LLC.  RT 766.  Ioane assisted in putting together a book entitled "The Boston Tea Party Book," which dealt with assessments, tax levies, summons, and IRS procedures.  RT 774-75; Def. Exh. G.  Ioane would sometimes get calls from NTS to help people with trusts.  RT 771-72.

Dr. Booth or his accountant, Jim Baker, first contacted Ioane in 1999 after Dr. Booth received a notice from the IRS.  RT 768, 772.  Before Ioane did any work for them, Dr. Booth and his wife signed a retainer agreement in August 1999 that states that Ioane is not an attorney and that Dr. Booth understands that he should seek the services of a professional.  RT 782-83.  Ioane acknowledged preparing letters to the IRS asking for more time so that Dr. Booth could get the records and information he needed from his accountant and bookkeeper.  RT 776-77.  It took several years to get some records from Baker and Dr. Booth ultimately hired a CPA, Clark Hurst.  RT 778.

When Ioane first became involved, Dr. Booth had two trusts and a foundation.  RT 779.  Ioane didn't believe they were operating properly.  RT 779.  When Dr. Booth received a summons from the IRS, Ioane gave his standard advice that Dr. Booth could produce the requested records, challenge the summons, or

12

take the Fifth.  RT 780.  Dr. Booth wanted to fight the IRS and take the Fifth.  RT 780.  While Ioane assisted Dr. Booth in drafting responses to various notices and summons, Dr. Booth would sometimes make changes in the responses.   RT 784.  Ioane also suggested that Dr. Booth change his trusts because there were lots of problems with the trusts set up by NTS.  RT 786.   When Dr. Booth agreed, Ioane helped organize various trusts for Dr. Booth.  RT 786.  Over several years, Dr. Booth paid Ioane between $50-75,000 for his work.  RT 786.

Bakersfield Properties was a trust formed to hold Dr. Booth's house, office building, and a rental property in which his mother lived.  RT 788-89.  It was formed by transferring the assets from Dr. Booth's Alpha Omega and Aligned Enterprises trusts in exchange for stock from Bakersfield Properties.  RT 788-89, 821.  Two other trusts Ioane set up for Dr. Booth were Southern Financial and 21st Century Mortgage.  RT 789-90.  Southern Financial held the deeds of trusts on the three properties and 21st Century Mortgage was a business trust.  RT 790-92.

At the end of 2005, Dr. Booth was involved in an investment with a strip mall and a new office and he continued to have problems with the IRS.  RT 803.  He wanted to sell his properties and Ioane agreed to buy them.  RT 803, 855-56.  Bakersfield Properties sold the three properties to Acacia, which is owned by Ioane and his three adult children.  RT 803, 827-28, 856.  As part of the agreement, Acacia agreed to assume all of the approximately $915,000 in liabilities against the properties.  RT 821-22.  After the exchange, Dr. Booth and his business rented the properties from Acacia.  RT 805-06, 822, 828.

With respect to the Bills of Exchange documents, Dr. Booth and Ioane started sharing information on the internet regarding HJR 192, on which the documents are based.  RT 811.  Ioane researched it and found it compelling at the

13

time.  RT 811-13.  Ioane obtained online the documents Dr. Booth submitted to the IRS.  RT 813.  Each is in a letter form "requesting to discharge [the tax assessment] pursuant to these laws."  RT 814.  None are nor purport to be any kind of U.S. government document.  RT 814.  The documents were never intended to be worth anything of value.  RT 814.  Rather, they were requests addressed "To the Secretary of Treasury" asking that, pursuant to HJR 192 and the laws Ioane had researched, the tax debts against Dr. Booth be discharged.  RT 815, 858-59.  Dr. Booth used the documents Ioane provided and sent them to the IRS.  RT 815.  Ioane acknowledged that in looking at the bills now, they don't make a lot of sense.  RT 858.

Ioane did not intend to violate the law with the Bills of Exchange or the trusts he set up for Dr. Booth.  RT 816, 818-19, 823.  The property transfers were recorded with the County Recorder and the trusts were supposed to file tax returns.  RT 817, 818-19.  Ioane attempted to assist Dr. Booth in dealing with the IRS through the legal process through 2009.  RT 832-33.  Ioane was not trying to assist Dr. Booth in unlawfully evading the payment of taxes.  RT 817.

## VI.  SUMMARY OF ARGUMENT

Defendant Michael Ioane was convicted by jury trial of one count of conspiring with Vincent and Louise Booth, husband and wife, to defraud the United States by willfully attempting to evade or defeat an income tax, or the payment thereof, to the Internal Revenue Service in violation of 18 U.S.C. § 371 and four counts of aiding and abetting the presentation of fictitious financial instruments in violation of 18 U.S.C. § 514(a)(2).  The charges arise out of Ioane's assistance to co-defendant Vincent Booth, a successful chiropractor in Bakersfield,

in administering trusts and in dealing with the IRS.

The district court erred in denying Ioane's motion to dismiss for violation of the Speedy Trial Act (STA). While the court granted an exclusion of time under the STA based on the request of Dr. Booth's attorney for more time to prepare a defense at trial, that exclusion necessarily ended when Dr. Booth pled guilty. Nonetheless, the court improperly continued the exclusion of time for 79 more days *after* Dr. Booth's guilty plea without any basis for doing so under the STA. The district court also erred in excluding additional time in three later orders without facts and findings justifying the exclusions. Therefore, the Court should reverse and remand for an order of dismissal.

Second, the district court erred in denying Ioane's motion to suppress because the warrant authorizing the search of his home was facially overbroad in violation of the Fourth Amendment by purportedly allowing the search and seizure of almost all records of any kind at Ioane's home. *See, e.g., United States v. Kow*, 58 F.3d 423, 426 (9th Cir. 1995). The court's error cannot be deemed harmless because the government presented at trial numerous documents seized from Ioane's home and computer and emphasized the records during closing argument.

At trial, the evidence was insufficient to sustain Ioane's convictions for aiding and abetting Dr. Booth in presenting fictitious financial instruments purporting to be "issued under the authority of the United States" in violation of 18 U.S.C. § 514(a)(2). The four "Bills of Exchange" at issue did not purport to be "issued under the authority of the United States." Although bogus, the documents are in the format of an offer to extinguish a debt addressed to the Secretary of the Treasury. The bills lack any indicia of instruments issued by the United States or any government agency, such as government seals, mottos, signatures, or portraits

of government buildings or officials. As such, the documents do not qualify as fictitious financial instruments "issued under the authority of the United States" and cannot serve as the basis of conviction under § 514(a)(2).

Ioane's conspiracy conviction in count 1 also should be reversed because the district court constructively amended the charge by instructing the jury to determine whether the government proved beyond a reasonable doubt that Ioane conspired to obstruct the lawful functions of the IRS instead of to evade or defeat an income tax or payment to the IRS. The court also improperly instructed the jury that it could convict Ioane of the conspiracy count under a circular *Pinkerton* instruction that properly serves as a basis for liability only for *substantive* offenses committed by co-conspirators that are reasonably foreseeable in furtherance of the conspiracy. Although no objection was raised, count 1 should be reversed for plain error because Ioane's substantial rights were violated by the improper instruction that permitted the jury to convict Ioane on a non-existent theory of liability.

