1

2

3

4

5                     UNITED STATES DISTRICT COURT

6                     EASTERN DISTRICT OF CALIFORNIA

7

8    **MICHAEL IOANE, et al,**                    **CASE NO. 1:07-CV-0620 AWI GSA**

9             **Plaintiffs**                      **ORDER RE: MOTION FOR SUMMARY**
                                                  **ADJUDICATION**
10           **v.**

11   **KENT SPJUTE, et al,**

12            **Defendants**                      **(Doc. 248)**

13

14                              **I. History**

15         The current Plaintiffs are Michael Ioane Sr. and Shelly Ioane who lived at 1521 Fruitland

16   Ave., Atwater, CA.  They are a married couple involved in tax disputes with United States.

17   Current Defendants Kent Spjute, Jean Nole, Jeff Hodges, Brian Applegate, and Michelle Casarez

18   are Internal Revenue Service agents ("Federal Agents").  Based on the affidavit of Kent Spjute,

19   the United States was able to obtain a search warrant for Plaintiffs' residence.  The search was

20   carried out by the Federal Agents on June 8, 2006.  This search forms the basis for the claims in

21   this suit.

22         Michael Ioane Sr. and Shelly Ioane, together with former plaintiffs Glen Halliday, Ashley

23   Ioane, and Michael Ioane Jr., filed suit against the Federal Agents and the United States on April

24   20, 2007 and a First Amended Complaint shortly thereafter. Docs. 1 and 39.  The case was stayed

25   pending resolution of a criminal case against Michael Ioane Sr. for tax fraud conspiracy, based in

26   part on the evidence seized during the search. Crim. Case. No. 09-0142 LJO.  Michael Ioane Sr.

27   was convicted on October 3, 2011 after a jury trial.  He appealed the conviction, but it was

28   affirmed.  Michael Ioane Sr. has filed a habeas corpus petition under 28 U.S.C. § 2255.  In the

1   meantime, the stay was lifted in this case. Doc. 107.

2        The latest complaint is the Second Amended Complaint ("SAC") that listed six causes of

3   action claims: (1) unreasonable search and seizure, (2) excessive force, (3) First Amendment, (4)

4   retaliation, (5) supervisor liability, and (6) unauthorized disclosure of tax information. Doc. 61.

5   Defendants filed a motion to dismiss. Doc. 132.  The motion was granted in part and denied in

6   part; the only remaining claim in this suit is the second cause of action, Fourth Amendment

7   excessive force and violation of bodily privacy by Plaintiffs against Federal Agents. Doc. 163.

8   The claims of Glen Halliday, Ashley Ioane, and Michael Ioane Jr. were dismissed; they are no

9   longer active plaintiffs.  The claims against the United States were also dismissed; it is no longer

10  an active defendant.

11        Defendants have filed a motion for partial summary adjudication. Doc. 248.  Plaintiffs

12  oppose the motion. Doc. 252.  The matter was taken under submission without oral argument.

13

14                              **II. Legal Standards**

15        Summary judgment is appropriate when it is demonstrated that there exists no genuine

16  issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

17  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v.

18  American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary

19  judgment bears the initial burden of informing the court of the basis for its motion and of

20  identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an

21  absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);

22  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it

23  might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby,

24  Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings

25  Assn, 322 F.3d 1039, 1046 (9th Cir. 2002).  A dispute is "genuine" as to a material fact if there is

26  sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson v.

27  Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Long v. County of Los Angeles, 442 F.3d 1178,

28  1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008).  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Juell v. Forest Pharms., Inc., 456 F.Supp.2d 1141, 1149 (E.D. Cal. 2006); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004).  "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  Further, a "motion for summary judgment may not be defeated ...by evidence that is 'merely colorable' or 'is not significantly

probative.'" <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>Hardage v. CBS Broad. Inc.</u>, 427 F.3d 1177, 1183 (9th Cir. 2006).  Additionally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. See <u>Southern Cal. Gas Co. v. City of Santa Ana</u>, 336 F.3d 885, 889 (9th Cir. 2003).  If the non-moving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. See <u>Nissan Fire & Marine Ins. Co. v. Fritz Companies</u>, 210 F.3d 1099, 1103 (9th Cir. 2000).

### III. Statement of Material Facts

Defendants filed a statement of undisputed facts. Doc. 248-1.  Plaintiffs filed an opposition to the motion (Doc. 252), but no direct response to Defendants' statement of facts.

