1

2

3

4

5

6

7            **UNITED STATES DISTRICT COURT**

8            **EASTERN DISTRICT OF CALIFORNIA**

9

10   GLEN HALLIDAY,                            **Case No. 1:07-cv-00620-AWI-GSA**
     MICHAEL S. IOANE, *et al.*,
11                                              **ORDER GRANTING MOTION TO**
                        Plaintiffs,             **COMPEL PSYCHOLOGICAL**
12                                              **EXAMINATIONS OF MICHAEL AND**
          v.                                    **SHELLY IOANE**
13
     KENT R. SPJUTE, *et al.*,
14
                        Defendants.
15                                              (ECF No. 318)

16

17        Pending before the Court is a Motion by Defendants to Compel Psychological

18   Examinations of Plaintiffs Michael S. Ioane, Sr. and Shelly Ioane ("Plaintiffs"). (ECF No. 318.)

19   The Court previously granted in part an order shortening time and set a briefing schedule for the

20   Motion. (ECF No. 320.) Plaintiffs filed an Opposition to the Motion and Defendants Jean Nole,

21   Jeff Hodges, and Brian Applegate ("Defendants") filed a Reply. (ECF Nos. 325, 327.) After the

22   briefing of the Motion was completed, the Court took the Motion under submission. Based on a

23   review of the pleadings and for the reasons set forth below, the Motion is GRANTED.

24   **I.      BACKGROUND**

25        Plaintiffs are a married couple involved in tax disputes with the United States. Defendants

26   are federal agents who assisted in searching Plaintiffs' residence in 2006. Mr. Ioane was

27   convicted of tax fraud conspiracy on October 3, 2011 as a result, in part, of evidence that was

28

                                                   1

obtained during the search. Plaintiffs allege that they have suffered and continue to suffer emotional distress as a result of the search. In particular, both Plaintiffs have described their emotional distress damages as including:

> 1) mental anguish and suffering, 2) pain and suffering from physical injury caused by the trauma, 3) emotional distress; such as anxiety, depression, 4) loss of enjoyment of life 4) [sic] loss of consortium, (husband and wife) 5) loss of potency due to drugs required to take, [sic] 6) traumatic neurosis, 7) weight gain, 8) high blood pressure, 9) loss of sleep, 10) shock and fear of being murdered, 11) shock and fear of being shot, 12) impairment of earning capacity, 13) potential development of future diseases and disorders caused by the traumatic event of being fearful of death, 14) Additionally, the trauma of the even triggered various personality disorders of Michael Ioane; such as delusional personality disorder, adjudicated by Judge Lawrence O'Neill in Case # 1:09-cr-0142, Narcissistic personality disorder touched on during sentencing in Case # 1:09-cr-0142 and in the probation report. As a natural and proximate consequence of the defendants [sic] wrongful acts Michael Ioane was in indicted [sic] and convicted to 9 years in Federal prison. Each day Mr. Ioane spends in prison because of the wrongful acts of defendant increase the emotional and mental damage and consequently the loss of income real and potential.

(Declaration of Lauren Castaldi ("Castaldi Decl."), Exh. 6 (Michael Ioane's Responses to Defendants' First Set of Interrogatories 5:10-26), ECF No. 248-12.) Both Plaintiffs allege these damages. (Castaldi Decl., Exh. 5 (Shelly Ioane's Responses to Defendants' First Set of Interrogatories 5:12-28), ECF No. 248-11.)

Although non-expert discovery in the case has concluded, the Court previously issued an order providing a limited window for the parties to designate expert witnesses with respect to Plaintiffs' claims for medical and mental suffering and discovery concerning those experts. (ECF No. 307.) Plaintiffs have identified two expert witnesses and one substitute expert witness to testify at trial regarding their medical and mental distress damages. (ECF No. 314.)

Defendants now seek leave to have Ricardo Winkel, Ph.D. conduct an independent psychological examination of Michael and Shelly Ioane so that he may testify as a rebuttal expert. Plaintiffs acknowledge that their respective mental statuses are at issue in the litigation, but oppose the specific proposed conditions of the psychological examinations.

