UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL IOANE, et al,<br><br>　　　　Plaintiffs<br><br>　　v.<br><br>KENT SPJUTE, et al,<br><br>　　　　Defendants | CASE NO. 1:07-CV-0620 AWI GSA<br><br>ORDER RE: MOTION FOR SUMMARY ADJUDICATION<br><br><br>(Doc. 369) |

**I. History**

　　The current Plaintiffs are Michael Ioane Sr. and Shelly Ioane who lived at 1521 Fruitland Ave., Atwater, CA.  They are a married couple involved in tax disputes with United States.  Kent Spjute, Jean Noll, Jeff Hodges, Brian Applegate, and Michelle Casarez are Internal Revenue Service agents ("Federal Agents").  Based on the affidavit of Kent Spjute, the United States was able to obtain a search warrant for Plaintiffs' residence to collect records related to taxation.  The search was carried out by the Federal Agents on June 8, 2006.  This search forms the basis for the claims in this suit.

　　Michael Ioane Sr. and Shelly Ioane, together with former plaintiffs Glen Halliday, Ashley Ioane, and Michael Ioane Jr., filed suit against the Federal Agents and the United States on April 20, 2007 and a First Amended Complaint shortly thereafter. Docs. 1 and 39.  The case was stayed pending resolution of a criminal case against Michael Ioane Sr. for tax fraud conspiracy, based in part on the evidence seized during the search. Crim. Case. No. 09-0142 LJO.  Michael Ioane Sr. was convicted on October 3, 2011 after a jury trial.  He appealed the conviction, but it was affirmed.  Michael Ioane Sr. has filed a habeas corpus petition under 28 U.S.C. § 2255.  In the

meantime, the stay was lifted in this case. Doc. 107.

Plaintiffs originally pursued several causes of action against the United States and the Federal Agents. Through several rounds of motions, the only claims left are for Fourth Amendment excessive force and violation of bodily privacy against Federal Agents Noll, Hodges, and Applegate. Specifically, Plaintiffs allege that Federal Agents pointed guns at the heads of Defendants and that one of the Federal Agents insisted upon entering the restroom with Shelly Ioane and witnessing her relieve herself. Defendants have filed a motion for summary judgment, seeking partial adjudication for all claims against Defendant Noll on the basis of qualified immunity. Doc. 369. Plaintiffs oppose the motion but raise only procedural defects without addressing the merits of Defendants' arguments. Doc. 373. However, the record is sufficient for a ruling on Defendants' motion.

## II. Legal Standards

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must

affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008).  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Juell v. Forest Pharms., Inc., 456 F.Supp.2d 1141, 1149 (E.D. Cal. 2006); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004).  "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  Further, a "motion for summary judgment may not be defeated ...by evidence that is 'merely colorable' or 'is not significantly probative.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Hardage v. CBS

Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006). Additionally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003). If the non-moving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. See Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1103 (9th Cir. 2000).

### III. Statement of Material Facts

Defendant Noll filed a statement of undisputed facts. Doc. 369-2. Plaintiffs have not filed a direct response to Defendant Noll's statement of facts.

1. Jean Noll was a duly commissioned Supervisory Special Agent for the Internal Revenue Service - Criminal Investigation. See attached Declaration former Supervisory Special Agent Jean Noll ("Noll Decl."), ¶1. She is currently retired from this position. Id.

2. During 2006, former Supervisory Special Agent Jean Noll and the other defendants in this matter were asked to assist in the execution of a search warrant as part of the criminal investigation of Michael Ioane, Sr. Noll. Decl. ¶4.

3. Michael Scott Ioane, Sr. was under investigation for criminal tax fraud and conspiracy for tax years beginning in 1999. He was believed to use trusts to carry out that fraud. See Rec. Doc. 248-3. Declaration of Kent Spjute ("Spjute Decl.") ¶5.

4. With the assistance of IRS counsel, Kent Spjute, then a Special Agent, prepared an application for a warrant to search the Ioane residence. He also drafted a lengthy affidavit explaining why a search of that location was necessary. The affidavit was reviewed by an Assistant United States

4

attorney and by IRS counsel. The affidavit was filed under seal because of the on-going criminal investigation. The affidavit is no longer under seal. See Rec. Doc. 248-3, Spjute Decl. ¶ 6.

