UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL IOANE, et al, | CASE NO. 1:07-CV-0620 AWI EPG |
| **Plaintiffs** | **ORDER RE: MOTION FOR NEW TRIAL AND MOTION TO FILE AMENDED COMPLAINT** |
| v. | |
| KENT SPJUTE, et al, | |
| **Defendants** | **(Docs. 473 and 480)** |

## I. History

The current Plaintiffs are Michael Ioane Sr. and Shelly Ioane who lived at 1521 Fruitland Ave., Atwater, CA.  They are a married couple involved in tax disputes with the United States. Kent Spjute, Jean Noll, Jeff Hodge, Brian Applegate, and Michelle Casarez are Internal Revenue Service agents ("Federal Agents").  Based on the affidavit of Kent Spjute, the United States was able to obtain a search warrant for Plaintiffs' residence to collect records related to Steven and Louise Booth, clients of Michael Ioane Sr.  The search was carried out by Federal Agents (including the previously named individuals) on June 8, 2006.  This search forms the basis for the claims in this suit.

Michael Ioane Sr. and Shelly Ioane, together with former plaintiffs Glen Halliday, Ashley Ioane, and Michael Ioane Jr., filed suit against the named Federal Agents and the United States on April 20, 2007 and a First Amended Complaint shortly thereafter. Docs. 1 and 39.  The case was stayed pending resolution of a criminal case against Michael Ioane Sr. for tax fraud conspiracy, based in part on the evidence seized during the search. Crim. Case. No. 09-0142 LJO.  Michael Ioane Sr. was convicted on October 3, 2011 after a jury trial.  He appealed the conviction, but it

was affirmed.  Michael Ioane Sr. has filed a habeas corpus petition under 28 U.S.C. § 2255.  In the meantime, the stay was lifted in this case. Doc. 107.

Plaintiffs Michael Ioane Sr. and Shelly Ioane originally pursued several causes of action against the United States and the Federal Agents.  Through several rounds of motions, the only claims left are Fourth Amendment excessive force claims against Defendants Hodge and Applegate and Fourth Amendment violation of bodily privacy claims against Defendant Noll.  Specifically, Plaintiffs allege that Defendants Hodge and Applegate pointed guns at the heads of Plaintiffs and that Defendant Noll insisted upon entering the restroom with Plaintiff Shelly Ioane to witness her relieve herself.

In the last summary judgment motion, Defendant Noll sought qualified immunity for her actions in monitoring Plaintiff Shelly Ioane. Doc. 369.  Qualified immunity was denied. Doc. 384.  In response, Defendant Noll filed a notice of appeal to the Ninth Circuit. Doc. 394.  Defendants then filed a motion to bifurcate the claims against Defendant Noll from the claims against Defendants Hodge and Applegate, or in the alternative, to sever the claims. Doc. 398.  Plaintiffs opposed the motion. Doc. 401.  The request for bifurcation was granted. Doc. 405.

Trial on Plaintiffs' claims against Defendants Hodge and Applegate began on September 7, 2016. Doc. 455.  Shelly Ioane's claims were dismissed for failure to prosecute. Doc. 458.  Trial proceeded on Michael Ioane's claims alone.  On September 15, 2016, the jury returned a verdict in favor of Defendants. Doc. 462.  Michael Ioane filed motions for new trial and for leave to amend.  Docs. 473 and 480.  Shelly Ioane first joined in the motions (Docs. 477 and 481) and later withdrew from the motions (Doc. 505).

## II. Legal Standards

"A new trial may be granted...in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a).  Rule 59 does not specify the grounds on which a motion for a new trial may be granted. Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003).  Rather, the court is "bound by those grounds that have been historically recognized.

Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." Molski v. M.J. Cable, Inc., 481 F.3d 724, 728 (9th Cir. 2007), citations and quotations omitted.  A district court ruling on a Rule 59 motion may "weigh the evidence, make credibility determinations, and grant a new trial for any reason necessary to prevent a miscarriage of justice." Experience Hendrix L.L.C. v. Hendrixlcensing.com Ltd., 762 F.3d 829, 841 (9th Cir. 2014).

The trial court should grant a new trial only if the jury's verdict is so clearly contrary to the clear weight evidence that allowing the verdict to stand would result in a manifest miscarriage of justice. Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007); Landes Const. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1371-72 (9th Cir. 1987).