At sentencing, the district court erred in using $1.3 million as the guideline loss amount where the government had agreed in Dr. Booth's plea agreement that the tax loss for the three years in question was only $207,310. As Ioane's convictons were based on aiding and assisting Dr. Booth in evading taxes, the guideline tax loss for Ioane could not have been higher than for Dr. Booth. Under the Sentencing Guidelines and principles of judicial estoppel, the government cannot take inconsistent positions on the guideline loss calculation to provide leniency to its cooperating witness, Dr. Booth, while seeking an enhanced sentence for Ioane who was convicted at trial. Finally, the court also erred in applying a 2-level aggravating role enhancement at Ioane's sentencing. The enhancement did

16

not apply because Ioane did not manage or supervise Dr. Booth. Rather, Dr. Booth hired Ioane to assist him in administering his trusts and dealing with the IRS. Thus, even if Ioane's convictions were upheld, the Court should vacate his sentence and remand for resentencing with a loss amount no more than $207,310 and without an aggravating role enhancement.

## VII.  ARGUMENT

**A.    The District Court Erroneously Denied Ioane's Motion To Dismiss For Violation Of The Speedy Trial Act Because The Court Excluded Time For Dr. Booth's Need To Prepare For Trial Even After He Had Pled Guilty And The Court Ordered Three Other Continuances Without Facts Or Findings Justifying An "Ends Of Justice" Exclusion.**

The Speedy Trial Act (STA) mandates that any criminal defendant be tried within 70 days of the date he is formally charged, or his first court appearance on that charge, whichever occurs later.  18 U.S.C. § 3161(c).  Time may be excluded from the 70-day period in limited, specified circumstances.  Certain exclusions, such as time excluded during the pendency of pretrial motions, are automatic, and do not require the district court to make express findings on the record.  *See United States v. Tinklenberg*, 131 S. Ct. 2007, 2013 (2011); *Bloate v. United States*, 130 S. Ct. 1345, 1353 (2010).  In contrast, there are also discretionary exclusions that require the court to articulate on the record its reasons for finding that a particular continuance is justified.  18 U.S.C. § 3161(h)(7)(A).  Under § 3161(h)(7)(A), no period is excluded under the STA "unless the [district] court makes reasonably explicit findings that demonstrate that the ends of justice served by granting the continuance do, in fact, outweigh the best interests of the public and the defendant in a speedy trial."  *United States v. Perez-Revelez*, 715 F.2d 1348, 1352 (9th Cir. 1983).

17

In Ioane's case, the district court erred in failing to grant Ioane's motion to dismiss for violation of the STA for two reasons. First, the 70-day period had elapsed by the time that Ioane was tried because the exclusion for Dr. Booth's attorney to prepare for trial expired once Dr. Booth pled guilty. In addition, the district court later failed to make sufficient findings to justify excluding STA time in three separate orders. Each error, standing alone, violated Ioane's speedy trial rights and requires reversal for dismissal of the indictment.

The defendant may move to dismiss the indictment for a violation of the STA before trial. *Zedner v. United States*, 547 U.S. 489, 499 (2006). Where the defendant demonstrates a violation of the STA, the district court must dismiss the indictment, either with or without prejudice. 18 U.S.C. § 3162(a)(1); *United States v. Medina*, 524 F.3d 974, 980-81 (9th Cir. 2008). Because Ioane timely filed a meritorious motion to dismiss under the STA, the district court was required to dismiss the indictment. Application of the STA's legal standards is reviewed *de novo*, while the factual findings of the district court are reviewed for clear error. *United States v. Alvarez-Perez*, 629 F.3d 1053, 1056-57 (9th Cir. 2010). "[W]hen a district court makes no findings on the record in support of [an 'ends of justice'] continuance, harmless-error analysis is not appropriate." *Zedner*, 547 U.S. at 509.

**1.    The exclusion of time under the Speedy Trial Act based on co-defendant Vincent Booth's need to prepare for trial necessarily terminated after he pled guilty.**

When the defendant is not brought to trial within the 70-day period, his motion to dismiss must be granted. 18 U.S.C. § 3162(a)(2). The 70-day period begins to run from either the filing date of the information or indictment, or the first appearance in front of a judicial officer after the charge, whichever is later. 18 U.S.C. § 3161(c)(1). An Indictment was returned against Ioane and his co-

defendants, Vincent and Louise Booth, on April 9, 2009. ER 71-79. All three were arraigned on the Indictment and plead not guilty on April 10, 2009. ER 264 (Dkt. Entry 8, 9, & 10). Thus, the 70-day period began to run on April 10, 2009.

In this case, the 70-day period had long expired by the time Ioane's jury trial began on September 26, 2011. Twenty-one days passed--without an exclusion under the STA--before Ioane made his second appearance in court on May 1, 2009. At the May 1, 2009 court appearance, Ioane objected to the request for a continuance made on behalf of one of his co-defendants and requested a speedy trial. RT, 5/1/09, at 4-5. Ioane again objected to a continuance and insisted on a speedy trial at a hearing held on October 8, 2009. RT, 10/8/09, at 9, 10-11, & 13, ER 141, 142-43, & 145. During the same hearing, the court denied a motion to sever, which would have permitted Ioane to have a speedy trial. RT, 10/8/09, at 4, ER 136. At a status conference on December 3, 2009, Ioane again objected to any continuance and demanded a speedy trial. RT, 12/3/09, at 4, ER 150. He made additional objections to his co-defendants request for continuances at hearings on March 4 and June 11, 2010, where he continued to assert his desire for a speedy trial. RT, 6/11/10, at 3; RT, 3/4/10, at 4, ER 159. At each appearance, the district court, over Ioane's objection, granted continuances at the request of his co-defendants, the government, or both. RT, 6/11/10, at 6-7, ER 168-69; RT, 3/4/10, at 4-5, ER 161-62. Because they were joined for trial, the court's exclusion of time for the Booth defendants applied to Ioane as well. *See* 18 U.S.C. § 3161(h)(6); *United States v. Butz*, 982 F.2d 1378, 1381 (9th Cir. 1993) ("an exclusion to one defendant applies to all co-defendants"). Ioane thus does not challenge in this appeal the exclusions of time under the STA for the period between May 1, 2009 and July 30, 2010.

The nature of Ioane's case changed significantly on July 30, 2010, however, when co-defendant Vincent Booth pled guilty with an agreement to cooperate with the government against Ioane.  ER 270 (Dkt. Entry 78).  In the plea agreement, the prosecutor agreed that the charges against Louise Booth (Vincent's wife, and Ioane's only other co-defendant) would be dismissed as long as Dr. Booth continued to cooperate against Ioane.  Plea Agreement of Vincent Booth, filed 7/20/10, ER 173-86, at 9.  As of July 30, 2010, Ioane thus was the only defendant remaining for trial.

During Dr. Booth's change of plea hearing, there was no mention of any exclusion of time; the court apparently assumed that the prior continuance granted on June 11, 2010, over Ioane's objection, remained effective.  But the basis for that continuance terminated once Dr. Booth pled guilty with an agreement that the charges against his wife would be dismissed at sentencing.  Nonetheless, the court continued to exclude time without justification from the date Dr. Booth pled guilty until October 17, 2010, when time was automatically excluded again for the pendency of the government's motion in-limine filed October 18, 2010.  ER 271 (document 81); *see* 18 U.S.C. § 3161(h)(1)(D) (exclusion for "delay resulting from any pretrial motion through the conclusion of the hearing on, or other prompt disposition of, such motion"); *see also United States v. Springer*, 51 F.3d 861, 865 (9th Cir. 1995) (holding that motions in-limine are covered by the STA exclusion for pendency of motions).