1. During June of 2006, Kent Spjute was a duly a commissioned Special Agent for the Internal Revenue Service - Criminal Investigation, assigned to the criminal investigation of Michael Scott Ioane, Sr. He is currently retired from this post. *See* Declaration of Former Special Agent Kent R. Spjute ("Spjute Decl."), ¶1. Kent Spjute's last assignment was working as an IRS Special Agent in Fresno, California. While working there, he coordinated the criminal investigation of V. Steven Booth and Louise Q. Booth, which includes Michael Scott Ioane, Sr. Spjute Decl. ¶4.

2. On June 8, 2006, Former Special Agent Kent Spjute was part of the team that helped execute a search warrant at 1521 Fruitland Avenue, Atwater, California; the residence of Michael Scott Ioane, Sr. ("the Ioane residence"). Spjute Decl. ¶5.

3. Only Michael Ioane, Sr. and Shelley Ioane were present at the residence. See Spjute Decl. ¶6.

4. Defendant Former Special Agent Kent Spjute knocked on Plaintiffs' door and was met by Mr.

Ioane. At that time, other agents performed a protective sweep of the residence. See Declaration of Lauren M. Castaldi ("Castaldi Decl."), ¶ 12, Ex. 10 at 29:1-4.

5. As is standard procedure during the execution of a search warrant, Former Special Agent Kent Spjute carried a service weapon, a Glock semi-automatic handgun, issued by the Internal Revenue Service - Criminal Investigation. *See* Spjute Decl. ¶7. Former Special Agent Kent Spjute never removed his service weapons from his holsters. *See* Spjute Decl. ¶7. Plaintiff Michael Ioane testified that "No, I do not remember seeing Kent have a gun out." *See* Castaldi Decl. ¶ 12, Ex. 10 at 69:9-11.

6. Defendant Former Special Agent Kent Spjute was still in the presence of Plaintiff Michael Ioane when Plaintiff Shelly Ioane began to scream – purportedly because a gun was being pointed at her. *See* Castaldi Decl. ¶ 12, Ex. 10 at 30:17-31:18.

7. Special Agent Michele Casarez did not participate in the execution of the search warrant on the residence at the Ioane residence. *See* Declaration of Special Agent Michele Casarez ("Casarez Decl.") ¶4. On the day the search warrant was executed, June 8, 2006, Special Agent Casarez was assigned to another case and out of town. *Id.*, ¶4, Ex. 1.

8. Plaintiff Michael Ioane does not recall if Defendant Special Agent Michele Casarez was present during the search, but he said if she was, then he thinks she was one of the agents that searched his barn. *See* Castaldi Decl. ¶ 12, Ex. 10 at 72:17-73:1. He also cannot remember if she pointed a weapon at him. *See* Castaldi Decl. ¶ 12, Ex. 10 at 74:23-75:3.

9. Plaintiff Shelly Ioane alleges that only men pointed weapons at her, not any female agents. *See* Castaldi Decl. ¶ 13, Ex. 11 at 30:1-4.

10. Plaintiff Shelly Ioane denied that Special Agent Casarez was the officer that escorted her to the

restroom. *See* Castaldi Decl. ¶ 13, Ex. 11 at 97:19-98:17.

11. Plaintiff Michael Ioane testified that some clients stopped working with him because he had issues with the IRS. *See* Castaldi Decl. ¶ 12, Ex. 10 at 80:5-17; 82:6-14. Plaintiff Michael Ioane also stated that his economic situation was worse after he was indicted. *See* Castaldi Decl. ¶ 12, Ex. 10 at 83:12-18. He also stated that he could not perform his work because the IRS had seized many of his clients' records. *See* Castaldi Decl. ¶ 12, Ex. 10 at 84:14-22.

12. Plaintiff Shelly Ioane testified that she is still employed at the same company she worked at when the search warrant was executed and that she makes the same salary as she did before the search of her house, even if her work product has changed over time. *See* Castaldi Decl. ¶ 13, Ex. 11 at 77:1-12.

13. The Ioanes filed the Second Amended Complaint for Damages for Constitutional Violations and Declaratory and Injunctive Relief. *See* Docket No. 64. After the United States and the Federal Defendants filed a Motion to Dismiss, the Court found that Plaintiffs could only proceed with their claim for excessive force and violation of bodily privacy. *See* Docket No. 163.