## II.    DISCUSSION

Defendants seek an independent medical examination of Plaintiff pursuant to Federal Rule of Civil Procedure Rule 35. In relevant part, Rule 35(a) provides that: "The court where the

2

1   action is pending may order a party whose mental or physical condition--including blood group--

2   is in controversy to submit to a physical or mental examination by a suitably licensed or certified

3   examiner."

4   Accordingly, to justify a mental examination under Rule 35, Defendants must

5   demonstrate: (a) that Plaintiffs have placed their mental condition "in controversy"; and (b) "good

6   cause" for the examination. *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). "Good cause"

7   generally requires a showing of specific facts justifying discovery. Factors that courts have

8   considered include, but are not limited to: the possibility of obtaining desired information by

9   other means, whether plaintiff plans to prove his claim through testimony of expert witnesses,

10  whether the desired materials are relevant, and whether plaintiff is claiming ongoing emotional

11  distress. *See Turner v. Imperial Stores*, 161 F.R.D. 89, 97-98 (S.D.Cal.1995) (expert testimony);

12  *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D.Cal.1995) (ongoing emotional

13  distress); *Schlagenhauf*, 379 U.S. at 118-119 (availability by other means).

14  Plaintiffs concede that their mental condition is in controversy here; they have also alleged

15  that they suffer from ongoing emotional distress and intend to prove their damages through the

16  testimony of expert witnesses. Likewise, good cause for the psychological examinations exists

17  because Plaintiffs have designated experts who can testify to their mental condition. *Nguyen v.*

18  *Qualcomm Inc.*, No. 09-1925-MMA (WVG), 2013 WL 3353840, at *7 (S.D. Cal. July 3, 2013)

19  ("A defendant should have a 'balanced opportunity to assess the plaintiff's allegations and proof

20  concerning emotional distress damages,' and a plaintiff's chosen expert should not be the only

21  expert who 'ever actually examined the plaintiff'"); *Tarte v. U.S.*, 249 F.R.D. 856, 860 (S.D. Fla.

22  2008) (consent to Rule 35 examinations concedes good cause under Rule 35).

23  Plaintiffs challenge only the specific parameters of the psychological examinations,

24  including the duration and location of the examinations. Plaintiffs also request that they be

25  allowed to conduct audio recordings of the examinations. Courts have the discretion to set the

26  specific parameters of a psychological examination under Rule 35. *Newman v. San Joaquin Delta*

27  *Comm. Coll. Dist.*, 272 F.R.D. 505, 511 (E.D. Cal. 2011).

28  **A.  Duration of the Examinations**

3

1    In the Motion, Defendants explain that the examinations may include tests that will take

2    approximately 220 minutes (or 3 hours and 40 minutes) to complete, although they do not request

3    a specific amount of time be designated for the entire exam. In their reply briefing, Defendants

4    clarify that Dr. Winkel will require up to eight hours for each examination. Plaintiffs assert that

5    they should not be required to spend more than 3 hours with the examiner and believe that any

6    longer will cause them mental and emotional fatigue. Defendants have conceded that Dr. Winkel

7    may be able to spread each examination over two days so that each Plaintiff need only spend four

8    hours per day for two days each undergoing their examinations.

9    A number of courts have entertained requests to limit the duration of psychological

10    examinations. Few courts have found limits of only three hours reasonable, however. *See, e.g.*,

11    *Nguyen*, 2013 WL 3353840 at *9 (rejecting plaintiff's request of two hour limitation and

12    approving defendant's proposed duration of four to five hours); *Simonelli v. Univ. of California-*

13    *Berkeley*, No. C 02-1107 JL, 2007 WL 1655821, at *3 (N.D. Cal. June 4, 2007) (rejecting

14    plaintiff's request of three hour limitation because "the interests of both parties in the examiner's

15    arriving at an accurate diagnosis militates against setting an artificially short time limit" and

16    setting an eight hour limit for a psychiatric examination); *Greenhorn v. Marriot Int'l, Inc.*, 216

17    F.R.D. 649, 653 (D. Kan. 2003) (rejecting plaintiff's request for two hour limitation and

18    approving defendant's anticipated three to five hour time frame). Courts that have set limitations

19    have also done so only where some specific circumstance demanded it. *Nicholas v. Wyndham*

20    *Int'l, Inc.*, 218 F.R.D. 122, 123 (D. V.I. 2003) (approving five hour limit where plaintiff-

21    examinee was a minor child and allegations involved inappropriate sexual conduct by defendant).