5. Prior to the execution of the search warrant, the warrant execution team, including Supervisory Special Agent Jean Noll, learned that there were likely firearms in the Ioane residence, as the Ioanes had registered weapons, including an AR-15 assault rifle. See Declaration of Aaron Bailey, Ex. 1 (Pre-Operational Plan) p.5; Rec. Doc. 131-9, Declaration of Brian Applegate ("Applegate Decl.") ¶6; See Rec. Doc. 131-8, Declaration of Jeff Hodge ("Hodge Decl.") ¶6; Rec. Doc. 248-3, Spjute Decl. ¶11.

6. On June 8, 2006, several agents from IRS Criminal Investigation Division, including Supervisory Special Agent Jean Noll, helped execute a search warrant on the Ioane residence. See Rec. Doc. 131-9, Applegate Decl. ¶7; Rec. Doc. 131-8, Hodge Decl. ¶7.

7. Only Michael Ioane, Sr. and Shelley Ioane were present at the residence. See Rec. Doc. 131-9, Applegate Decl. ¶10; Rec. Doc. 131-8, Hodge Decl. ¶8; Noll. Decl. ¶8.

8. As is standard procedure during the execution of a search warrant, the Special Agents each carried their service weapon, a Glock semi-automatic handgun, issued by the Internal Revenue Service - Criminal Investigation. See Rec. Doc. 131-9, Applegate Decl. ¶ 8; Rec. Doc. 131-8, Hodge Decl. ¶9. Jean Noll never removed her service weapon from the holster. Noll Decl. ¶10.

9. Neither in their Complaint nor in their depositions have the Plaintiffs alleged that Special Agent Noll pointed a gun at either Michael or Shelley Ioane. See Rec. Doc. 61, Second Amended Complaint; Declaration of Aaron Bailey, Ex. 4, Deposition of Michael Ioane and Ex. 3, Deposition of Shelly Ioane.

10. During the course of the search, a special agent secured several weapons, including a Colt AR-

15 assault rifle. These weapons were not seized. See Bailey Decl., Ex. 2, Hodge Decl. ¶12.

11. It is standard procedure to escort an individual to the restroom during the execution of a search warrant. It is also standard procedure for an agent to monitor an individual while they are in the restroom. In some instances a female agent may be inside the restroom in order to monitor a female using the restroom. In many instances the agent will maintain the individual in their field of vision in order to monitor her activity. See Noll. Decl. ¶ 11.

## IV. Analysis

The only cause of action remaining in this case is a Bivens claim for violation of the Fourth Amendment based on excessive force and bodily privacy. The excessive force claims is based on the following allegation: "23. On rushing through the door, the agents had guns drawn and pointed them in a threatening manner at the heads of both Michael and Shelly Ioane without reason or provocation, and intended to cause and did cause these plaintiffs to fear for their lives. 24. Although plaintiff Shelly Ioane was unarmed, and frantically screaming and crying for help, defendant Applegate continued approaching her and pointing his gun at her beyond any amount of time it might take for a reasonable person to determine she was unarmed and no threat to anyone." Doc. 64, Second Amended Complaint, 3:27-4:5. The bodily privacy claim is based on an allegation that a Federal Agent accompanied Shelly Ioane into the bathroom. Doc. 64, Second Amended Complaint, 4:17-18 ("being watched by a federal agent while she attempted to relieve herself in the bathroom"). All other claims (including unreasonable search, First Amendment, retaliation, supervisor liability, and disclosure of tax information) have already been dismissed.

**A. Prior Motions**

Plaintiffs object that this motion must be properly construed as a motion for reconsideration which did not comply with Local Rule 230(j) which requires counsel for the moving party to "present to the Judge or Magistrate Judge to whom such subsequent motion is made an affidavit or brief, as appropriate, setting forth the material facts and circumstances