### III. Analysis

**A. Representation of Shelly Ioane**

Michael Ioane makes a number of arguments seeking to revive the claims of Shelly Ioane. On September 6, 2016 (the day before the trial was scheduled to begin), she had made a motion to continue the trial. Doc. 450.  Her request was denied. Doc. 452.  On the morning of September 7, 2016, she failed to appear for trial.  Her claims against Defendants Brian Applegate and Jeffrey Hodge were then dismissed for failure to prosecute. Doc. 458.

Defendants object to these arguments, pointing out that "While [Michael Ioane] has attempted throughout the litigation to represent [Shelly Ioane], as a non-lawyer he is unauthorized to do so. Further, as a co-litigant, he is not simply allowed to raise claims of others because he shares their side of the caption." Doc. 475, 2:15-19.  Shelly Ioane initially filed a notice of joinder in Michael Ioane's motion. Doc. 477.  However, Shelly Ioane later obtained legal representation. Doc. 494.  Through counsel at the status conference on January 8, 2020, Shelly Ioane withdrew her joinder in the two motions. Doc. 505.  It is evident that Shelly Ioane does not seek to revive her excessive force claims.

Michael Ioane had argued that "in this situation, a third party, or her Co-Plaintiff in this

1  case, has standing to assert her claims in a motion for new trial." Doc. 479, 4:17-18.  He relied on

2  U.S. Supreme Court precedent which states, "there may be circumstances where it is necessary to

3  grant a third party standing to assert the rights of another. But we have limited this exception by

4  requiring that a party seeking third-party standing make two additional showings. First, we have

5  asked whether the party asserting the right has a 'close' relationship with the person who

6  possesses the right.). Second, we have considered whether there is a 'hindrance' to the possessor's

7  ability to protect his own interests." Kowalski v. Tesmer, 543 U.S. 125, 129-30 (2004), citations

8  omitted.  Regarding the second requirement, Shelly Ioane is now represented by counsel.  There is

9  no hindrance in her ability to protect her own interest.  Michael Ioane does not have the authority

10  to make any argument on behalf of Shelly Ioane.  All requests to that effect will be denied.

11

12  **B. Motion for a New Trial**

13  **1. Continuance of Trial**

14          On September 6, 2016, both Michael and Shelly Ioane filed motions to continue the trial

15  that was scheduled to begin the next day. Docs. 445 and 450.  The motions were denied. Doc. 452.

16  Michael Ioane seeks to challenge the denial of Shelly Ioane's motion. Doc. 473, 3:14-7:9.  He

17  does not have the authority to raise this argument on her behalf.

18          Michael Ioane also challenges the denial of his own motion for continuance. Doc. 473,

19  7:10-12:26.  As a related argument, he states that the conditions of his confinement during trial

20  prevented him from adequately participating in trial. Doc. 473, 23:10-24:25.  Michael Ioane's

21  motion for continuance was based on his inability to prepare for his case in the week before trial

22  due to his transfer from Taft Correctional institution to Fresno. See Doc. 445.  For the trial on

23  September 6, 2016, Michael Ioane had to start preparing for his transfer August 31, 2016, one

24  week earlier and was actually moved on September 2, 2016.  In key part, he objects to being

25  unable to prepare for trial September 2-5, 2016. Doc. 473, 7:17-20.  The court notes that according

26  to Michael Ioane himself, it took two days to pack away his 15 boxes of legal material and

27  personal items for transport. Doc. 473, 7:21-25.  Therefore, his expectation of being able to have

28  full access to his materials while preparing for trial through September 5, 2016 was not realistic to

4

1  begin with.  Overall, the necessity of secured transport for prisoner litigants is an unfortunate

2  circumstance that is not unique to Michael Ioane.  While he was not able to prepare for trial until

3  the last minute, he clearly had sufficient time to organize his case.  The pretrial conference was

4  held on April 4, 2016 with a final pretrial order issued on June 30, 2016 after the parties amended

5  their pretrial statements.  The overall inconvenience of litigating while incarcerated does not merit

6  continuance.  The U.S. Supreme Court has stated that "Impairment of any other [non-habeas]

7  litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of

8  conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (discussing prisoner

9  access to law libraries within the context of an access to courts claim).  Interruption of preparation

10 due to transport between secured facilities in the week before trial must fall within that zone of

11 impairment.  Additionally, Michael Ioane states that "approximately 70 to 80 pages of documents

12 to be used as impeachment exhibits at trial were missing after the materials were improperly

13 searched and left disheveled without Mr. Ioane being present." Doc. 473, 8:23-27.  However,

14 Michael Ioane has not explained what that material consisted of, whose testimony it would have

15 impeached, and whether that material would have actually been introduced at trial.  Overall, he

16 was afforded meaningful access to the courts.