In this way, Ioane's case is controlled by *United States v. Jordan*, 915 F.2d 563 (9th Cir. 1990).  In *Jordan*, this Court held that the district court could not rely on a previously-granted "ends-of-justice" continuance to exclude time after severance of the case eliminated the basis for the previous continuance.  *Id.* at 565.

20

The Court found that a continuance, which excluded time under § 3161(h)(7)(B)(ii) for complexity, did not continue to apply "regardless of any changes in circumstance, and without the need for further findings." *Id.*  To hold that one early continuance remained valid throughout the proceedings "could exempt the entire case from the requirements of the Speedy Trial Act altogether, and open the door for wholly unnecessary delays in contravention of the Act's purpose." *Id.* at 565-66.

The excluded time between Dr. Booth's guilty plea and the filing of the government's motion in-limine on October 18 was just such an unnecessary delay prohibited by this Court in *Jordan*.  The district judge had justified excluding time from June 11, 2010 because of Dr. Booth's need to prepare for trial.  That justification for excluding time under the STA ended when Dr. Booth pled guilty on July 30, 2010.  At that time, Ioane was no longer scheduled to go to trial with his co-defendants and, therefore, Ioane's repeated requests for a speedy trial took precedence over the prior ends of justice exclusion for Dr. Booth's need to prepare for trial.

After July 30, 2010, no further time exclusion applied in Ioane's case until October 18, 2010, when the government filed a motion in-limine.  Seventy-nine days had passed under the STA by that date from the time Dr. Booth pled guilty before the motion in-limine was filed.  Adding the 21 days that had elapsed between Ioane's first appearance and the court's first grant of a continuance, a total of 100 days was improperly excluded under the STA.  Because this exceeded the 70-day speedy trial requirement, Ioane is entitled to a dismissal, either with or without prejudice.  18 U.S.C. § 3162(a)(1).

**2.     There were insufficient facts and findings on the record to support the conclusion that the ends of justice warranted the district court's continuances.**

"In ruling on a defendant's motion to dismiss, the court must tally the unexcluded days;" in that tally, the court cannot exclude days for continuances "without on-the-record findings." *Zedner*, 547 U.S. at 507.  The requirement that findings supporting "ends of justice" exclusions be made on the record is contained in the STA itself.  *See* 18 U.S.C. § 3161(h)(7)(A).  The STA provides a non-exclusive list of factors that the district court should address in its on-the-record analysis to determine whether an "ends of justice" exclusion is warranted:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible.
>
> (ii) Whether the case is so unusual or complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
>
> (iii)  Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b) [18 U.S.C. § 3161(b)] or because the facts upon which the grand jury must base its determination are unusual or complex.
>
> (iv)  Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B).

Congress and the Supreme Court have emphasized, respectively, that "[n]o continuance under [§ 3161(h)(7)(A)] shall be granted because of general

congestion of the court's calendar," 18 U.S.C. § 3161(h)(7)(C), and the STA "is not satisfied by the District Court's passing references to the case's complexity in its ruling." *Zedner*, 547 U.S. at 507.  "'[E]nds of justice' exclusions were intended by Congress to be 'rarely used,' . . . the provision is 'not a general exclusion for every delay.'" *Jordan*, 915 F.2d at 565 (citations omitted).  "The government shares the responsibility for the speedy trial enforcement." *Id.* at 566.

In addition to the 97 days that were not excludable under the STA after Dr. Booth pled guilty and before the government filed its motion in-limine, other continuances granted by the district court were based on wholly inadequate findings to warrant exclusions of time under the STA.  In two orders filed November 16 and December 7, 2010, the district court continued the trial dates to January 31, 2011 and April 11, 2011, respectively, and excluded time under the STA to those trial dates pursuant to a stipulation of the parties.  ER 187-192. Those orders, however, did not make any reference to any of the facts or circumstances in Ioane's case.  Stipulation and Order, filed 12/7/10, ER 190-92; Stipulation and Order, filed 11/16/10, ER 187-89.  No reason whatsoever was given by the parties or the court to justify the continuance.  The district court orders also failed to mention any of the enumerated factors from § 3161(h)(7)(B). The orders were entirely lacking in analysis and factual support.  The November 16 order merely stated that time is excluded "pursuant to §§ 3161(h)(8)(A) and 3161(h)(8)(B)(ii)."[2]  Stipulation and Order, filed 11/16/10, at 3, ER 189.  The December 7 order was just as conclusory, and lacked any factual support or

---

[2]      In fact, no such section of the STA currently existed when the orders were issued.  Effective October 13, 2008, the Speedy Trial Act was amended, redesignating former 18 U.S.C. § 3161(h)(8) as 18 U.S.C. § 3161(h)(7).

analysis.  Stipulation and Order, filed 12/7/10, at 3, ER 192.  The court orders
exemplify the "passing references" in ends of justice continuances that the
Supreme Court barred in *Zedner*.  547 U.S. at 507.  Without any factual basis or
analysis in the stipulations, the orders did not properly provide for an exclusion of
time under *Zedner*.  *See United States v. Sierra-Penaloza*, 312 Fed.Appx. 869,
870, 2009 U.S. App. Lexis 3348 (9th Cir. 2009) ("defendants' stipulation to a
continuance cannot satisfy the statutorily required findings of the Speedy Trial
Act," citing *Zedner*) (unpublished decision).  Therefore, the district court
improperly excluded these 146 days (November 16, 2010 to April 10, 2011) in its
November 16 and December 7 orders.

After the December 7 order, the district court neither saw Ioane nor ruled on
any further continuance until a hearing on February 25, 2011, when the trial date
was moved from April 11, 2011 to September 12, 2011.  RT, 2/25/11, ER 193-205.
Although the court accepted Ioane's waiver of his speedy trial rights for that time
period, time cannot be excluded under the STA by a defendant's waiver.  *United
States v. Alvarez-Perez*, 629 F.3d 1053, 1060 (9th Cir. 2010) ("we've previously
held that a defendant cannot 'waive' time under the Speedy Trial Act") (quoting
*United States v. Ramirez-Cortez*, 213 F.3d 1149, 1156 (9th Cir. 2000)).  The
court's continuance did not include sufficient facts and analysis to justify a
5-month "ends of justice" exclusion of time under the STA.  At a minimum, the
court should have recited the particular facts that would justify the lengthy delay
based on the STA factors found in § 3161(h)(7)(B).  The order to exclude time
"without on-the-record findings" rendered the exclusion inoperable.  *Zedner*, 547
U.S. at 507.  Therefore, time was improperly excluded for 140 days from the older
trial date of April 11, 2011 until the newer trial date of September 12, 2011, except

for 15 days where time was automatically excluded because Ioane's motions for bill of particulars and to dismiss were pending.[3]

Finally, the court *sua sponte* continued the trial date from September 12, 2011 to September 26, 2011 based on the unavailability of the court. Document 118, ER 273. Such a reason for a continuance is expressly rejected by the STA. 18 U.S.C. § 3161(h)(7)(C). Therefore, these additional 14 days do not count as excludable time.