14. Plaintiffs made their Initial Disclosures pursuant to Fed. R. Civ. P. on January 7, 2014. *See* Castaldi Decl. ¶ 9, Ex. 8. They amended their disclosures on January 27, 2014. *See* Castaldi Decl. ¶ 10, Ex. 9. These disclosures do not include any damages calculation. Plaintiffs did not make any expert disclosures. *See* Castaldi Decl. ¶ 11.

15. On February 20, 2014, the Federal Defendants served Interrogatories and Request for Production on Plaintiff Shelly Ioane. *See* Castaldi Decl. ¶¶ 2, 4, Exs. 1, 3.

16. On February 21, 2014, the Federal Defendants served Interrogatories and Request for Production on Plaintiff Michael Ioane. *See* Castaldi Decl. ¶¶ 3, 4, Exs. 2, 4.

17. Both Plaintiffs allege identical "injuries" in their Interrogatory responses:

> 1) mental anguish and suffering, 2) pain and suffering from physical injury caused by the trauma, 3) emotional distress; such as anxiety, depression, 4) loss of enjoyment of life 4) loss of consortium, (husband and wife) 5) loss of potency due to drugs required to take, 6) traumatic neurosis, 7) weight gain, 8) high blood pressure, 9) loss of sleep, 10) shock and fear of being murdered, 11) shock and fear of being shot, 12) impairment of earning capacity, 13) potential development of future diseases and disorders caused by the traumatic event of being fearful of death, 14) Additionally, the trauma of the event triggered various personality disorders of Michael Ioane.

*See* Castaldi Decl. ¶¶ 6, 7, Exs. 5, 6. (Interrogatory Response 3). Moreover, in his deposition, Plaintiff Michael Ioane testified that both Plaintiffs suffer from Post-Traumatic Stress Disorder. *See* Castaldi Decl. ¶ 12, Ex. 10 at 104:2-13.

18. The Federal Defendants asked both Plaintiffs to:

> • Please identify any and all doctors visited since June 8, 2006. Your response should include each doctor's full name, address, telephone number, and specialty of practice, if any.
> • Please identify all diagnoses you have received since June 8, 2006 that you contend are related to the actions of the Federal Defendants identified in the Second Amended Complaint. Your response should include:
> a. The date of the diagnosis;
> b. The doctor who gave the diagnosis;
> c. The diagnosis; and
> d. Any opinion on the relation of the diagnosis to your claims in this action, if one has been provided by a doctor.
> • Please identify all treatments, procedures and medications that you contend are related to the actions of the Federal Defendants identified in the Second Amended Complaint. Your response should include:
> a. The date of the treatment, procedure, and/or time of each medications prescription;
> b. The doctor who gave the treatment, procedure, and/or medication; and
> c. The treatment, procedure, and/or medication;
> d. The cost of each treatment, procedure, and/or medication.

*See* Castaldi Decl. ¶¶ 2, 3, Exs. 1, 2. (Interrogatories 4, 5, 6)

19. In response to requests identified in Paragraph 10, the [Plaintiffs] asserted their right to "medical privacy" and stated they could not recall any information. *See* Castaldi Decl. ¶¶ 6, 7, Exs. 5, 6.

20. In response to the Federal Defendants' Request for "All medical bills, receipts, invoices, or any other documents that document that amount of all medical expenses, including but not limited to, doctors' visits, medical tests, medical treatments, and medication costs, you incurred as a result of the alleged actions of the Federal Defendants identified in the Second Amended Complaint" Plaintiffs failed to produce any documents. *See* Castaldi Decl. ¶ 8, Ex. 7 (Document Request 4).

21. The Federal Defendants asked both Plaintiffs to "Please state the basis for your claim for $1,000,000 in punitive damages, including specific calculations and who, if anyone, made those calculations." *See* Castaldi Decl. ¶¶ 2, 3, Exs. 1, 2. (Interrogatory 2). In addition, the Federal Defendants asked both Plaintiff to produce "All documents you intend to rely on in support of your claim for $1,000,000 in punitive damages." *See* Castaldi Decl. ¶¶ 4, 5, Exs. 3, 4.

22. In response to the Federal Defendant's Request for Production regarding punitive damages, Plaintiffs did not produce any documents. *See* Castaldi Decl. ¶ 8, Ex. 7.