22    No circumstances demand such limitations in this instance. Plaintiffs are adults and have

23    not demonstrated any factual basis to limit the length of the requested examinations. Given

24    Plaintiffs' concerns about mental and emotional fatigue, however, the Court will permit each

25    examination to occur over a two day period. Each examination will consist of two, four hour

26    testing sessions. This schedule adequately protects Defendants' need for discovery and Plaintiffs'

27    concerns of mental fatigue. *Newman*, 272 F.R.D. at 513 (approving schedule of ten hour

28    examination split over two days).

4

**B.  Location of the Examinations**

Plaintiffs also challenge the proposed locations of the examinations—Defendants request that Mr. Ioane's examination take place at Taft Correctional Facility, where he is currently held, and Ms. Ioane's examination take place at the U.S. Attorney's Office in Fresno, California. Citing privacy objections, Plaintiffs propose that both examinations take place at an outside medical office, preferably in Merced, Fresno, or San Francisco. As an initial matter, courts "have rejected general privacy challenges to Rule 35 examinations where a party has placed his mental health at issue." *Nguyen*, 2013 WL 3353840 at *8; *Mandujano v. Geithner*, No. C 10-1226 LB, 2011 WL 825728, at *7, (N.D. Cal. March 7, 2011) ("the government's right to the information outweighs Mandujano's privacy rights"); *Ortiz v. Potter*, No. 2:08-cv-01326 LKK KJN, 2010 WL 796960, at *5 (E.D. Cal. March 5, 2010) ("reliance on such privacy protections are at a minimum misplaced with respect to a mental examination when plaintiffs have . . . suggested their intent to offer the testimony from their treating physicians regarding treatment sessions and potentially expert witnesses on the issue of emotional distress").

When challenging the location of a medical examination, the burden is "on the plaintiff to show that traveling to the examination poses undue burden or hardship." *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 400 (S.D. Tex. 2013); *Prado v. Cnty. of Siskiyou*, No. CIV S-08-1835-GEB-CMK, 2009 WL 1657537, at *2 (E.D. Cal. June 12, 2009); *Pierce v. Brovig*, 16 F.R.D. 569, 570 (S.D.N.Y. 1954). Plaintiffs have not demonstrated an undue burden here. As to Ms. Ioane, Plaintiffs merely state that she would prefer not to submit to examination at the U.S. Attorney's Office "for obvious reasons." (Opposition 3:14-15, ECF No. 325.) Without further elaboration or articulation, such a statement does not establish that Ms. Ioane faces an undue hardship in traveling to Fresno to undergo a mental examination. Nor is there any evidence that the U.S. Attorney's Office lacks suitably private facilities for a mental examination involving the kinds of tests Dr. Winkel intends to administer.

Similarly, there is no reason that Mr. Ioane's examination cannot take place at the Taft Correctional Facility. Plaintiffs argue that the examination should take place at an outside medical office because "[p]risons are not private places," but this general statement is inadequate to meet

1   their burden. (Opposition 3:17-18, ECF No. 325.) Absent a more specific showing of hardship, it

2   is reasonable to conduct the examination at Taft Correctional Facility, subject to the discretion of

3   the Facility's Warden and Dr. Winkel.

4          Any privacy concerns the Plaintiffs may have are easily remedied by instructions

5   restricting third party observers from observing the exam. Similarly, Dr. Winkel can be instructed

6   to use his best professional discretion to determine an appropriate location within the Facility to

7   conduct his examination. Nothing suggests that these measures are inadequate to protect the

8   privacy interests at stake.[1]

9          **C. Audio Recording of the Examinations**

10          Plaintiffs request leave to conduct audio recording of the examinations in the event that

11   later "disputes concerning what the plaintiff said or didn't say erupt during the course of the

12   expert's testimony." (Opposition 2:15-18, ECF No. 325.) In the alternative, Plaintiffs propose that

13   a third party be allowed to sit in on the examination. The use of audio or video recording devices

14   during Rule 35 examinations is strongly disfavored. *Newman*, 272 F.R.D. at 514 ("In the same

15   way third party observation of mental exams is disfavored, the presence of recording devices

16   during such exams is also disfavored")*, citing Holland v. U.S.*, 182 F.R.D. 493, 496 (D.S.C.