6

surrounding each motion for which reconsideration is sought, including: (1) when and to what Judge or Magistrate Judge the prior motion was made; (2) what ruling, decision, or order was made thereon; (3) what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion; and (4) why the facts or circumstances were not shown at the time of the prior motion." Doc, 373, at 3-4.  Defendants filed three motions termed motions to dismiss, or in the alternative for summary judgment. Docs. 35, and 44, 131.  The first motion was mooted by an amended complaint. Doc. 43.  The second and third motions were disposed of as motions to dismiss; the court declined to convert them into motions for summary judgment. Doc. 61 and 163.  The one clear motion for summary judgment was a request for partial adjudication of claims against Defendants Michele Casarez and Kent Spjute and to eliminate certain classes of damages. Doc. 248.  The past motion was not for full adjudication of the case, but only a part of the controversy between the parties.  The present motion is similarly limited.  Defendants seek adjudication of claims against Defendant Noll based on qualified immunity, an issue that was not addressed in the prior summary judgment motion.  Defendants' motion is properly considered a motion for summary judgment and not a motion for reconsideration.

**B. Objection to Evidence**

In support of their motion, Defendants have provided the deposition transcripts of Michael Ioane Sr. and Shelly Ioane. Docs. 369-7 and 360-8.  Plaintiffs object that those transcripts are not certified copies of the original and that they do not include the corrections, retractions, and certification of the deponents. Doc. 381.  Defendants respond that Plaintiffs' modifications to their deposition transcript do not comply with the requirements of Fed. Rule Civ. Proc. 30(e) in that "The Plaintiffs' retractions are in many instances devoid of explanation and in most respects are simply attempts to contradict or, as stated by the Plaintiffs, 'retract' their prior testimony. More importantly, they are irrelevant to the issue that is the subject of the motion." Doc. 382, 2:9-11.  Also, Defendants state that Plaintiffs have not returned the original deposition transcripts to Defendants despite numerous requests that they do so, forcing Defendants to submit the copies

1    they have on hand. Doc. 382, 2: 15-19.

2           The court has reviewed Plaintiffs' corrections.  Shelly Ioane's corrections solely concern
3    Plaintiffs' asserted economic losses and her mental distress. See Doc. 382-1.  Michael Ioane Sr.'s
4    corrections primarily deal with economic losses and mental distress.  However, relevant to this
5    motion, Michael Ioane Sr. initially stated that he could observe Jean Noll the whole time she was
6    interacting with Shelly Ioane in their home office. Doc. 369-8, 42:16-22.  Plaintiffs assert that
7    some of the Federal Agents pointed guns at Shelly Ioane's head while she was in the home office.
8    He later sought to state instead that he does not remember if he could see Jean Noll the whole
9    time. Doc. 382-2, 2:3-4.

10          "A statement of reasons explaining corrections is an important component of errata
11   submitted pursuant to FRCP 30(e), because the statement permits an assessment concerning
12   whether the alterations have a legitimate purpose.... Rule 30(e) is to be used for corrective, and not
13   contradictory, changes." Hambleton Bros. Lumber Co. v. Balkin Enters., 397 F.3d 1217, 1224-25
14   (9th Cir. 2005).  Michael Ioane Sr.'s statement of reasons explained that "My testimony was
15   without opportunity to review records, discuss with accountant, lawyer and while under mental
16   disability caused by the trauma of the event. I misspoke numerous times and did not understand
17   many of the economic injury questions. Now I have had time to review files and records I am able
18   to better answer the questions." Doc. 382-2, 4:6-10.  First, his explanation of needing to review
19   records could only plausibly address his testimony on economic losses.  Second, the deposition
20   took place on February 20, 2014, almost seven years after the search.  There is no explanation as
21   to why the trauma of the event would cause him to have a faulty memory on February 20, 2014
22   only to have a clear memory on March 24, 2014 when he submitted his corrections.  A party may
23   not change a deposition transcript just because they thought better of their answer after the fact.
24   As one court put it, "The purpose of Rule 30(e) is obvious. Should the reporter make a substantive
25   error, i.e., he reported 'yes' but I said 'no,' or a formal error, i.e., he reported the name to be
26   'Lawrence Smith' but the proper name is 'Laurence Smith,' then corrections by the deponent
27   would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath.
28   If that were the case, one could merely answer the questions with no thought at all then return

home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination." Garcia v. Pueblo Country Club, 299 F.3d 1233, 1242 (10th Cir. 2002), quoting Greenway v. International Paper Co., 144 F.R.D. 322, 325 (W.D. La. 1992).

The transcripts submitted by Defendants may properly be considered for this motion.