17      There were further circumstances in this case which blunted the effect of transport on

18 Michael Ioane.  On the first day of trial, September 7, 2016, the jury was selected and immediately

19 excused.  On the second day, September 8, 2016, the trial was continued in light of the amount of

20 time it took for Michael Ioane to be processed by the local holding facility and the prisons' mix up

21 over his prescription medications.  These problems resulted in a situation where Michael Ioane

22 had insufficient time to sleep.  As Michael Ioane pointed out in his papers, a continuance is

23 warranted when dealing with "situations in which the illness was unforeseen and arose on short

24 notice.... sudden illness, changed circumstances, or factors over which Plaintiffs had no control."

25 Nolan v. City of L.A., 2014 U.S. Dist. LEXIS 2256, *22 (C.D. Cal. Jan. 8, 2014).  These unique

26 circumstances over which Michael Ioane had no control merited a delay in the trial until the

27 problem could be corrected.  Opening arguments did not take place until the third scheduled day

28 of trial, September 9, 2016.  This extra buffer of time allowed Michael Ioane to recover from the

interruption caused by his transport.  With this extended time to prepare, Michael Ioane was given a meaningful right to participate in the trial.

The original denial of a continuance does not justify a new trial.

**2. Dismissal of Shelly Ioane's Claims**

Michael Ioane seeks to challenge the dismissal of Shelly Ioane's excessive force claims against Defendants Applegate and Hodge. Doc. 473, 12:27-15:16.  He does not have the authority to raise this argument on her behalf.

**3. Shelly Ioane's Deposition**

After Shelly Ioane refused to attend trial and had her excessive force claims dismissed, Michael Ioane attempted to use her deposition at trial.  The request was denied as Shelly Ioane did not fall within the definition of unavailable witness.  As part of the analysis denying Shelly Ioane's request for continuance, the court determined that notwithstanding the medical concerns raised, she could attend the trial and meaningfully participate in the case. See Doc. 452.  Michael Ioane argues that she qualified as an unavailable witness under Fed. Rule Civ. Proc. 32, which in relevant part states:

> Unavailable Witness. A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:
> (A) that the witness is dead;
> (B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition;
> (C) that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment;
> (D) that the party offering the deposition could not procure the witness's attendance by subpoena; or
> (E) on motion and notice, that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used.

Fed. Rule Civ. Proc. 32(a)(4).  In parallel, the rules of evidence state:

> Criteria for Being Unavailable. A declarant is considered to be unavailable as a witness if the declarant:
> (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;
> (2) refuses to testify about the subject matter despite a court order to do so;

(3) testifies to not remembering the subject matter;
    (4) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or
    (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:
        (A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or
        (B) the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4).
But this subdivision (a) does not apply if the statement's proponent procured or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying.

Fed. Rule Evid. 804(a).

Shelly Ioane was not deceased. As far as could be determined, she was at home in Atwater, CA, which is within 100 miles of the courthouse. Per the earlier determination, Shelly Ioane's medical concerns were not severe enough to prevent her from testifying. Doc. 483, September 7, 2016 Transcript, 5:1825. There was no assertion of any kind of privilege. Shelly Ioane had not earlier stated that she did not remember the subject matter. That leaves an inability to procure the witness's attendance by subpoena, motion and notice of exceptional circumstances, refusal to testify despite a court order, absent notwithstanding use of process or other reasonable means to procure the witness's attendance. Regarding this group of related concepts, Michael Ioane never explored these options during the trial. Even after Shelly Ioane's excessive force claims were dismissed for failure to show up to trial, Michael Ioane did not attempt to procure Shelly Ioane's presence by any kind of process. Instead, he repeatedly objected to the court's ruling dismissing her claims and tried to get them reinstated; that appeared to be the focus of his efforts. Michael Ioane, as the party seeking to use the deposition, had the affirmative burden of showing that Shelly Ioane qualified for the status of an unavailable witness. See Forbes v. Villa, 2013 U.S. Dist. LEXIS 199481, *10 (C.D. Cal. Dec. 3, 2013). He did not lay the groundwork for that determination.