In sum, there was a total 400 days for which there was no justifiable time exclusion under the STA. This was either because justification for the exclusion had expired, there were inadequate findings on the record, or there was no attempt to exclude time whatsoever:

1.  April 10, 2009 - April 30, 2009. Arraignment until first continuance granted on May 1, 2009. No exclusion of time.
    **21 days**.

2.  July 31, 2010 - October 17, 2010. Days that were improperly excluded based on co-defendants who were no longer going to trial due to a plea of guilty.
    **79 days**.

3.  November 16, 2010 - January 31, 2011. Days that were excluded as a result of 11/16/10 order without facts or findings required by the STA. ER 187-89.
    **77 days.**

4.  February 1, 2011 - April 10, 2011. Days that were excluded as a result of 12/7/10 order without facts or findings required by the STA. ER 190-92.
    **69 days.**

5.  April 11, 2011 - August 17, 2011 & September 2-12, 2011. Days that

_____

[3]    On August 18, 2011, Ioane filed a motion for bill of particulars and a motion to dismiss for violation of the Speedy Trial Act. ER 273 (documents 112 & 113). The court denied these motions in an order filed September 1, 2011. ER 1-2. Thus, the 15-day period from August 18 - September 1, 2011 was automatically excluded from the STA calculations for the pendency of motions pursuant to 18 U.S.C. §3161(h)(1)(D).

were excluded without adequate court findings justifying an "ends of justice" exclusion.  (August 18, 2011 to September 1, 2012 excluded for pendency of defense motions).  ER 195-203.  **140 days.**

6.     September 13, 2011 - September 26, 2011.  Days that were excluded based on the court's own *sua sponte* motion due to its unavailability.  **14 days.**

**Total: 400 days**

Because Ioane's trial was held more than 70 days after his arraignment without proper exclusions of time, the Court should reverse the denial of his motion to dismiss and remand for dismissal of his Indictment for violation of the Speedy Trial Act.

**B.     The District Court's Erroneous Denial of Ioane's Motion To Suppress Evidence Requires Reversal For A New Trial.**

Before trial, Ioane moved to suppress evidence obtained pursuant to a search warrant, *inter alia*, on the ground that the warrant was facially overbroad in violation of the Fourth Amendment.   *Defendant's Motion to Suppress*, filed 8/27/09 (ER 265, Dkt. Entry 47).  The district court denied the motion at a hearing on October 8, 2009.  RT, 10/8/09, at 4-7, ER 136-39.[4]  This Court reviews motions to suppress, as well as conclusions of law underlying a motion to suppress, de novo.  *United States v. Forrester*, 512 F.3d 500, 506 (9th Cir. 2008).

The Fourth Amendment requires that no warrant shall issue except those "particularly describing the . . . things to be seized."  U.S. Const. Amend. IV.  In determining whether a warrant lacks sufficient specificity, courts must "examine

---

[4]     The motion to suppress was denied by U.S. District Judge Lawrence J. O'Neill.  In doing so, he reviewed a search warrant that he himself had authorized as a magistrate judge before he was appointed to the district court.  It thus wasn't surprising that he did not find that he erred in authorizing an overbroad warrant.

both the warrant's particularity and its breadth." *United States v. Kow*, 58 F.3d 423, 426 (9th Cir. 1995). "The purpose of the particularity requirement is to make general searches impossible*." United States v. Holzman*, 871 F.2d 1496, 1508 (9th Cir. 1989). "This requirement prevents general, exploratory searches and indiscriminate rummaging through a person's belongings." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986). Unless a "search warrant alleges with reasonable particularity the types of items that may be seized," the warrant "cannot provide meaningful guidance to the officer charged with its execution." *United States v. Clark*, 31 F.3d 831, 836 (9th Cir. 1994). The warrant "must set out objective standards by which executing officers can differentiate items subject to seizure from those which are not." *Spilotro*, 800 F.2d at 963.

The warrant to search Ioane's residence in this case is overbroad because it essentially allowed officers to search for and seize almost all records in any form found at Ioane's residence. The warrant failed to restrict government agents in any meaningful way, converting the warrant into the type of general, overbroad warrant prohibited by the Fourth Amendment. Paragraphs 1 through 10 of the search warrant's attachment B, set forth at ER 123-25, authorized the seizure of virtually all of Ioane's personal and business records, including his computers and electronic storage devices, and electronic information stored therein "for the period beginning Jan 1 1999 to the present." ER 123. The conclusion that the warrant in this case is unconstitutionally overbroad follows from a number of cases in this circuit that have invalidated warrants or portions thereof that contain language similar to the warrant used to search Ioane's residence. *See Kow*, 58 F.3d at 426-27; *United States v. Stubbs*, 873 F.2d 210, 211-12 (9th Cir. 1989); *Spilotro*, 800 F.2d at 963-68; *United States v. Crozier*, 777 F.2d 1376, 1381 (9th Cir. 1985).

27

Thus, because the warrant is facially overbroad in violation of the Fourth Amendment, the district court erred in denying Ioane's motion to suppress.

Because substantial evidence from the unlawful search was admitted at trial, the error cannot be deemed harmless.  This Court reviews whether constitutional error was harmless beyond a reasonable doubt, that is, whether "there is a reasonable possibility that the evidence complained of might have contributed to the conviction."  *Chapman v. California*, 386 U.S. 18, 23 (1967).  The government relied heavily at trial on documents seized from Ioane's residence during execution of the search warrant.  During the testimony of an IRS agent, the government admitted a lengthy document seized from Ioane's home that the government contended demonstrated Ioane's intent to defraud.  RT 684-86, ER 221-23 (describing Gov't Exh. 6a as "a thick document" . . . called "Taxing Perceptions, Trusts, The Good, The Bad, and The Ugly");[5] *see also* Gov't Exh. 6b (admitted binder of documents seized from Ioane's residence).  The government also presented testimony that a large number of documents found on Ioane's computer were the same or very similar to those later found at the Booths' house in order to show that Ioane had provided the documents to Booth.  RT 698-707, ER 225-34; Gov't Exhs. 6c-6k.  Finally, the government repeatedly emphasized the evidence seized under the search warrant during its closing argument.  RT 933, ER 242 ("these fake liens came from the defendant.  They were found on his computer."); RT 946, ER 243 ("the documents that Booth sent to the IRS came from the defendant.  You heard testimony.  They were found on his computer."); RT 951, ER 244 ("And you know that the defendant created these [Bills of Exchange] and

---

[5]     Over objection, the court admitted Gov't Exh. 6a as relevant to show Ioane's scienter because that the document contained a section on abusive trusts.  RT 686-87, ER 223-24.

instructed Booth to mail them.  They were found on the defendant's computer.");
RT 966, ER 245 ("if you have any doubt whatsoever about the defendant's
intentions in this case, look at Government's Exhibit 6a.  That was a big thick
document that was titled, 'Taxing Perceptions, Trusts: The Good, The Bad, and
The Ugly.'  That was found at the defendant's home when the IRS went in to
execute the search warrant."); RT 1006, ER 246 (in rebuttal argument, "But the
problem he has, again, are the search warrants that was done in 2006 that grabbed
all the documents that showed you, because it is hard to manipulate around what's
in black and white on paper.").  The court's error in admitting evidence obtained
under a facially overbroad search warrant is thus not harmless beyond a reasonable
doubt.