23. In response to the Federal Defendant's Interrogatory regarding punitive damages, Plaintiffs responded "I object to the extent that the current claim of $1,000,000.00 related to any other cause of action other than those remaining causes. Subject to and without waiving the general objections, the bases of our claim is a reflection of the compensatory loss, singular, however, we intend to amend the complaint to increase the punitive to $11,550,000.00, which would be 3 times the compensatory of $3,850,000.00. Because of the mental injuries caused by the wrongs done by defendants the foregoing is the best I can recall at this time; but, by no means is limited to the above and we will provide additional information as our condition permits." *See* Castaldi Decl. ¶¶ 6, 7, Exs. 5, 6.

## IV. Analysis

The only cause of action remaining in this case is a <u>Bivens</u> claim for violation of the Fourth Amendment based on excessive force and bodily privacy.  The excessive force claims is

1    based on the following allegation: "23. On rushing through the door, the agents had guns drawn

2    and pointed them in a threatening manner at the heads of both Michael and Shelly Ioane without

3    reason or provocation, and intended to cause and did cause these plaintiffs to fear for their lives.

4    24. Although plaintiff Shelly Ioane was unarmed, and frantically screaming and crying for help,

5    defendant Applegate continued approaching her and pointing his gun at her beyond any amount of

6    time it might take for a reasonable person to determine she was unarmed and no threat to anyone."

7    Doc. 64, Second Amended Complaint, 3:27-4:5.  The bodily privacy claim is based on an

8    allegation that a Federal Agent accompanied Shelly Ioane into the bathroom. Doc. 64, Second

9    Amended Complaint, 4:17-18 ("being watched by a federal agent while she attempted to relieve

10   herself in the bathroom").  All other claims (including unreasonable search, First Amendment,

11   retaliation, supervisor liability, and disclosure of tax information) have already been dismissed.

12

13   **A. Michele Casarez**

14        Defendants seek summary adjudication in favor of Michele Casarez.  She has stated that

15   she was working on another case on June 8, 2006 and was not present when the search warrant

16   was executed. Doc. 248-4, Casarez Declaration, 2:5-10.  Plaintiffs do not dispute that assertion.

17   Doc. 252, Plaintiffs Opposition, 2:13-20.

18        Summary adjudication is granted in favor of Michele Casarez.

19

20   **B. Kent Spjute**

21        Defendants also seek summary adjudication for Kent Spjute, arguing "There is no evidence

22   that Former Special Agent Kent Spjute pointed a weapon at the head of either Plaintiff, and

23   therefore he is entitled to judgment in his favor as a matter of law." Doc. 248-2, Defendants Brief,

24   5:17-19.  The officer who accompanied Shelly Ioane to the bathroom was a woman; Kent Spjute is

25   not connected with that action.  Plaintiffs argue "Even as Mr. Spjute may have never drawn his

26   service weapon, he is still the leading agent who 1) wrote the affidavit in support of search

27   warrant, and 2) coordinated the investigation that led to the execution of the search warrant." Doc.

28   252, Plaintiffs Opposition, 3:19-23.  They also explain, "SA Spjute from the beginning presented a

1   weak affidavit to obtain a void search warrant which he coordinated and turned into serious

2   excessive force issues in retaliation against a citizen with whom he had personal issues." Doc. 265,

3   Plaintiffs Sur-Reply, 2:8-12.

4       Kent Spjute has stated that he never removed his gun from his holster during the search.

5   Doc. 248-3, Spjute Declaration, 2:15-18.  Michael Ioane Sr. also states that he did not see Kent

6   Spjute with a gun. Doc. 248-16, Michael Ioane Sr. Deposition, 69:9-18.  There is no contrary

7   evidence that would require this issue to be put before a jury.  The actions Plaintiffs complain of,

8   that Kent Spjute was involved in procuring the search warrant, do not give rise to legal liability for

9   claims of excessive force or bodily privacy.  They fall more properly under the unreasonable

10  search cause of action which has been dismissed.  Regarding vague arguments that he

11  "coordinated" the search, Plaintiffs have presented nothing which would merit reconsidering the

12  dismissal of the supervisor liability cause of action.

13      Summary adjudication is granted in favor of Kent Spjute.

14

15  **C. Damages**

16      Defendants seek summary adjudication on several classes of damages, namely economic,

17  medical, mental or emotional harms, and punitive damages.