17   1998). However, Defendants have indicated that they would have no objection if Dr. Winkel

18   conducted audio recording of the examinations. Defendants would then be willing to provide

19   Plaintiffs with the recordings after the examinations have taken place. This adequately resolves

20   Plaintiffs' objections and the Court need not consider whether a third party observer should be

21   allowed into the proceedings.[2]

22   _____

23   [1] Notably, both parties have an interest in using a venue for the examinations that is suitably private and secure.
     Plaintiffs have an interest in ensuring that their privacy is respected, while Defendants have an interest in ensuring
     the integrity of the examinations so that the Rule 35 reports that the examinations produce will have evidentiary
24   value. Both interests are preserved by holding the examinations at Taft Correctional Facility and the U.S. Attorney's
     Office.

25   [2] In any case, such an observer would affect the integrity of the examination and would not be allowed, absent special
26   circumstances. *Nguyen*, 2013 WL 3353840 at *9 ("third parties . . . cannot sit in on physical and mental examinations
     under FRCP 35 unless special circumstances require it"). Such special circumstances have been confined to cases
     involving parties with communication issues, such as limited English fluency. *See, e.g.*, *T.B. ex rel. G.B. v. Chico*
27   *Unified Sch. Dist.*, No. CIV S-07-0926-GEB-CMK, 2009 WL 837468, at *2 (E.D. Cal. March 26, 2009) (allowing
     video recording of autistic child's examination where recording of "facial expressions, body language, movements
28   and behavioral enactments" was requested by examiner for diagnosis and recording would not impact integrity of the

### D. Privacy Admonishments

Finally, Plaintiffs request a series of admonishments aimed at protecting their privacy. First, Plaintiffs request that correctional staff not be present during the examination. Second, Plaintiffs ask that the Court admonish defense counsel and Dr. Winkel not to "discuss Mr. Ioane with prison staff other than as necessary to arrange for the examination." (Opposition 4:4-6, ECF No. 325.) Third, Plaintiffs argue that defense counsel and Dr. Winkel should be prohibited from obtaining Mr. Ioane's prison file or records.

As indicated above, privacy concerns are rarely grounds on which to challenge a Rule 35 examination. *See, e.g.*, *Nguyen*, 2013 WL 3353840 at *8; *Mandujano*, 2011 WL 825728 at *7; *Ortiz*, 2010 WL 796960 at *5. However, the Court recognizes (and Defendants acknowledge) that third party observers in Mr. Ioane's examination would damage the integrity of the examination. (Declaration of Ricardo Winkel, Ph.D. ¶ 3, ECF No. 327-1.) To the extent possible (and in the Warden of Taft Correctional Facility and Dr. Winkel's discretion), Mr. Ioane's examination should thus take place in an appropriately private location within Taft Correctional Facility and without the presence of third parties, including correctional staff.

As to the other privacy admonishments, Plaintiffs do not articulate any specific basis for their concerns about defense counsel or Dr. Winkel's communications with correctional staff. The Court thus does not find any cause to restrict the course of Dr. Winkel's medical inquiry. *Abdulwali v. Wash. Metro Area Trans. Auth.*, 193 F.R.D. 10, 15 (D. D.C. 2000) (approving Rule 35 examination that included "review of all relevant records and documents" and "gathering of past history including medical history"); *Lahr v. Fulbright & Jaworksi*, LLP, 164 F.R.D. 196, 202 (N.D. Tex. 1995) ("For the court to intervene and limit the type of examination an expert has indicated is necessary in order to analyze the plaintiff's claims would subvert the truth finding function inherent in Rule 35 examinations").