**C. Excessive Force**

Jean Noll states "I never pointed a weapon at either Mrs. Ioane or Mr. Ioane, nor did I remove my weapon from its holster." Doc. 369-3, 3:9-11. At his deposition, Michael Ioane Sr. stated that Jean Noll was actively telling another Federal Agent to put down his gun and that she herself did not have gun in her hand. Doc. 369-8, 43:21-44:4 and 54:12-55:1. Shelly Ioane stated that "three or four men" pointed their guns at her; she does not mention any women doing so. Doc. 369-7, 30:1-4. There is no evidence that suggests Jean Noll pointed a weapon at either of the Plaintiffs. Summary adjudication on this point is warranted.

**D. Bodily Privacy**

A Fourth Amendment based "right to bodily privacy was established in this circuit in 1963." Sepulveda v. Ramirez, 967 F.2d 1413, 1415 (9th Cir. 1992), citing York v. Story, 324 F.2d 450 (9th Cir. 1963). Jean Noll's observation of Shelly Ioane in the restroom must be measured against that standard. "A detention conducted in connection with a search may be unreasonable if it is unnecessarily painful, degrading, or prolonged, or if it involves an undue invasion of privacy." Franklin v. Foxworth, 31 F.3d 873, 876 (9th Cir. 1994). Jean Noll states "I do not recall escorting Ms. Ioane to the restroom and do not recall being alone with her at any time." Doc. 369-3, 3:7-8. Michael Ioane Sr. stated that Jean Noll accompanied Shelly Ioane to the bathroom. Doc. 369-8, 55:8-19. Shelly Ioane described the incident:

> Q. And when you got to the rest room what happened?
>
> A. I went into the bathroom and I went to shut the door and she said she had to come in with me. And I asked her to please just stand outside, I just have to use the rest room and she said she had to come in with me.

9

Q. And then what happened?

A. And then she asked me to remove my clothing so that she could make sure that I had nothing under there and I asked her why did I need to do something like that. And she said she wanted to make sure that I didn't hide anything or destroy something, that it was a procedure.

Q. And when you say remove your clothing, what clothing did she ask you to remove?

A. I had a long sundress on.

Q. So all of your clothing?

A. She just said remove my clothing. So I pulled my dress up so she could see I had nothing under there. And then she made me hold it up like this and then I had to use one hand to pull my underwear down and she watched me go to the bathroom.

Q. She was facing you during the entire time?

A. Absolutely.

Q. Was the door to the bathroom open or closed?

A. Closed. I asked her if she could please turn to the side and she said she had to make sure I wasn't disposing or destroying anything. I had showed her I had nothing.

Q. Did she have a weapon out during that time?

A. No, it was in her, what are they called, holders.

Doc. 369-7, 41:17-42:22.  Michael Ioane Sr. contrasted her treatment with what happened when he went to the restroom:

A....And what was, I thought, unusual was -- not at the time but now. I mean, I don't know why we were both treated differently, but the officer went into the bathroom, you know, opened a couple of drawers, looked in the shower, and then exited the bathroom and stood outside and closed the door. And told me, 'I'll be standing outside.' And I went to the bathroom. And when I was done, I opened the door and we went back into the kitchen.

Q. Was that a male officer with you?

A. That was a male officer.

Doc. 369-8, 55:21-56:6.

Defendants argue Jean Noll is entitled to qualified immunity because the observation of Shelly Ioane in the restroom as described by in her deposition does not constitute a constitutional violation. Further, even if that conduct does constitute a constitutional violation, the contours of