The denial of the request to use Shelly Ioane's deposition does not justify a new trial.

**4. Dr. Ricardo Winkel's Testimony**

Michael Ioane objects to the testimony of psychologist Dr. Ricardo Winkel (Defendants' witness) and contrasts it with the exclusion Drs. Manolito Castillo and Roger Chamberlain

7

1  (Michael Ioane's witnesses).  This issue was addressed in motions in limine, before the trial.  At

2  that hearing, Michael and Shelly Ioane verbally affirmed that their claim for emotional damages

3  was limited in time, namely from the execution of the search in June 2006 through early 2008.

4  This was new information that was significant as Drs. Winkel, Castillo, and Chamberlain did not

5  treat/evaluate Michael or Shelly Ioane during that time period but rather in 2014-2015.

6      Regarding Drs. Castillo and Chamberlain, Plaintiffs did not seek to have them testify as

7  experts but rather lay witnesses that could describe their treatment of Shelly Ioane. Doc. 419, at 2-

8  3.  As they only started providing treatment in 2014, Michael and Shelly Ioane agreed to drop Drs.

9  Castillo and Chamberlain as witnesses during the August 22, 2016 hearing. Doc. 490, September

10  13, 2016 Transcript, 585:11-14.  Additionally, with the dismissal of Shelly Ioane's claims, their

11  testimony would not have been relevant to Michael Ioane's claims.  As for Dr. Winkel,

12  Defendants sought to introduce him as an expert witness.  The in limine motion to exclude his

13  testimony was reserved for trial: "Dr. Winkel's expert opinion was formed without that [time]

14  limitation in mind.  It is uncertain at his point whether his testimony would be relevant.

15  Defendants must make a proffer of evidence before Dr. Winkel may testify." Doc. 434, 13:1-4.

16  The different treatment of the testimony of the various doctors was based on these important facts.

17      During trial, Dr. Winkel's testimony was limited to opinions about causation and any

18  opinion about dollar amounts for damages was excluded. Doc. 490, September 13, 2016

19  Transcript, 593:18-594:6.  Michael Ioane objects to Dr. Winkel's testimony on the basis that

20  "Notwithstanding the understanding that Dr. Winkel was to only testify as to causation, he

21  continued to testify that Plaintiff was psychopathic, paranoid and angry." Doc. 473, 17:20-22.

22  However, one part of Dr. Winkel's report concluded that "Based on the entirety of the data I have

23  had the opportunity to consider, it is, therefore, my opinion to a degree of psychological certainty,

24  that the search did not constitute a substantial factor in the causation of Mr. Ioane's reported

25  symptoms of psychological disorder." Doc. 490, September 13, 2016 Transcript, 592:7-12.  Dr.

26  Winkel's discussion of Michael Ioane's disorders was in the context of explaining why he did not

27  think they were the result of the search.

28      Michael Ioane also objects to Dr. Winkel's testimony on the basis that "Dr. Winkel is not a

physician, or medical doctor, but merely holds a doctorate or Ph.D.  Therefore, if he cannot be an expert because his is not a physician, in reality he is a lay witness." Doc. 473, 18:19-22.  An expert witness is defined as:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  A medical expert does not need to be a treating physician.  Michael Ioane's confusion appears to arise from part of the motions in limine order: "when a treating physician testifies as to the cause of an injury or illness, he or she testifies as an expert." Doc. 434 15:2-3, quoting Patrick v. Henry County, 2016 U.S. Dist. LEXIS 67101, *7 (N.D. Ga. May 23, 2016).  That language limits what treating physicians can testify to as a lay witness; it does not limit what can qualify as an expert.  Non-treating physicians regularly qualify as expert witnesses. See, e.g. Bond v. United States, 2008 U.S. Dist. LEXIS 19881, *11 (D. Or. Mar. 10, 2008).