### C.  Because The Bills Of Exchange In This Case Are Not Fictitious Financial Instruments Purporting To Be Issued "Under The Authority Of The United States," The Evidence Was Insufficient To Sustain Ioane's Convictions For Violating 18 U.S.C. § 514(a)(2) In Counts 5-8.

After the close of the government's evidence, Ioane moved for a judgment
of acquittal on all counts, which the district court denied.  RT 750-52, ER 235-37.
After the verdict and further briefing, the district court denied Ioane's timely
motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(c).
RT, 1/3/12, at 6-19, ER 8-21. The evidence is sufficient to support a conviction if,
viewing the evidence in the light most favorable to the prosecution, any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307 (1979).  This Court reviews
de novo the district court's ruling on a motion for judgment of acquittal.  *United
States v. Salman*, 531 F.3d 1007, 1010 (9th Cir. 2008).

Counts 5 through 8 of the Indictment charged defendants Vincent Booth and

Michael Ioane with presenting false or fictitious financial instruments to the Internal Revenue Service that purported to be actual instruments "issued under the authority of the United States," i.e., four bills of exchange, in violation of 18 U.S.C. § 514(a)(2).  At trial, the government presented evidence Ioane provided the four documents titled "Bill of Exchange" to Dr. Booth, who mailed them to the IRS in Fresno, California.  RT 427-431, ER 215-19; Gov't Trial Exhibits 3i-3.1, 3i-4.1, 3i-5.1, 3i-6, ER 208-14.

Section 514(a)(2) provides:

> Whoever, with the intent to defraud . . . passes, utters, presents, offers, brokers, issues, sells, or attempts or causes the same, or with like intent possesses, within the United States . . . any false or fictitious instrument, document, or other item appearing, representing, purporting, or contriving through scheme or artifice, to be an actual security or other financial instrument issued under the authority of the United States, a foreign government, a State or other political subdivision of the United States, or an organization, shall be guilty of a class B felony.

18 U.S.C. § 514(a)(2).

This Court has held that § 514 "'was intended to criminalize a range of behavior not reached' by the counterfeit statute, 18 U.S.C. § 472." *Salman*, 531 F.3d at 1011 (quoting *United States v. Howick*, 263 F.3d 1056, 1066 (9th Cir. 2001)).  "[A] fictitious obligation is a bogus document contrived to appear to be a financial instrument, where there is in fact no such genuine instrument, and where the fact of the genuine instrument's nonexistence is presumably unknown by, and not revealed to, the intended recipient of the document."  *Id.* (quoting *Howick*, 263 F.3d at 1067).

The bills of exchange on which Ioane's convictions in counts 5 through 8 are based are not covered by § 514(a)(2) because they are not financial instruments purporting to be actual securities or instruments "issued under the authority of the

United States" as required by the statute.  The documents, admitted at trial as Government Exhibits 3i-3.1, 3i-4.1, 3i-5.1, and 3i-6, follow the same format and are the same in all essential aspects.  None purport to be "issued under the authority of the United States."  Each is in the format of a letter with Dr. Booth's address near the upper left corner, addressed "To: Secretary of the Treasury, Department of the Treasury Bank," and signed by co-defendant Vincent Stephen Booth.  *Id.*  The four documents do not contain any government seals, portraits of officials or government buildings, government symbols, nor any mottos of the United States or a U.S. agency.  Nor do they purport to contain any official signature or to be issued by any government agency.  Although clearly bogus, the documents are kin to a private offer to extinguish a debt–not a security or financial instrument purporting to be "issued under the authority of the United States."  As such, none of these documents qualify under the statute as a fictitious financial instrument purporting to be "issued under the authority of the United States."

For these reasons, this case is easily distinguishable from the documents this Court found were covered by § 514 in *Salman* and *Howick*.  In *Salman*, the Court held that two "sight drafts" qualified as fictitious financial instruments under the statute "because they appear to be financial obligations--sight drafts--issued under the authority of the United States."  *Salman*, 531 F.3d at 1012.  But there the sight drafts resembled certified checks *issued by the U.S. Treasury.  Id.* at 1015, App. A & B.  The drafts included the supposed address of the treasury: "United States Treasury, 15 & Pennsylvania Avenue N.E., Washington, D.C. 20220."  *Id.* at 1014 & App. A & B.  The drafts thus clearly purported to be issued under the authority of the United States.  Likewise, in *Howick,* the Court held that fraudulent Federal Reserve notes were sufficiently credible to constitute fictitious obligations under

§ 514.  The Court emphasized that the notes included presidential portraits used on genuine currency, official seals, official signatures, and claimed they were "redeemable in lawful money at the United States Treasury or at any Federal Reserve Bank."  263 F.3d at 1069

Unlike the documents at issue in *Salman* and *Howick*, however, the documents in this case did not purport to be "issued under the authority of the United States."  Because they are not covered by 18 U.S.C. § 514(a)(2), the evidence is insufficient to sustain Ioane's convictions on counts 5 through 8.

**D.     The District Court's Jury Instructions Constructively Amended The Conspiracy Charged In Count 1 And Improperly Permitted The Jury To Convict Ioane Of That Conspiracy Under A Non-Existent *Pinkerton* Theory Of Liability.**

Ioane's conviction on count 1 should be reversed because the district court's jury instructions constituted a constructive amendment of the conspiracy charged in count 1 and impermissibly permitted the jury to convict him on a non-existent *Pinkerton* theory of liability of the conspiracy itself rather than a substantive crime by a co-conspirator.

**1.     The district court's jury instructions constructively amended the conspiracy charged in count 1.**

At trial, the government's case and the court's instructions changed the conspiracy charge from what had been alleged in the indictment in a way that materially prejudiced Ioane, thus requiring that his conspiracy conviction be reversed.  "An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has passed upon them."  *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984); *United States v. Jingles*, 682 F.3d 811, 818 (9th Cir. 2012) ("If the variation in proof results in an infringement of the right to have the grand jury

32

make the charge on its own indictment, we call it a constructive amendment.").  At least where an objection is made, "a constructive amendment requires automatic reversal."  *Jingles*, 682 F.3d at 818.  Because Ioane objected, *see* RT 972-76, this Court reviews whether there was a constructive amendment or material variance of the conspiracy charge de novo.  *United States v. Seideman*, No. 11-30103, 2012 U.S. App. Lexis 13165 (9th Cir. June 27, 2012).

In count one of the Indictment, the grand jury charged that defendants Vincent Booth, Louise Booth, and Michael Ioane "knowingly and intentionally agreed, combined and conspired with each other, and with others both known and unknown to the Grand Jury, to defraud the United States, and a department or agency thereof, by willfully attempting to evade or defeat any income tax, or the payment thereof, due and payable to the Internal Revenue Service" in violation of 18 U.S.C. § 371.  ER 72.