18      For economic damages, Plaintiffs claim they lost income due to "the seizing of records and

19  the loss of clients due to IRS involvement." Doc. 252, Plaintiffs Opposition, 8:24-25.  That is

20  Michael Ioane Sr.'s business of advising clients how to minimize their tax obligations declined

21  after June 8, 2006.  Plaintiffs' economic damages are not caused by the claims of excessive force

22  and bodily privacy.  Rather, they are the result of the search itself.  The dismissal of the first cause

23  of action (unreasonable search and seizure) forecloses damages under this theory.  Summary

24  adjudication is granted for economic damages.

25      Plaintiffs also claim medical and mental suffering damages.  Defendants argue that

26  because Plaintiffs have not identified any medical experts, they cannot prevail on a
    claim for damages related to their self-diagnosed maladies.  Moreover, because

27  Plaintiffs did not produce any evidence of medical expenses or treatments, they
    cannot recover actual damages for their alleged injuries....without an expert the jury

28  is unable to properly evaluate the existence and extent of Plaintiffs' alleged mental

1   and emotional injuries.

2    Doc. 248-2, Defendants Brief, 9:22-10:8.  In their opposition, Plaintiffs have disclosed the names

3   and addresses of Shelly Ioane's medical doctors. Doc. 252, Ex. D, page 49 of 101.  Shelly Ioane

4   has a motion to extend the discovery deadline. Doc. 219.  Plaintiffs have made a motion to modify

5   the scheduling order. Docs. 259 and 267.  The evidence surrounding medical and emotional harms

6   appears to be in dispute at this point of the litigation.  Summary adjudication is denied for medical

7   and mental suffering without prejudice to refiling at a later time.

8         Defendants also seek adjudication of Plaintiffs' request for punitive damages.  "[A] <u>Bivens</u>

9   remedy is awarded against individual defendants and may include punitive damages.... liability is

10  governed by uniform federal rules rather than the law of the State in which the violation

11  occurred." <u>Hui v. Castaneda</u>, 559 U.S. 799, 805 (2010).  "Punitive damages are available 'when

12  the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves

13  reckless or callous indifference to the federally protected rights of others.'" <u>Adams v.</u>

14  <u>Springmeyer</u>, 17 F. Supp. 3d 478, 510 (W.D. Pa. 2014), quoting <u>Smith v. Wade</u>, 461 U.S. 30, 56

15  (1983).  In the complaint, Plaintiffs claim "Defendant APPLEGATE's behavior was so

16  unnecessary that one of the female agent defendants screamed at him at least three times to put

17  away his gun, and had to continue screaming at him at the top of her voice until he finally did so."

18  Doc. 64, Second Amended Complaint, 4:6-8.  This is supported by Michael Ioane Sr.'s deposition:

19  "It seems like after my wife started screaming and the lady -- there was a lady, an older lady,

20  yelling.  She was saying -- she said -- what did she say?  "Agent' or 'Officer, put your gun down.

21  There's no reason --' or she said, 'The house --' 'There's no weapons.'  And she yelled that to him

22  like three times." Doc. 248-16, Michael Ioane Sr. Deposition, 31:10-15.   Taken in the light most

23  favorable to the non-moving party, a reasonable jury could find that there was excessive force with

24  the necessary degree of recklessness or callous indifference to support punitive damages.

25  <u>Boardman v. Riverside Twp.</u>, 2007 U.S. Dist. LEXIS 51411, *17 (D.N.J. July 13, 2007) ("if a jury

26  were to believe Plaintiff's assertions regarding excessive force, that may well support a finding of

27  'evil motive or intent' or 'reckless or callous indifference to the federally protected rights of

28  others'"); <u>Curran v. Aleshire</u>, 2014 U.S. Dist. LEXIS 173796, *28 (E.D. La. Dec. 15, 2014) ("The

disputed facts as to the excessive force claim against Aleshire also create a disputed issue of material fact as to the possible applicability of punitive damages in this case"). Summary adjudication is denied for punitive damages.

## V. Conclusion

Defendants' motion for summary adjudication is GRANTED in part and DENIED in part.

Summary adjudication is granted in favor of Defendants Michelle Casarez and Kent Spjute.

Summary adjudication is granted in favor of Defendants regarding economic damages.

Summary adjudication is denied regarding medical and emotional suffering and punitive damages.

IT IS SO ORDERED.

Dated:   January 13, 2015   

_____
SENIOR  DISTRICT  JUDGE

12