In any case, Plaintiffs will have adequate remedies under Rule 35 to challenge the basis of

exam); *Di Bari v. Incaica Cia Aramadora, S.A.*, 126 F.R.D. 12, 14 (E.D.N.Y. 1989) (court reporter allowed where plaintiff had "difficulty with the English language" and thus "his ability to communicate to his counsel what occurred during the psychiatric examination may be seriously impaired"). Plaintiffs' reasons for seeking an observer do not fall within the "special circumstances" required.

1   Dr. Winkel's opinion. Because Defendants intend to offer Dr. Winkel as an expert witness at trial,

2   Plaintiffs will have the ability to conduct a thorough cross-examination, as well as offer testimony

3   of their own experts. Defendants have also acknowledged the requirement that they produce a

4   copy of Dr. Winkel's report to Plaintiffs under Rule 35(b) for Plaintiffs' use in preparing to

5   dispute his testimony. Should Defendants fail to comply with this requirement, the examiner's

6   testimony may be excluded at trial. Fed. R. Civ. P. 35(b)(5). These safeguards provide adequate

7   remedies for the disputes that Plaintiffs envision with respect to the examiner's conduct at the

8   examination. *Morrison*, 244 F.R.D. at 407-08. Nonetheless, the Court will admonish the examiner

9   to conduct the examinations consistent with his professional and ethical obligations as a

10  psychologist licensed by the state of California.

11  **III.    CONCLUSION**

12          Based on the above, the Court GRANTS Defendants' Motion to Compel Psychological

13  Examinations (ECF No. 318) pursuant to Federal Rule of Civil Procedure 35. Accordingly:

14          1.   The Court determines that Ricardo Winkle, Ph.D., is qualified to conduct a mental

15               examination under Federal Rule of Civil Procedure 35(a);

16          2.   Plaintiff Michael S. Ioane, Sr. is ORDERED to appear for a psychological exam

17               before Ricardo Winkel, Ph.D. at the Taft Correctional Facility between the dates of

18               July 1, 2015 and July 31, 2015, at the convenience of Dr. Winkel and the Warden

19               of the Taft Correctional Facility;

20               a.   The Warden of Taft Correctional Facility is ORDERED to make Michael

21                    S. Ioane, Sr. available for said examination and to coordinate with Dr.

22                    Winkel to determine a suitable location within which to conduct a

23                    psychological examination;

24               b.   Defense counsel G. Patrick Jennings is ORDERED to provide a copy of

25                    this order to the Warden of Taft Correctional Facility and to facilitate

26                    communications between Dr. Winkel and Taft Correctional Facility in

27                    scheduling the examination;

28               c.   The examination will occur over two four-hour sessions in a two-day

period, with breaks at Dr. Winkel's discretion;

    d.  Provided that the Warden of Taft Correctional Facility allows recording devices to be present, Dr. Winkel may record the examination, with a digital copy of the examination to be provided to defense counsel and to Shelly Ioane with the production of his Rule 35 report;

3.  Plaintiff Shelly Ioane is ORDERED to appear for a psychological exam before Dr. Winkel at the office of the United States Attorney for the Eastern District of California, 2500 Tulare Street, Suite 4401, Fresno, California, 93721, on July 15, 2015, at 10:00 a.m., and thereafter as required by Dr. Winkel for the completion of the examination;

    a.  The examination will occur in a private location within the U.S. Attorney's office, to be selected at Dr. Winkel's discretion;

    b.  The examination will occur over two four-hour sessions in a two-day period, with breaks at Dr. Winkel's discretion;

    c.  Dr. Winkel may record the examination, with a digital copy of the examination to be provided to defense counsel and to Shelly Ioane with the production of his Rule 35 report;

4.  No third party observers will be present in the examination rooms during the examinations; and

5.  In conducting the examinations, Dr. Winkel will in all respects exercise his professional judgment consistent with his professional and ethical obligations as a licensed psychologist in the state of California.

IT IS SO ORDERED.

Dated:   **June 30, 2015**         **/s/ Gary S. Austin**
                                       UNITED STATES MAGISTRATE JUDGE