10

that right were not clearly established as of June 8, 2006 when the search took place. A court employs a two step analysis for determining qualified immunity. See Saucier v. Katz, 533 U.S. 194, 200-2 (2001); CarePartners LLC v. Lashway, 545 F.3d 867, 876 n.6 (9th Cir. 2008). Under the first step, the court determines whether, "taken in the light most favorable to the party asserting the injury, do the facts show the officer's conduct violated a constitutional right"; if the answer is "no," then the inquiry ends and the plaintiff cannot prevail; if the answer is "yes," the court continues the analysis. Saucier v. Katz, 533 U.S. 194, 201 (2001); Bingue v. Prunchak, 512 F.3d 1169, 1173 (9th Cir. 2008). Under the second step, the court determines "whether the right was clearly established," and applies an "objective but fact-specific inquiry." Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007). The critical question is whether "the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates the right" with the understanding that the analysis must be "undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201-2 (2001). If the officer could have reasonably, but mistakenly, believed that his conduct did not violate a clearly established constitutional right, then the officer will receive qualified immunity. Saucier v. Katz, 533 U.S. 194, 205-6 (2001); Johnson v. County of L.A., 340 F.3d 787, 794 (9th Cir. 2003). Courts need not strictly follow the steps in sequence, but instead have the discretion to dispose of the issue at step two without addressing step one. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Defendants assert that they "were faced with serious safety concerns during the execution of the warrant. Plaintiffs were in possession of a large number of weapons, including unregistered handguns and a registered assault rifle." Doc. 369-1, 11:17-19. Defendants cite to U.S. Supreme Court precedent for the proposition that it is sometimes necessary for police to observe individuals while naked to ensure that they have no weapons when executing a search warrant: "The orders by the police to the occupants [to get out of bed even though they were naked], in the context of this lawful search, were permissible, and perhaps necessary, to protect the safety of the deputies. Blankets and bedding can conceal a weapon, and one of the suspects was known to own a firearm, factors which underscore this point. The Constitution does not require an officer to ignore the possibility that an armed suspect may sleep with a weapon within reach....The deputies needed a

11

moment to secure the room and ensure that other persons were not close by or did not present a danger. Deputies were not required to turn their backs to allow Rettele and Sadler to retrieve clothing or to cover themselves with the sheets." L.A. County v. Rettele, 550 U.S. 609, 614-15 (2007). The circumstances of Rettele are distinguishable. The police first encountered the residents of the house when they were undressed and so had to ensure that they did not have weapons. As soon as they checked, they allowed the residents to dress; the invasion of privacy was the minimum necessary to accomplish the purpose: "there is no allegation that the deputies prevented Sadler and Rettele from dressing longer than necessary to protect their safety. Sadler was unclothed for no more than two minutes, and Rettele for only slightly more time than that. Sadler testified that once the police were satisfied that no immediate threat was presented, 'they wanted us to get dressed and they were pressing us really fast to hurry up and get some clothes on.'" L.A. County v. Rettele, 550 U.S. 609, 615 (2007). Holding an individual for an extended period of time naked after it has been determined he/she is not armed is an unwarranted invasion of bodily privacy. Franklin v. Foxworth, 31 F.3d 873, 877 (9th Cir. 1994) ("we can conceive of no reason why Curry was not given clothing or covering before he was carried from his bed to the living room, so that his genitals would not be exposed to the view of 23 armed strangers"). The incident involving Shelly Ioane was not one where the Federal Agents first came upon her while she was unclothed. Shelly Ioane had already been detained by the Federal Agents for about 30 minutes. That allowed for plenty of time for the Federal Agents to check for weapons. It is alleged that Jean Noll had Shelly Ioane briefly undress to show that she had no weapon on her person, allaying that concern. As for the possibility of guns in the restroom, there would have been "no risk at all once the officers searched [the] room and made certain that there were no weapons or contraband present." Franklin v. Foxworth, 31 F.3d 873, 877 (9th Cir. 1994). Indeed, that may have been the safety procedure undertaken when Michael Ioane Sr. went to the restroom. At this point, taking all reasonable inferences in favor of the non-moving party, there does not appear to have been a need for Jean Noll to accompany Shelly Ioane into the restroom when other precautions could have been taken.

Defendants also argue that Shelly Ioane "would have been in a position, if unobserved, to

1  potentially destroy evidence by disposing of it down the toilet, seriously compromising the
2  efficacy of the search. In the age of thumb drives, the possibility that large amounts of
3  incriminating data may be secreted on the body of a suspect and disposed of in such a manner
4  cannot be ignored." Doc. 369-1, 11:11-16.  As with weapons, Defendants have not established an
5  evidentiary basis to find that an objectively reasonable officer would have thought such direct
6  observation was necessary in that circumstance.  Fear that electronic media would be flushed
7  down the toilet can not be relied upon to justify Jean Noll's observation of Shelly Ioane at this
8  stage.