The inclusion of Dr. Winkel's testimony does not justify a new trial.

**5. Request to Amend Complaint**

On August 30, 2016 Plaintiffs made an ex parte motion to amend their complaint to add Kulbir Mand and Tony Lovan as defendants. Doc. 435.  The motion was denied. Doc. 437.  Michael Ioane challenges the denial of the motion to amend. Doc. 473, 19:14-21:6.  However, Michael and Shelly Ioane sought to amend the complaint to state that "Kulbir Mand and Tony Lovan, [] pointed their guns in a threatening manner at Shelly Ioane, when they encountered her." Doc. 435, 2:19-21.  Any amendment would only impact Shelly Ioane's claims, not Michael Ioane's claims.  Michael Ioane does not have the authority to raise this argument on her behalf.

**6. Michael Ioane's Incarcerated Status**

Michael Ioane argues he is "entitled to a new trial based upon the misconduct and prejudicial actions of both Defense Counsel and the court by allowing the jury to see and hear that Plaintiff was an incarcerated individual, which improperly influenced the jury by causing bias." Doc. 473, 21:10-14.  He specifically states that "there were two Marshalls standing behind Plaintiff at all times, two Marshalls behind the Judge, and one at the door. Plaintiff was also made to sit at the 'defendant's table' closes to the door to which they bring in prisoners, instead of being seated at the appropriate 'plaintiff's table.' This overprotection gave the obvious appearance to the jury that Plaintiff was incarcerated and a dangerous individual." Doc. 473, 21:24-22:3.  Court procedures attempt to provide as much equality to both sides as possible when one party is litigating while incarcerated.  The specific security measures that must be undertaken will not be grounds for a new trial.

Michael Ioane asserts that "Defendant's counsel improperly commented on evidence the Court previously excluded in limine.  During open [sic] arguments, Defense Counsel told the jury that Mr. Ioane was a convicted felon, was serving a nine-year sentence, and had only brought suit as retaliation against the Government….During closing arguments, Defense Counsel went on to remind the jury of Mr. Ioane's felony conviction." Doc. 473, 22:18-24.

First, Michael Ioane acknowledged himself that the fact of conviction could not be excluded from trial: "While Plaintiffs recognize that pursuant to F.R.E. 609(a) the defense is entitled to establish that Michael Ioane, Sr. is a convicted felon by way of impeachment provided that he decides to become a witness at trial, the defense is not permitted to delve into the details of the crime." Doc. 409, 8:9-14.  Reference to the conviction was permitted.

The only issue is whether the exact term of sentence should have been revealed.  In opening argument, Defendants' counsel did mention Michael Ioane's nine year prison sentence. Doc. 489, September 9, 2016 Transcript, 294:2-3.  To be clear, Defendants' counsel did not violate any motions in limine ruling as the order did not clearly exclude that information.  Fed. R. Evid. 609 states

(a) In General. The following rules apply to attacking a witness's character for

truthfulness by evidence of a criminal conviction:

> (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
>
>> (A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
>>
>> (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and
>
> (2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.

There is some disagreement about whether the length of sentence is covered by Rule 609. Several courts have suggested that only statements that generally confirm the sentence qualifies as a felony may be revealed. See United States v. Osazuwa, 564 F.3d 1169, 1175 (9th Cir. 2009) ("only the prior conviction, its general nature, and punishment of felony range [are] fair game for testing the defendant's credibility"), quoting United States v. Albers, 93 F.3d 1469, 1480 (10th Cir. 1996); see also Matthews v. Debus, 2020 U.S. Dist. LEXIS 30498, *8 (N.D. Ill. Feb. 19, 2020) ("what is typically admissible for impeachment purposes is the conviction, not the sentence imposed; the sentence imposed by a court has little or nothing to do with the question of the witness's credibility"); Bell v. City of Miamisburg, 1992 U.S. Dist. LEXIS 22764, *62 (S.D. Ohio Jan. 17, 1992) ("Rule 609 does not authorize an extensive examination of the facts and circumstances surrounding the conviction or the sentence imposed"). But other courts have come to the opposite conclusion. See United States v. Estrada, 430 F.3d 606, 616 (2nd Cir. 2005) ("inquiry into the 'essential facts' of the conviction, including the nature or statutory name of each offense, its date, and the sentence imposed is presumptively required by the Rule [609], subject to balancing under Rule 403"); Scott v. Palmer, 2015 U.S. Dist. LEXIS 134369, *3 (E.D. Cal. Sep. 30, 2015) ("the length of Plaintiff's sentence also has some bearing on his credibility"); Washington v. Samuels, 2016 U.S. Dist. LEXIS 96781, *13 (E.D. Cal. July 22, 2016) (allowing reference to "the length of his sentences"). Even assuming arguendo that mentioning his precise sentence was not permitted under Rule 609, the prejudice to Michael Ioane was limited. A new trial is not warranted under these circumstances.