At trial, however, the court instructed the jury that to prove the conspiracy charge, the government must prove beyond a reasonable doubt that "there was an agreement between two or more persons to defraud the United States by obstructing the lawful functions of the Internal Revenue Service by deceitful or dishonest means, as charged in the indictment."  RT 900, ER 238; *see also* Ninth Circuit Model Criminal Jury Instruction 8.21.  RT 900-02, ER 238-40.  This is not the charge in count 1 of the indictment."[6]  The indictment charged that defendants willfully conspired to *evade or attempt to evade an income tax*, or the payment thereof, to the IRS.  The instruction effectively changed and broadened the charge from the one found by the grand jury in a way that materially prejudiced Ioane.  Under the government's evidence and the court's instructions, the jury was asked

---

[6]     The jury was not given a copy of the Indictment.

to determine whether Ioane *obstructed or impeded* the functions of the IRS–not whether Ioane conspired with the Booths to evade or attempt to evade their income tax or payment to the IRS as charged in the indictment. Thus, because the court's instructions constructively amended the charge found by the grand jury, Ioane's conviction on count 1 should be reversed for a new trial.

> **2.    The district court erred in instructing the jury that under the *Pinkerton* doctrine, it may convict Ioane of the conspiracy charged in count 1–rather than a substantive offense committed by a co-conspirator of the conspiracy.**

After instructing the jury on the elements of a conspiracy to defraud the United States, RT 900-02, ER 238-40, the court also erroneously instructed the jury that it may convict Ioane of this *same conspiracy* under the *Pinkerton* doctrine, rather than by determining whether the government had proven each of the elements of the conspiracy offense beyond a reasonable doubt:

> Each member of the conspiracy is responsible for the actions of the other conspirators performing – performed during the course of and in furtherance of the conspiracy. If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members have also, under law, committed a crime.

> Therefore, *you may find the defendant guilty of conspiracy to defraud the government, as charged in Count 1 of the indictment*, if the government proved each of the following elements beyond a reasonable doubt:

> First, that a person named in Count 1 of the indictment committed the crime of conspiracy to defraud the United States, as alleged in that count.

> Second, the person was a member of the conspiracy charged in Count 1 of the indictment.

> Third, the person committed the crime of defrauding the United States, in furtherance of a conspiracy.

> Fourth, the defendant was a member of the same conspiracy at the time the offense charged in Count 1 was committed.

> And, fifth, the offense fell within the scope of the unlawful

34

agreement and could reasonably have been foreseen to be a necessary
or natural consequence of the unlawful agreement.

RT 902-03, ER 239-40 (emphasis added).

"In evaluating jury instructions, [the Court] consider[s] how the jury would
have reasonably understood the challenged instruction in the context of the
instructions as a whole." *United States v. Moran*, 493 F.3d 1002, 1009 (9th Cir.
2007). Based on *Pinkerton v. United States*, 328 U.S. 640 (1946), this standard
instruction generally permits a jury to find a defendant "guilty of a substantive
crime committed by a coconspirator in furtherance of their conspiracy." *Moran*,
493 F.3d at 1009; *see also* Ninth Circuit Model Crim. Instr. 8.25. But here the
*Pinkerton* instruction was improperly used in a circular fashion to permit the jury
to find Ioane guilty of the underlying conspiracy rather than substantive offenses
committed by co-conspirators, such as the offenses charged in counts 5-8.

Although no objection was raised, this instruction is plain error. An error is
reversible under plain error review when the error is plain or "obvious," affected
the defendant's substantial rights, and seriously affected the fairness, integrity, or
public reputation of the judicial proceedings. *United States v. Gonzalez-Aparicio*,
663 F.3d 419, 428 (9th Cir. 2011). It is beyond dispute that "*Pinkerton* does not
define participation in a conspiracy. It confers vicarious liability for acts of co-
conspirators." *United States v. Benabe*, 654 F.3d 753, 777 (7th Cir. 2011), *cert.
denied sub nom.*, 132 S. Ct. 1986 (2012). "*Pinkerton* liability attaches only to
substantive crimes, not to other conspiracies." *United States v. Armstrong*, 619
F.3d 380, 387 (5th Cir. 2010). The error here was obvious.

The error also affected Ioane's substantial rights and seriously affected the
fairness, integrity, and public reputation of the judicial proceedings. The Due
Process Clause prohibits the conviction of any person except upon proof of guilt

beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). "'Where a jury returns a general verdict that is potentially based on a theory that was *legally impermissible or unconstitutional,* the conviction cannot be sustained' because 'jurors, as non-lawyers, cannot be expected to eliminate the legally impermissible option.'" *United States v. Williams*, 441 F.3d 716, 721 (9th Cir. 2006) (emphasis in original) (quoting *United States v. Fulbright*, 105 F.3d 443, 451 (9th Cir. 2007)). This Court has found that the submission of jury instructions that erroneously omitted an essential element of the offense had affected a defendant's substantial rights and warranted reversal for plain error. *United States v. Alferahin*, 433 F.3d 1148 (9th Cir. 2006). The Court's erroneous *Pinkerton* instruction here is confusing and affected Ioane's substantial rights by permitting the jury to convict him of the conspiracy charged in count 1 under a legally-flawed theory. *Cf. United States v. Shipsey*, 190 F.3d 1081, 1087 (9th Cir. 1999) (plain error to instruct jury on a theory not charged in the indictment). For similar reasons, the erroneous instruction here also seriously affected the fairness, integrity, and public reputation of the judicial proceedings. The Court should thus reverse Ioane's conviction on count 1 and remand for a new trial.

### E.    The District Court Erred In Calculating The Tax Loss Under The Sentencing Guidelines At $1.3 Million Instead Of $207,310 And In Applying An Aggravating Role Enhancement.

In *United States v. Booker*, 543 U.S. 220 (2004), the Supreme Court held that a defendant's rights under the Sixth Amendment are violated when a district court imposes a sentence, pursuant to the Sentencing Reform Act and the Sentencing Guidelines, that is greater than the maximum authorized by the facts found by the jury's verdict or admitted by the defendant. *Id.* at 244. To satisfy the

36

Sixth Amendment, the Court severed and excised the Sentencing Reform Act's provisions concerning the mandatory nature of the guidelines and appellate review, thereby making the guidelines "effectively advisory." *Id.* at 245.

After *Booker*, the district judge "should begin all sentencing proceedings by calculating the applicable guideline range." *Gall v. United States*, 552 U.S. 38, 49 (2007). The guideline becomes the "initial benchmark" in determining the appropriate sentence in a given case. *Id.* "After giving both sides the opportunity to argue for whatever sentence they deem appropriate," the sentencing court "should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49-50.

On appeal, this Court reviews whether the district court committed significant procedural error and whether its sentence is "unreasonable" in light of the § 3553(a) factors that guide sentencing. *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). This Court "review[s] a district court's interpretations of the federal Sentencing Guidelines de novo, its factual determinations for clear error, and its application of the Sentencing Guidelines to the facts as it has found them for abuse of discretion." *United States v. Rising Sun*, 522 F.3d 989, 993 (9th Cir. 2008). It would be procedural error for the district court to calculate the guidelines incorrectly, to fail consider the § 3553(a) factors, to choose a sentence based on clearly erroneous facts, or to fail to explain adequately its deviance from the guideline range. *Carty*, 520 F.3d at 993.