9  The main thrust of Defendants' argument is that there is no right for "a detainee (in some
10 state of undress) being free from observation by an officer of the same sex." Doc. 369-1, 11:3-5.
11 Defendants point out that in the contexts of inmates (who have more limited Fourth Amendment
12 rights than other persons), there is a clear distinction between observation/search of by a guard of
13 the same or opposite gender. See, e.g. Somers v. Thurman, 1997 U.S. App. LEXIS 12272, *12-20
14 (9th Cir. Cal. May 28, 1997), published opinion; Blanco v. Cnty. of Kings, 2015 U.S. Dist. LEXIS
15 147753, *13-16 (E.D. Cal. Oct. 30, 2015); Pruitt v. Clark, 2012 U.S. Dist. LEXIS 108352, *6-8
16 (E.D. Cal. Aug. 1, 2012); Edwards v. High Desert State Prison, 2013 U.S. Dist. LEXIS 27916,
17 *55-57 (E.D. Cal. Feb. 27, 2013).  In Sepulveda, involving a parolee and not an inmate, the Ninth
18 Circuit denied qualified immunity when a male officer insisted upon observing a female parolee
19 provide a urine sample in a toilet stall, emphasizing that the fact "the agent and parolee are of
20 different sexes" was significant. Sepulveda v. Ramirez, 967 F.2d 1413, 1416 (9th Cir. 1992).
21 Defendants also point to a Northern District of California case where "female [public] employees
22 had to urinate in the presence of a same-sex supervisor standing to their side, in the same room,
23 without any type of partition" for drug testing; the court concluded that while case law might
24 eventually find such an action to be a bodily privacy violation, the law was uncertain at the time
25 and definitely not clearly established. Hansen v. California Dep't of Corrections, 920 F. Supp.
26 1480, 1495-99 (N.D. Cal. 1996).  Defendants are correct that when it is necessary for a detainee to
27 be observed in a state of undress, it should generally be an officer of the same gender.
28 However the case law cited dealt with situations where there was a good reason for a

supervisor/police officer to observe another's nakedness or act of urination. It is only when there is a valid reason for the observation that the gender of the observer matters. Thus, absent a valid reason, a police officer's intentional viewing of a person naked or while they are relieving themselves constitutes a constitutional violation. If there is no reason for this invasion of privacy, it is irrelevant whether the observing police officer is of the same or opposite gender. At this summary adjudication stage, Defendants have not established a reason to justify the restroom observation. The potential justification for observation (potential destruction of evidence, safety concerns) is an issue for the fact finder at trial.

This right to bodily privacy is longstanding and well established in the Ninth Circuit: "We cannot conceive of a more basic subject of privacy than the naked body. The desire to shield one's unclothed figured from view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity. A search of one's home has been established to be an invasion of one's privacy against intrusion by the police, which, if 'unreasonable,' is arbitrary and therefore banned under the Fourth Amendment. We do not see how it can be argued that the searching of one's home deprives him of privacy, but the photographing of one's nude body, and the distribution of such photographs to strangers does not." York v. Story, 324 F.2d 450, 455 (9th Cir. 1963). In general, there is a baseline "reasonable expectation of privacy in the bodily function of urinating and that society is prepared to recognize that right." National Assn. of Air Traffic Specialists v. Dole, 1987 U.S. Dist. LEXIS 14399, *24 (D. Alaska 1987). In some circumstances, where there is a valid reason to conduct drug testing, courts have provided for procedures designed to minimize the infringement on bodily privacy. See American Federation of Government Employees, AFL-CIO, Local 2391 v. Martin, 969 F.2d 788, 790 (9th Cir. 1992) ("The [district] court also prohibited direct observation of the provision of a urine sample while conducting reasonable suspicion testing"). The prohibition of police observation of someone naked or urinating without reasonable cause is clearly established. Qualified immunity for the bodily privacy claim is denied at this stage.

**V. Conclusion**

Defendants' motion for summary adjudication is GRANTED in part and DENIED in part. Summary adjudication is granted in favor of Defendant Jean Noll regarding claims of excessive force. Summary adjudication is denied to Defendant Jean Noll regarding claims of bodily privacy.

The parties are directed to submit new pretrial statements by 4:00 PM on May 3, 2014.

IT IS SO ORDERED.

Dated: __April 19, 2016__                              _____
                                                                            SENIOR DISTRICT JUDGE