1

2    **7. Jury Instructions**

3        Michael Ioane argues that "the Court improperly excluded a jury instruction requested by

4    Plaintiff which was necessary to provide the jury with a clear statement of the law and their

5    exclusion was error." Doc. 473, 25:1-4.  He had requested the instruction "An officer pointing a

6    gun at someone, with no reasonable indication of danger, is conduct that may constitute excessive

7    force, even if it does not cause physical injury" citing for support <u>Robinson v. Solano County</u>, 278

8    F.3d 1007, 1014-15 (9th Cir. 2002) (en banc) and <u>Baldwin v. Placer County</u>, 418 F.3d 966, 970

9    (9th Cir. 2005). Doc. 453, 3:22-25.  Michael Ioane believes that "Since according to their own

10   testimony, the evidence is undisputed that agents had their firearms out of their holsters upon

11   entering Plaintiff's home, Plaintiff would therefore have been entitled to judgment as a matter of

12   law on that issue if the proper jury instruction had been used." Doc. 473, 26:14-19.  This assertion

13   is not correct because having a firearm out of a holster does not mean that the officer is pointing it

14   at someone.  The excessive force jury instruction given at trial states:

15       In general, a use of force during a search is unreasonable under the Fourth
16       Amendment if an officer uses excessive force.  Thus, in order to prove an
         unreasonable use of force in this case, Mr. Ioane must prove by a preponderance of
17       the evidence that the officer used excessive force by pointing a firearm at his head
         and doing so unreasonably during the entry of the residence or the subsequent
18       search.

19       Under the Fourth Amendment, an officer may only use such force as is 'objectively
         reasonable' under all of the circumstances. You must judge the reasonableness of a
20       particular use of force from the perspective of a reasonable officer on the scene and
         not with the 20/20 vision of hindsight. An officer's intent or motive is not relevant
21       to your inquiry.

22       In determining whether the officer used excessive force in this case, consider all of
         the circumstances known to the officer on the scene, including:

23           1. whether a firearm or other weapons was likely to be available to Mr.
         Ioane,
24           2. the nature and severity of the crime being investigated;
             3. whether more than one resident or officer was involved,
25           4. whether a search warrant had been issued,
             5. whether Mr. Ioane was the subject of the investigation that led to the
26       search warrant;
             6. the type and amount of force used by the officer,
27           7. whether Mr. Ioane posed an immediate threat to the safety of the officer
         or to others or to the ability of the officer to conduct the search safely, and
28           8. whether Mr. Ioane was actively resisting or attempting to flee[.]

Doc. 467, 37:3-22. The instruction was based on Ninth Circuit Model Civil Jury Instruction 9.25 and the facts of the case as reflected in the evidence presented and the pretrial order. This language accurately described the excessive force standard. "So long as the instructions fairly and adequately cover the issues presented, the judge's formulation of those instructions...is a matter of discretion." United States v. Reed, 147 F.3d 1178, 1180 (9th Cir. 1998), quoting United States v. Echeverry, 759 F.2d 1451, 1455 (9th Cir. 1985).

The denial of the requested jury instruction does not justify a new trial.

**C. Leave to Amend**

Michael Ioane's request for a new trial has been denied. His avenue for relief is appeal. Thus, there is no reason for a new complaint.

## IV. Order

Michael Ioane's motion for new trial is DENIED. Michael Ioane's motion for leave to file an amended complaint is DENIED.

IT IS SO ORDERED.

Dated:   May 28, 2020   _____

SENIOR  DISTRICT  JUDGE