In this case, the district court adopted the guideline calculations set forth in the presentence report (PSR).[7] The presentence report grouped the counts of

---

[7]     Pursuant to Ninth Circuit Rule 30-1.10, four copies of the final presentence report along with Ioane's sealed objections to the report with exhibits and the probation officer's response to the objections have been submitted under seal.

convictions and calculated the guideline offense level as follows:

| | |
|---|---|
| Base Offense Level (U.S.S.G. § 2B1.1): | 7 |
| Tax Loss of $1,358,030<br>  (between $1-$2.5 million under U.S.S.G. § 2B1.1(b)(I)) | +16 |
| Offense Involved Sophisticated Means<br>  (U.S.S.G. § 2B1.1(b)(9)(C)) | +2 |
| Leadership Role (U.S.S.G. § 3B1.1(c)) | +2 |
| Obstruction of Justice (U.S.S.G. § 3C1.1) | +2 |
| <u>Total Offense Level</u>: | 29 |

PSR, at 6-7. With a criminal history III and an offense level of 29, the PSR calculated the guideline range as 108-135 months. The district court adopted this guideline range and imposed a sentence at the bottom of the range, or 108 months.

The district court erred in calculating the guideline range in at least two ways. First, the court determined the applicable tax loss to be $1.3 million when the government had agreed that the same tax loss was only $207,310 with respect to the sentencing of co-defendant Vincent Booth. Second, the court erred in applying a 2-level managerial role enhancement where it was undisputed that Ioane did not manage or supervise Dr. Booth, but rather Dr. Booth hired Ioane to assist with certain trust and tax matters.

### 1.    The district court erred in finding the tax loss to be $1.3 million rather than $207,310.

Before Ioane's trial, Dr. Booth pled guilty to count 1 of the Indictment pursuant to a plea agreement in which the parties agreed that the tax loss under the Sentencing Guidelines was $207,310. ER 173-86. Nonetheless, the presentence report recommended a tax loss under the guidelines for Ioane of $1,358,030. PSR, at 6, ¶13. In his written objections, Ioane argued the guideline loss should be the same for both he and Dr. Booth and, alternatively, requested an evidentiary hearing

to establish the guideline loss.  Defendant's *Sealed* Objections to the Presentence

Investigation Report, at 2-4; RT, 1/30/12, at 4-13, ER 25-34.  In response, the

probation officer explained:

> Loss in this matter was computed by adding Booth's tax obligations
> for the tax period ending 12/31/1995 ($322,879), 12/31/1996
> ($332,737), and ending 12/31/1997 ($702,414).  When added
> together, the loss totals $1,358,030 and represents an amount for
> which both defendants are responsible pursuant to relevant conduct
> (USCG 1B1.3).  The loss figure does not include taxes and penalties
> imposed by the IRS as such amounts are not allowable pursuant to
> guideline application.  Booth was provided the benefit of a lower loss
> accountability as part of accepting a plea agreement.

Memorandum, Response to Objections, dated 12/29/11, at 2.  At sentencing, the

district court adopted the $1,358,030 figure in the PSR as the appropriate guideline

loss under U.S.S.G. § 2B1.1.  RT, 1/30/12, at 3-4, ER 24-25.[8]  The government

bears the burden of proving the factual predicates for enhancements under the

Sentencing Guidelines, such as the amount of loss and whether an aggravating role

adjustment applies.  *United States v. Ameline*, 409 F.3d 1073, 1085-86 (9th Cir.

2005) (en banc).

The $1,358,030 guideline tax loss was based entirely on a "Notice of

Deficiency, which the IRS sent to the Booths in 1999.  *See* Gov't Exh. 3c-14.1 &

3c-14.2, ER 206-07.  A "Notice of Deficiency," however, does not constitute tax

loss.  It is a "ticket to the Court" that gives the taxpayer 90 days in which to file a

redetermination of the initial deficiency determination.  *United States v. Robinson*,

920 F.2d 1157, 1158 (3rd Cir. 1991).  In many cases, like this one, the actual tax

due will be substantially lower after the taxpayer establishes legitimate business

expenses and other deductions that reduce the final tax owed.  Here, the Booths

---

[8]     The district court determined Ioane's applicable sentencing guidelines at the
start of the sentencing hearing before hearing from his counsel.  RT, 1/30/12, at 3-
4, ER 24-25.  This was also procedural error.

provided the government with an analysis by a CPA that demonstrated that the actual tax owed for the three years in questions was only $207,310.  RT 455, ER 219, Def. Trial Exh. A, ER 173-86.  The government stipulated that this is the appropriate guideline "tax loss" in its plea agreement with Dr. Booth.  Vincent Booth Plea Agreement, filed 7/20/10 (document 76), at 9, ¶4(c),  ER 181.  The same total should have been used to calculate Ioane's guideline loss.

The district court erred in finding the applicable tax loss for Ioane's guideline scoring to be $1,358,030.  Evidence at trial demonstrated the actual loss was only $207,310.  The government is barred from taking a different position at Ioane's sentencing than it did in Dr. Booth's plea agreement.  "Judicial estoppel is most commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one."  *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990); *United States v. Castillo-Basa*, 483 F.3d 890, 898 n.5 (9th Cir. 2007) (judicial estoppel "precludes a party from taking a position in a legal proceeding that directly contradicts an earlier position it took in the same or earlier proceeding"); *Whaley v. Belleque*, 520 F.3d 997 (9th Cir. 2008) (in applying judicial estoppel against the government, court defines the doctrine as "bar[ring] a party from taking inconsistent positions in the same litigation").  While Dr. Booth's sentence may properly differ from Ioane's based on any number of factors (e.g., acceptance of responsibility, cooperation, etc.),[9] *the guideline tax loss was the same for Dr. Booth and Ioane*.  Ioane was convicted of conspiring with and assisting Dr. Booth with certain trusts and tax matters.  Dr. Booth's tax loss for the years covered by

---

[9]     Dr. Booth was ultimately sentenced to probation and 6 months home detention.  ER 278 (dkt entry 201).

40

the Indictment could not have been greater for Ioane than for Dr. Booth. Thus, the Court should vacate Ioane's sentence and remand for resentencing with a guideline "loss" figure not greater than $207,310.

Alternatively, even if the government is not estopped from taking a different position on tax loss than it did in Dr. Booth's plea agreement, the district court still erred in failing to grant Ioane's request for an evidentiary hearing to establish the appropriate guideline tax loss. The determination of what taxes Dr. Booth owed for years 1995-97 would necessarily be based on financial records within Dr. Booth's control. Ioane was entitled to the forensic accounting analysis that Dr. Booth's counsel submitted to the government. Ioane should have been able to present this and any other available evidence at an evidentiary hearing before the court determined the tax loss to apply to his guideline score. Because the district court denied Ioane's request for an evidentiary hearing, the Court should vacate his sentence and remand for an evidentiary hearing on the appropriate loss under the guidelines even if the government were not barred from arguing for a higher tax loss than it agreed to in Dr. Booth's plea agreement.

### 2. The district court erred in applying a 2-level aggravating role enhancement.

Under U.S.S.G. § 3B1.1(c), a 2-level role enhancement applies "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c). A district court may not apply this enhancement unless "there is 'evidence that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime.'" *United States v. Whitney*, 673 F.3d 965, 975 (9th Cir. 2012) (quoting *United States v. Ingram*, 486 F.3d 1068, 1074 (9th Cir. 2007)). Whether the evidence supports the conclusion that the defendant

exercised the necessary level of control to warrant the enhancement is reviewed for clear error. *Id.*

In the presentence report, the probation officer justified applying the leadership role enhancement as follows:

> In view of the defendant's ongoing coaching, providing instruction, and providing the necessary false documents to others involved as means to commit tax evasion, the defendant's role is viewed as one of leadership. He is best described as the "go to guy" in the conspiracy.

PSR, at 6, ¶15.

Ioane objected to the leadership role enhancement in written objections to the presentence report and again at the sentencing hearing. Defendant's *Sealed Objections to Presentence Report*, at 7-9; RT, 1/30/12, at 14, ER 35. At the sentencing hearing, the district court overruled Ioane's objection without making any findings as to why the enhancement applied. RT, 1/30/12, at 14-15, ER 35-36.[10] At a post-sentencing hearing, the court explained that "Dr. Booth hired the defendant based on his knowledge and wisdom and competence and experience" and that "the defendant advised Dr. Booth to have others sign trust agreements, notes and contracts and how to do them and where to do them and what to do with them once it was accomplished." RT, 2/6/12, at 7-8, ER 68-69.

The district court erred in finding that Ioane qualified for a leadership role enhancement because there was no evidence that Ioane exercised control over or acted in a supervisory or managerial role over Dr. Booth. The presentence report simply indicates that Ioane provided instruction, coaching, and false documents to Dr. Booth. It does not refer to any facts showing that Ioane exercised control over

---

[10]     Recognizing the inadequacy of his findings at sentencing, the district court purported to make additional findings to Ioane's objections a week after the sentencing hearing during a hearing on Ioane's motion for bail pending appeal. RT, 2/6/12, at 3, ER 64.

Dr. Booth.  In fact, while it is undisputed that Dr. Booth hired Ioane to assist with Dr. Booth's trusts and IRS matters, Dr. Booth at all times maintained control and decision making authority.  "[W]ithout a showing that the defendant had control over others, even a defendant with an important role in an offense cannot be deemed a manager."  *United States v. Lopez-Sandoval*, 146 F.3d 712, 717 (9th Cir. 1998) (quoting *United States v. Ramos-Oseguera*, 120 F.3d 1028, 1038 (9th Cir. 1997)); *accord United States v. Woods*, 335 F.3d 993, 1101 (9th Cir. 2003) ("the record does not indicate that Woods managed or supervised any closer.  The only activity the government identified . . . was that Woods referred customers back to closers . . . .  This activity was not managerial or supervisory in nature"); *United States v. Ponce*, 51 F.3d 820, 827 (9th Cir. 1995) (because "the record is devoid of evidence that Monroy supervised or otherwise exercised control over other participants in the conspiracy," "[t]here is no basis for the three-level enhancement for Monroy's role in the offense"); *United States v. Harper*, 33 F.3d 1143, 1150 (9th Cir. 1994)*; Hoac*, 990 F.2d 1099, 1109 (9th Cir. 1993) ("Because no evidence indicated that Chan exercised control over other defendants or was responsible for organizing them, . . . [we] hold that the district court's finding that Chan was an 'organizer, leader, manager, or supervisor' was clearly erroneous").

As a result, this case is analogous to this Court's decision in *Whitney*, a tax fraud case, where the Court reversed the application of a 2-level leadership role enhancement.  The Court explained that "[a]lthough the information and tax forms Whitney provided to [a co-conspirator] were undoubtedly integral to the completion of the charged conspiracy, the centrality of Whitney's role is not relevant to the imposition of the role enhancement."  673 F.3d at 976.  Likewise, in this case, the court's conclusion that Ioane played an integral role in providing his

expertise, knowledge, and assistance to Dr. Booth does not justify imposing the enhancement absent evidence that Ioane exercised control over Dr. Booth. Because the facts do not show that Ioane exercised such control, the Court should vacate Ioane's sentence and remand for resentencing without the 2-level role enhancement under U.S.S.G. § 3B1.1(c).

### 3. On remand, the court should reassign this case to a different district court judge.

The Court should also remand this case to a different district judge. In determining whether remand to a different judge is appropriate, this Court considers: (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. *United States v. Paul*, 561 F.3d 970, 975 (9th Cir. 2009). Even where there is no actual bias by the judge, recusal is appropriate where the judge's impartiality "might reasonably be questioned." *United States v. Brandau*, 578 F.3d 1064, 1070 (9th Cir. 2009) (recusing all Eastern District judges and remanding to an out-of-district judge to hold an evidentiary hearing regarding the Eastern District's policy of shackling defendants at their initial court appearances).

In this case, the district court determined Ioane's applicable sentencing guideline range to be 108-135 months at the start of his sentencing hearing before hearing any arguments from defense counsel. RT, 1/30/12, at 3-4, ER 24-25. Although defense counsel later made some arguments regarding the Sentencing Guidelines, the district court neither ruled nor made any findings with respect to

44

Ioane's objections to the presentence report.  A week later, at a hearing on Ioane's motion for bail pending appeal, the district judge made purported "nunc pro tunc" guideline sentencing findings that the judge indicated he would make on remand if Ioane's sentence were reversed on appeal for further findings.  RT, 2/6/12, at 3-4, ER 64-65.  This indicates that the district judge unfairly prejudged the sentencing guidelines issues in this case and would have a hard time putting his prior views aside on remand.  In these circumstances, remand to a different district judge is appropriate because the court's impartiality might reasonably be questioned on remand.

## III.  CONCLUSION

For these reasons, this Court should vacate Ioane's convictions and remand for entry of a judgment of acquittal on counts 5-8 and for dismissal of the Indictment against Ioane for violation of the Speedy Trial Act.  Alternatively, the Court should reverse and remand for a new trial because the court admitted substantial evidence obtained from a facially overbroad search warrant in violation of the Fourth Amendment.  Moreover, Ioane's conviction on count 1 is invalid because the court's instructions constructively amended the charge and the jury was instructed that it could convict Ioane under an improper *Pinkerton* theory of liability.  Finally, even if Ioane's convictions could stand, the Court should vacate his sentence and remand for resentencing.

Dated: August 24, 2012          Respectfully submitted,


/s/ John Balazs
JOHN BALAZS
Attorney for Defendant-Appellant
MICHAEL S. IOANE

45

No. 12-10068

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES,                    )
                                  )
    *Plaintiff-Appellee*,          )    D.C. No. 01:09-CR-0142-LJO
                                  )
    v.                            )
                                  )
MICHAEL S. IOANE,                 )
                                  )
    *Defendant-Appellant*.         )
_____ )


BRIEF FORMAT CERTIFICATION PURSUANT
TO CIRCUIT RULE 32(a)(7)(C)
_____

    Pursuant to Ninth Circuit rule 32(a)(7)(C), the attached Brief of Appellant is proportionally spaced, times new roman 14-point font, and contains 13,990 words.

    Dated:  August 24, 2012.


                /s/ John Balazs_____
                JOHN BALAZS

                Attorney for Defendant-Appellant
                MICHAEL S. IOANE

## CERTIFICATE OF RELATED CASES

Counsel is unaware of any case that would be deemed related to this appeal under Ninth Circuit Rule 28-2.6.

Dated: August 24, 2012

/s/ John Balazs

John Balazs

Attorney for Defendant-Appellant
MICHAEL S. IOANE

| 9th Circuit Case Number(s) | 12-10068 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Aug 24, 2012 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | /s/ John Balazs

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)