1            UNITED STATES DISTRICT COURT

2            EASTERN DISTRICT OF CALIFORNIA

3                    --oOo--

4  SHELLY J. IOANE, et al.,      ) Case No. 07CV00620-AWI-EPG
                                 )
5          Plaintiffs,           ) Fresno, California
                                 ) Thursday, April 23, 2020
6      vs.                       ) 10:00 a.m.
                                 )
7  JEAN NOLL, et al.,            )
                                 )
8          Defendants.           )
   _____)
9

10           TRANSCRIPT OF TELEPHONIC INFORMAL
            DISCOVERY DISPUTE CONFERENCE
11      BEFORE THE HONORABLE ERICA P. GROSJEAN
            UNITED STATES MAGISTRATE JUDGE

12

13 APPEARANCES:

14 For the Plaintiffs:          PETER H. BORENSTEIN, ESQ.
                                Post Office Box 885
15                              Culver City, California 90403
                                (213) 362-8740
16
   For the Defendants:          JAMES E. WEAVER, ESQ.
17                              RYAN S. WATSON, ESQ.
                                United States Department of
18                                 Justice
                                Civil Tax Division
19                              Ben Franklin Station
                                Post Office Box 683
20                              Washington, D.C. 20044
                                (202) 305-4929
21

22

23

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

ii

1    Court Recorder:              Otilia Rosales
                                  United States District Court
2                                 2500 Tulare Street
                                  Fresno, California 93721
3
     Transcriber:                 Crystal Thomas
4                                 Echo Reporting, Inc.
                                  2160 Fletcher Parkway
5                                 Suite 209
                                  El Cajon, California 92020
6                                 (858) 453-7590

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

1   FRESNO, CALIFORNIA, THURSDAY, APRIL 23, 2020 10:00 A.M.

2                        --oOo--

3      (Call to order of the Court.)

4           THE COURT:  Okay.  Good morning.  This is Judge

5   Grosjean.  This is the case of Shelly Ioane versus Jean

6   Noll, 07CV620, here for a telephonic informal discovery

7   dispute conference.

8           Let me just confirm that we are on the record.

9   Madam Clerk, are we on the record?

10          THE CLERK:  Yes, we are.

11          THE COURT:  Oh, okay.  Thank you.

12          Let me take appearances, starting with the

13  Plaintiff.

14          MR. BORENSTEIN:  Good morning, your Honor.  Peter

15  Borenstein for the Plaintiff.

16          THE COURT:  Thank you.  Good morning, Mr.

17  Borenstein.

18          And for Defendant?

19          MR. WEAVER:  James Weaver for Defendant, your

20  Honor, as well as Ryan Watson.

21          THE COURT:  Thank you.  Good morning, Mr. Weaver,

22  and good morning, Mr. Watson.

23          We are here for an informal discovery dispute

24  conference.  I put it on the record really just because this

25  case is contentious.  It doesn't mean that I intend to make

2

1  formal rulings as part of this process.  I'll remind you

2  from my process, this is informal.  I do intend to give you

3  some thoughts, and I think that has two purposes.  Primarily

4  the purpose is to attempt to resolve this without motion

5  practice.  If I can give you my thoughts, I'm hoping that

6  that will help direct a mutual resolution.  But at the end I

7  will be giving permission to move to compel, and if it does

8  go forward with the motion to compel and it is resolved in

9  favor of the moving party under Rule 37, there may be costs

10  that are associated with that.  So when I give some

11  direction about it, if still the non-moving party is

12  resistant or that -- that that motion comes to a motion to

13  compel costs and attorneys' fees under Rule 37, maybe it's

14  that there's no costs and attorneys' fees associated with

15  the this informal process.

16         Okay.  So I'm going to work from Defendants'

17  letter, as they would be the moving party, and I think we'll

18  just take one issue at a time.  The first issue that I --

19  I'm trying to see how we want to go through this.  Hold on.

20  I'll go by page three of that letter, and dispute number one

21  was the failure to answer Defendants' interrogatories.

22         Let me give some general thoughts, and then I'll

23  hear from the parties.  My first thought is that I will hear

24  the dispute, notwithstanding the discovery deadline.  This

25  would be different if there had not been a request for this

3

1 discovery at this time, but as far as outstanding

2 interrogatories, if the responses were, in fact,

3 insufficient and the requests were timely served, I will

4 hear the dispute, and -- and if I move to compel, I'll

5 compel answers or if I order, I will do that notwithstanding

6 the extension of discovery.

7          We'll put to the end the separate question about

8 whether the extension of discovery will happen regardless.

9 But just in terms of the first defense to the interrogatory

10 responses, I think seeing that now it's too late, I don't

11 find that to be persuasive.

12          Turning to the actual interrogatories, why don't

13 we take them one at a time.  Now I'm looking to exhibits to

14 Defendant's letter brief, which I think is probably an

15 incomplete recitation of those interrogatories, but I do see

16 I guess the first one is special interrogatory number 18,

17 and that asks for:

18               "Identify all individuals along

19               with the subject of that information and

20               include in your answer the name,

21               telephone number, address, email contact

22               information, employer, job title, and

23               all relevant contact information in your

24               answer."

25          And in the response that I have, the Plaintiff has

4

1   said:

2              "To the extent that special

3          interrogatory calls for the names or

4          contact information of potential third

5          party witnesses, responding party

6          objects on the basis of third party's

7          privacy concerns and will direct any and

8          all communications of said third party

9          witnesses to counsel for responding

10         party."

11      And then respond -- I'll summarize -- I guess

12  listing a number of people.  I can't tell if there's any

13  disclosure of -- I'm looking to whether there's disclosure

14  of subject matter.  Maybe I do need to read it.  Sorry for

15  reading this aloud too.  Okay.

16         -- "responding parties hereby

17         incorporates into her response the

18         parties' joint scheduling report filed

19         on November 25, 2019, which indicates

20         Ms. Ioane anticipates calling the

21         following witnesses:  Ms. Ioane, her

22         three children, her neighbors at the

23         time of the search, her general

24         practitioner, Doctor Sebar (phonetic),

25         her psychiatrist, Doctor Castillo, and

5

1          Doctor Winkle (phonetic), Defendant's

2          expert, who interviewed Ms. Ioane in

3          2015.  In addition to her own medical

4          professionals, Plaintiff plans on

5          calling an expert on women's trauma and

6          post-traumatic stress to prove up the

7          extent of damages in this case."

8          I don't think that would be a subject matter.

9  Okay.  So here are my thoughts on the specific -- on the --

10 on the specific interrogatories.

11          It's a little funny, and what makes it funny is

12 that really Plaintiff should have provided this information,

13 although perhaps not all of it, quite a bit of it in its

14 Rule 26 disclosure.  And so in that way it is discoverable,

15 and I'm looking at Rule 26(a)(1)(A)(i), and it does require

16 the name and, if known, the address and telephone number of

17 each individual likely to have discoverable information,

18 along with the subject of that information that the

19 disclosing party may use to support its claims or defenses

20 unless the use would be totally for impeachment.

21          So it's -- on one hand, that information is

22 clearly discoverable.  I guess I think that Defendant may be

23 doing you a favor, Plaintiff, because if -- if you don't

24 respond this way, and you haven't supplemented your initial

25 disclosures, it would seem to me that they could just move

6

1  to preclude these witnesses entirely.  So I -- I recognize

2  that you would say it was in your joint status report.  I'm

3  not your District Judge.  I don't know whether it would be

4  precluded or not.  But in terms of facilitating a meet and

5  confer, I would think you probably do want to provide this

6  information.  I think you're the one at risk if you don't,

7  not just of blocking discovery but of having your witnesses

8  be precluded.

9          So, again, that's the first thing I'd look at.

10 And so you do have to give address, telephone number.

11         Then I would look to whether the other information

12 is either a fair extension of those initial disclosures or

13 otherwise relevant because it goes a little bit further,

14 email contacts, employer, job title.  I don't know.  I guess

15 I would look to see whether that's relevant.  Probably would

16 allow email contact information.  I'm not sure about

17 employer and job title.

18         As I said, I -- I would do the -- the subject

19 matter of that information.  And then the -- and then the

20 last thing on my mind is the harder question is whether

21 Defendant gets to depose these individuals now.  That

22 discovery request has not been timely made, although I see

23 this is arguably not a timely disclosure.  So I'm -- I'm

24 more open about what happens next.  But I -- I guess to

25 summarize, Plaintiff clearly needs to give me information

7

1 that would be in Rule 26 to the extent they need to call

2 these witnesses.

3          Why don't I start with Plaintiffs to get your

4 thoughts and see if I can give any more direction after I

5 touch base with counsel.

6          Mr. Borenstein?

7          MR. BORENSTEIN:  Thank you, your Honor.  Just to

8 -- just to be clear, after I recounted the stuff we put into

9 the joint status report, I gave it a -- five of those

10 witnesses by name, Michael Ioane, Ms. Ioane's children, and

11 then her neighbor's mom, Karen Creighton (phonetic).  So I

12 did -- you know, we did provide the witnesses that we said

13 we might call in the status report.  And if -- if it's

14 really just a matter of providing their addresses and their

15 phone number, we're happy to do that, although, again, I

16 just want to stress that the deadline was -- was April 17,

17 and so this -- I don't -- it's unclear to me why counsel

18 thinks that the deadline doesn't apply to them, and

19 particularly where we agree to a limited fact discovery

20 period, expressly to kind of avoid this last-minute kind of

21 gamesmanship that I think is going on.  We -- we'd

22 definitely be opposed to lots more depositions at this point

23 in the game, and -- but, you know, in order to facilitate

24 kind of a resolution at least of these last interrogatories,

25 I -- I'm fine with amending the response to include an

8

1  address and a phone number for the five people that we've

2  indicated here.

3          THE COURT:  Well, let me push on a couple of

4  those.  So what -- is there any part of the substantive

5  request that you are objecting to or will you provide that

6  information then?

7          MR. BORENSTEIN:  The -- aside from -- just to

8  clarify, aside from the names of the witnesses that we

9  intend to call that we haven't already identified, is there

10  other substantive information that you're referring to?

11          THE COURT:  Do you have the interrogatories?

12          MR. BORENSTEIN:  Yes.

13          THE COURT:  Okay.  All right.  So it's name,

14  telephone number, address, email contact information,

15  employer, job title, and all relevant contact information,

16  along with the subject of that information.

17          MR. BORENSTEIN:  Sure.  So I agree with you that

18  the job title and the employer is relevant, and -- but, you

19  know, so that I guess leaves the email contact information,

20  and we don't know if they have emails.  If they do, I will

21  provide them.

22          THE COURT:  And the subject matter?

23          MR. BORENSTEIN:  All of the -- so -- and I -- and

24  I think I've indicated this to counsel.  All of these

25  witnesses will be witnesses to testify to the damages that

9

1  we're alleging.

2          THE COURT:  Okay.  Now, regarding depositions, is

3  the first time you disclosed the identity of these witnesses

4  in this interrogatory response?

5          MR. BORENSTEIN:  The -- the identity -- no.  The

6  identities of the three children have been available to

7  counsel since the beginning.  And -- but Paul and Karen

8  Creighton, this is the first time that the -- those names

9  have actually been disclosed, yeah.

10         THE COURT:  So when were they supposed to depose

11 the witnesses?

12         MR. BORENSTEIN:  Well, your Honor, we -- we --

13 again, we agreed on a limited fact discovery period for one

14 deposition, which was the deposition of the Defendant, and

15 now that deposition is not necessary.

16         So I think -- I think that allowing for more

17 depositions for witnesses that are simply going to testify

18 that Ms. Ioane was extremely -- her life was totally

19 disrupted by her invasion of privacy, particularly as

20 Coronavirus is progressing, I think is not only unnecessary

21 but borders on harassment of our witnesses and especially in

22 light of how we agreed last year, at the end of last year,

23 that all we needed was a limited fact discovery period.  So

24 now, the --

25         THE COURT:  Had you disclosed those witnesses when

10

1  they agreed to that?

2          MR. BORENSTEIN:  No, your Honor.

3          THE COURT:  No.

4          MR. BORENSTEIN:  But they knew -- I mean, but --

5  oh, sorry.

6          THE COURT:  Let me just check.  Did somebody

7  just join?

8          MR. WEAVER:  Your Honor, if I could just

9  interject, my apologies --

10          THE COURT:  No, no, no, no.  I was just wondering

11  if somebody just joined the call.

12          MR. WEAVER:  Yes, that's me.

13          THE COURT:  Oh, I'm sorry.  Who is this?

14          MR. WEAVER:  This is James Weaver.  I dropped out,

15  and I just rejoined.

16          THE COURT:  Oh, okay.  Okay.  I apologize, Mr.

17  Weaver.  Okay.

18          MR. WEAVER:  Your Honor, just --

19          THE COURT:  So I --

20          MR. WEAVER:  -- the only thing --

21          THE COURT:  Are you saying they cannot depose

22  witnesses that you're going to call?

23          MR. BORENSTEIN:  Your Honor, I'm saying that

24  they've been aware that we are planning on calling witnesses

25  that are people who can testify to the damage that Ms. Ioane

11

1 has suffered and that we agreed to a limited fact discovery

2 period in light of that. And so I -- I don't -- I don't

3 really see why we should now extend the limited fact

4 discovery period even, you know, after the parties agreed to

5 a shortened period of time, knowing that, you know, we would

6 call witnesses to testify to the damage that Ms. Ioane

7 suffered and that Defendant would call witnesses that they

8 refused to name to testify to I don't know what, I guess

9 that the invasion of privacy didn't happen. So --

10        THE COURT: But what makes you -- wait. What

11 makes you think Defendants were planning to call witnesses

12 and not tell you who they are?

13        MR. BORENSTEIN: Because they refused to tell me

14 who they are.

15        THE COURT: Have you put these people on your Rule

16 26 disclosure? And, if not, why do you get to call them at

17 all?

18        MR. BORENSTEIN: That question is to me, your

19 Honor, Peter Borenstein?

20        THE COURT: Yes.

21        MR. BORENSTEIN: Okay. They were -- so the names

22 have been -- they're in our joint status report, and we were

23 planning on revealing them because we're not -- you know, to

24 be honest, we're not 100 percent sure who we'd like to call

25 yet. But, you know, pursuant to the Rules, we were going to

12

1   disclose the names of these witnesses I think the month

2   before trial or something like that, and that's what

3   Defendant also said that they would do.

4            So I -- again, I think that the idea now that

5   we're going to go through this round of additional

6   depositions where we've agreed to limited fact discovery is

7   not necessary and, again, I think kind of burdensome and

8   borderline harassment given that we're trying to avoid lots

9   more discovery practice.  I think we're both in agreement on

10  that, and I -- I don't see how it's fair to now claim that,

11  oh, well, the deadline doesn't apply to us.

12           THE COURT:  Well, what about but just Rule 26, why

13  do you think you don't have to supplement your initial

14  disclosures to include that information and still you think

15  you get to call them as witnesses?

16           MR. BORENSTEIN:  Well, your Honor, we can -- if

17  you'd like, we're happy to -- I mean, again, like I said, we

18  can supplement these responses with the names, the

19  addresses, and the -- you know, and if there are other

20  witnesses, again, we're still completing discovery on our

21  end.  We are planning on calling several people who can

22  testify to Ms. Ioane's -- the change in her life since the

23  invasion of privacy.

24           So I'm not opposed to providing -- supplementing

25  our Rule 26 disclosures to -- to add those names.  I am

13

1  opposed to providing more time to have a dozen, half a dozen

2  depositions.  I just think that that's totally unnecessary

3  and totally against how we've agreed to proceed in this

4  matter.

5         THE COURT:  You said what I would like.  I asked

6  do you think that these people fall within your Rule 26

7  initial disclosure requirement?

8         MR. BORENSTEIN:  Our witnesses that we call to

9  testify as to the damages that Ms. Ioane has suffered?

10         THE COURT:  The witnesses in your interrogatories,

11  do you think they fall within your Rule 26 initial

12  disclosure requirements?

13         MR. BORENSTEIN:  Sure.

14         THE COURT:  Okay.  Let's hear from either Mr.

15  Weaver or Mr. Watson, please.

16         MR. WEAVER:  Your Honor, this is James Waver, and

17  let me just start by saying I live in a rural area, and this

18  is the first Court Conference I've tried remotely here since

19  the government offices' stay at home order has been put in

20  place.  So apologies for the drop.  Hopefully it won't

21  happen again.

22         So the whole purpose of Rule 26(a)(1) disclosures,

23  as opposed to pretrial disclosures, is to allow the opposing

24  party to gather information about the witnesses that -- or

25  anyone, whether they're going to be a witness or not, but

14

1  they have relevant information during discovery.

2          So our aim, starting before but certainly with the

3  submission of the joint report and at the -- from the

4  scheduling conference on is, okay, look, there are some

5  people out there.  They weren't on the initial disclosures.

6  I realize that Mr. Borenstein is under no obligation to

7  figure out of those people that he's disclose who he may

8  call at trial under Rule 26(a)(3), but he still needs to

9  give us the information so we can figure out what we need to

10 know.

11          THE COURT:  So, Mr. Weaver, let -- so let me push

12 on you, though, because they said in the joint scheduling

13 report, which I have as a quote in their response -- I don't

14 have it before me.  I'm trusting that that is a quote, but

15 they told us in November 25th, 2019 Ms. Ioane anticipates

16 calling the following witnesses, Ms. Ioane, her three

17 children, her neighbors at the time of the search, her

18 general practitioner, et cetera.

19          And so then we had a conference, a scheduling

20 conference, and you did not say, "Well, I obviously need to

21 depose these people."  What you said was we'll take limited

22 discovery including whatever it was, I think one deposition.

23 So why do you now that the discovery cutoff has ended and

24 you haven't noticed any of these depositions, why are now

25 you saying you get to expand discovery to something like

15

1  seven depositions?

2          MR. WEAVER:  Okay.  Your Honor, first, I'm not

3  sure whom these seven depositions -- but let me first refer

4  your Honor in the joint status report to the seventh -- this

5  is a -- I've actually block quoted this in -- in our letter

6  on page two.  We were very clear that if there was going to

7  be additional expert discovery, namely, the damages part of

8  the case, then we might need to obtain additional deposition

9  testimony from Ms. Ioane or other witnesses.

10         Now, the problem with respect to other witnesses

11 is we didn't have (a) the contact information to find the

12 people, but I asked for those on January 17.  I asked Mr.

13 Borenstein for those on January 17 -- or I referred to them

14 I should say.  I asked for them in an email that I've

15 excerpted on January 30.

16         But not only did we not have the contact

17 information, which makes it easier to go find these people

18 -- I'm sure we could have found the three children.  We

19 couldn't find the neighbor -- but, in addition, we don't

20 want to waste Mr. Borenstein's time.  We don't want to waste

21 our time.  The question is what are they going to say.  So,

22 until we have more specific information than just, "Oh,

23 they're going to testify about damages," okay, well, in our

24 view, Ms. Ioane has fabricated her damages.  I'm sure she's

25 upset about her husband having been in prison for 10 years,

16

1  but we think everything else is a fabrication.

2          So I'm going to need specific instances -- and we

3  asked for this in the next interrogatory, interrogatory 19

4  -- to ascertain and confer with the expert that we plan on

5  presenting at trial do we need to depose this person.  And

6  he may say, "Look, this is crazy."  On the other hand, he

7  may say, "Well, they're recalling some instance that we

8  should find out more about."

9          I have --

10         THE COURT:  Okay.  So, Mr. -- now, Mr. Borenstein

11  tells me Defendant's counsel plans to call witnesses they

12  refused to name.  Has Defendant listed on their initial

13  disclosures complete with the information in 26, every

14  witness that Defendant intends to call?

15         MR. WEAVER:  Your Honor, I believe that is the

16  case.  We certainly named the agents I believe that were

17  witnesses.  Ms. Ioane -- Ms. Noll is on there.  Hopefully

18  we've got Ms. Ioane on -- on there.  So I believe the answer

19  is yes.

20         MR. BORENSTEIN:  Your Honor, that's just not true.

21         THE COURT:  Hold on.  Hold on.  We're not to you

22  yet.

23         MR. BORENSTEIN:  Okay.

24         THE COURT:  Hold on.

25         MR. WEAVER:  Your Honor, just to clarify, we have

17

1  not figured out which of those people we might want to call,

2  and we don't have to do that -- Mr. Borenstein has correctly

3  indicated that I said, well, you know, we'll figure out who

4  our witnesses we'll call --

5        THE COURT:  You've disclosed the -- you've

6  disclosed the identity, the name, the address, the telephone

7  number of any individuals that you may call as a witness?

8        MR. WEAVER:  Your Honor, I don't have the document

9  up in front of me, but I believe the answer is yes.

10        THE COURT:  Okay.  I will --

11        MR. WEAVER:  These initial disclosures --

12        THE COURT:  Okay.  I am -- I am going to pause

13  there.  Mr. Borenstein, that sounded -- that sounded good.

14  What -- what makes you think that's not the case?

15        MR. BORENSTEIN:  Your Honor, I'm looking at the

16  joint scheduling report, and it says -- I'm reading from it

17  directly:

18            "Defendant will timely disclose its

19            witness list in accordance with Rule

20            26(a)(3).  Defendant tentatively

21            anticipates calling several current or

22            former IRS agents as fact witnesses, as

23            well as Ms. Ioane during its case in

24            chief."

25        THE COURT:  Okay.  And so you're saying initial

18

1  disclosures did not include the names of the potential

2  current or former IRS employees?

3        MR. BORENSTEIN:  I don't think so, your Honor.

4  And then I also think that the -- the disclosures also adds

5  that witnesses can contact -- you know, all contact with the

6  witnesses submitted as being called at trial can be done

7  through counsel.  So I -- I've also done -- I tried to do

8  typical of the witness's privacy is to say you have to

9  contact the witnesses through counsel.  I don't --

10       THE COURT:  I have another -- okay.  I have

11  another question for Mr. Weaver.  Employer and job title,

12  does it -- do they need to do that, and why is that

13  relevant?

14       MR. WEAVER:  Your Honor, it's only relevant to the

15  degree that the only way -- you know, it may -- it may be

16  that it's easier just to serve a subpoena or get in contact

17  with folks through, you know, employment.  They may not want

18  to give us their residential address.

19       So as long as we have a way of getting in contact

20  with them, it's not like I need that information.  And,

21  parenthetically, your Honor, if you will indulge me for just

22  a second, as we're talking, I pulled up the initial

23  disclosures.  These were done before I was involved in the

24  case, but I'm looking at a bunch of special agents.  Let's

25  see.  There's the -- something like six special agents.

19

1 There's Michael Ioane and Shelly Ioane.  I don't know

2 without further checking if they were supplemented.  It is

3 true that we said can be contacted through undersigned

4 counsel.  That's because they were employees of the IRS, and

5 for various reasons, typically, in our experience I guess,

6 if you're an employee of a party, the contact ought to go

7 through counsel, and they would have been provided with

8 access to depose them if they wanted to, but we did disclose

9 those individuals.

10          THE COURT:  I understand.

11          So, Mr. Borenstein, you said that it's just those

12 people should be contacted through counsel.  Is -- is your

13 counsel representing them?

14          MR. BORENSTEIN:  No, your Honor.

15          THE COURT:  Okay.  Okay.  Let me give you some

16 thoughts on this, and we'll move to the next issue.  I think

17 on the specific question that is posed, if it came before

18 me, I would likely move to -- I would order compelling a

19 response to special interrogatory number 18.  I'm not -- I

20 don't need to make full rulings.  You hear I'm not as sure

21 about employer and job title.  I definitely would compel or

22 order -- I guess compel the information that tracks the

23 initial disclosures and also see if there's other relevant

24 information.

25          There's a couple of questions that are not really

20

1  before me quite yet, but there's things to direct your meet

2  and confer.  You hear there's a Rule 26 issue.  That's not

3  before me, and it may never be before me.  It may be before

4  a District Judge.  But I -- I think in terms of meeting and

5  conferring for your disclosure, there is an issue about

6  whether your Rule 26 disclosures are disclosing your

7  witnesses.  I don't know how much of a stickler Judge Ishii

8  is, but there -- I know it's come up man y times, and I

9  think you're -- it's risky if you are relying on a

10 disclosure other than your Rule 26 disclosures.

11         The deposition issue, honestly, I don't know.  And

12 I see both sides of that, and maybe -- I think we may -- I

13 don't -- I don't think we probably have enough time for

14 another informal conference.  If you want to compel, use a

15 motion to compel on it.  But you heard my -- I think clearly

16 the two sides of it.  I understand Defendant's position that

17 if it hasn't been on the disclosure and any identities have

18 not been there, then they couldn't have taken the

19 deposition.  And -- and, generally, parties are entitled to

20 take the depositions of witnesses.  And I did not find it

21 persuasive to hear Plaintiffs say, well, they're just going

22 to say damages.  Right.  I mean, that's the case, and you

23 are allowed to find out that information.

24         But I also feel for Plaintiff that if it was known

25 in the schedule, in the joint status report that Plaintiff

1 intended to call these witnesses and, although there was not

2 yet a disclosure of names, I did not hear at our scheduling

3 or status conference that Defendant wished to depose these

4 individuals, nor has there been a deposition notice before

5 the close of discovery, and this would be significant.

6       Maybe one way and the thing that I can do on

7 informal conferences that I can't do in formal orders is

8 suggest that there may be some middle grounds, for example,

9 a further disclosure a little bit more than normal about

10 what their subject matter of deposition testimony is or what

11 they intend to testify about, maybe that that can be

12 sufficient to alleviate the need.  Maybe there's additional

13 interrogatories.  Those are the type that you can agree to

14 meet and confer and compromise because I think if this came

15 to a motion to compel, I really couldn't see either way.  So

16 perhaps you could come up with something that says a

17 compromise.

18       Certainly, if you wanted some limited deposition

19 if Plaintiff would allow that, that's somewhere in between

20 too.  I -- yeah, I don't know.  That's a little bit of --

21 that's tricky.

22       Okay.  Well --

23       MR. WEAVER:  Your Honor --

24       THE COURT:  Yes?

25       MR. WEAVER:  I'm sorry.  Your Honor, could I ask

22

1 permission for one thing that relates to this before we move

2 on?

3          THE COURT:  Who's that?  I'm sorry.  Who's

4 speaking?

5          MR. WEAVER:  James Weaver.  I'm sorry.

6          THE COURT:  Thank you, Mr. Weaver.

7          MR. WEAVER:  Under Rule -- under Rule 37(C), as I

8 recall it, one of the things that we can move to compel on

9 is a failure to disclose under Rule 26(a) and (e).  And the

10 relief that can be requested includes just not being able to

11 use those folks or that information at trial.  And so I

12 think our position could be -- should be to the Government

13 that -- excuse me -- the Defendant's position should be,

14 well, look, if we can't get adequate information so we know

15 what these people are going to say, the most efficient way

16 to do that is going to likely be limited short depositions.

17 If we can't get that, then I think we want to move to compel

18 or to sanction or preclude, whatever we want to call it

19 under 37(c), just to have these folks not be able to

20 testify.  And that -- that would be fine.  That eliminates

21 the problem in the most efficient way for us.

22          THE COURT:  All right.  I understand that, and I

23 understand that right now Plaintiff is at risk of that.

24 Like I said, that's not really before me right now, and I --

25 and I don't know whether it would be, meaning I would be

23

1  corresponding with Judge Ishii, but precluding a witness

2  from testifying is that gray area.  That might be something

3  before a trial judge or it might -- I know it's between

4  discovery and trial.  So that's why I don't know if it ever

5  will be before me.

6          Sort of like the depositions, on the record now it

7  could go either way.  I think it's like that.  If you don't

8  come to an agreement and -- and you don't help them out,

9  don't take depositions, don't get more discovery, maybe

10 don't even compel more here, yes, you are strengthening your

11 case that they will be precluded, but I -- I can't either

12 tell you really how I'd rule or, more importantly, how Judge

13 Ishii would rule.  So I -- that's the best -- you need to

14 make your choices.

15         MR. BORENSTEIN:  Your Honor, may I be heard?  This

16 is Peter Borenstein.

17         THE COURT:  Yes.

18         MR. BORENSTEIN:  One thing that it seems to me is

19 that a lot of the reasons -- the main problem is that the

20 disclosures happened a really long time ago, and so it's now

21 -- we're switching back and forth between the scheduling

22 report and motions that happened before Mr. Weaver's tenure

23 and obviously before I came on board.

24         So I wonder if there's also room to maybe

25 supplement those disclosures with this information that

24

1 seems to be alluding us.  That's also something that I'd be

2 willing to -- to do, in addition to supplementing the

3 interrogatory responses with contact information.  If it's a

4 matter of just getting on the same page about those

5 disclosures, it might be worth it for us to make

6 supplemental Rule 26 disclosure or, you know, just to get on

7 the same page because it sounds like we're working on

8 several different pages.

9         THE COURT:  You make your choices, but if I were

10 you, I would.

11         MR. BORENSTEIN:  And I -- and I -- and I think

12 I've been clear that we're willing to work with counsel.  I

13 just want to make sure that we're using the best -- we're

14 actually -- our time is making the best use.

15         THE COURT:  So let's move to the next

16 interrogatory that was at issue.  Again, we're still in the

17 process of informal conference.

18         Defendant brings up this special interrogatory

19 number 19:

20             "Describe in detail with

21         particularity" -- or did we already do

22         this -- "how the subject of that

23         information identified may support your

24         claims."

25         I think this is probably -- probably overlapping.

25

1  Are there any questions that specifically come with this

2  interrogatory?

3          MR. WEAVER:  Your Honor, I -- this is James

4  Weaver.

5          THE COURT:  Okay.

6          MR. WEAVER:  I would only say that the purpose of

7  that interrogatory was really to help tease out whether a

8  deposition would be -- or would have been, whichever way it

9  goes, necessary.

10          THE COURT:  Okay.  I think I've addressed that in

11  connection with interrogatory number 18.  Okay.

12          Interrogatory number 20 says:

13              "Describe in detail and with

14          particularity the emotional distress or

15          trauma that you are claiming that you

16          suffered."

17          And then it seeks the nature described.  The

18  objection is:

19              "Responding party objects to this

20          special interrogatory as vague and

21          ambiguous to the extent that it relies

22          on the terms emotional distress, loss,

23          defense kind of types of purported

24          damage, none of which are defined."

25          And then also that it is premature and calls for

26

1  expert testimony, and it's compound.

2         My initial thoughts are it is not overly vague.  I

3  do think it could be responded to.  So I would overrule

4  those objections.

5         As far as expert testimony, I think my thoughts

6  are, well, if all you're going to rely on is expert

7  testimony, then that's fine.  If you are expecting something

8  other than expert testimony, which I would think probably

9  includes the Plaintiff saying how she was traumatized and

10 her emotional distress, the it is not a -- an acceptable

11 objection.

12        And so this also is one that if you stand on what

13 you say, you're limited to expert testimony if I -- if I

14 were your trial judge.  And so I think my guess is that

15 there is more that is not expert that you would like to say.

16        Now, there's -- there's a few other issues here.

17 I don't remember whether you folks are having a deposition

18 of Ms. Ioane still.  That may be a better time to get this

19 information, and so, although it is not the objection that's

20 here, in your meet and confer, that may be another place it

21 can be disclosed.

22        Additionally, I -- this is a little like a

23 contention, you know, hard to say, meaning if you're just

24 saying what she experienced, then she should say it in

25 discovery.  If it's what is your contention, that -- that

27

1   has to do with the timing, meaning it might be appropriate

2   to wait for a full disclosure until after the expert

3   deadline or at least after fact discovery or after her

4   deposition.  I'm sorry.  I don't have the Rule in front of

5   me, but the Rules do provide that for contention

6   interrogatories, that can happen at a later time.

7           So those -- those are some thoughts that I have on

8   special interrogatory number 20.

9           Why don't we start again with you, Mr. Borenstein.

10          MR. BORENSTEIN:  So the reason why we've objected

11  to the vague and ambiguous is because, you know, emotional

12  distress and trauma, we're going to use expert testimony to

13  kind of define what that means and then use other witnesses

14  and Ms. Ioane's testimony to color in what emotional

15  distress and trauma is, and then with regard to the other

16  uses of the term "loss" and -- there -- it's a fishing

17  expedition, the special interrogatory.  And, you know, we're

18  happy to identify kind of some things that we may touch on

19  as far as how her life has changed, the humiliation that she

20  suffered, the trauma that she suffered.  And so, again,

21  we're happy to amend the special interrogatory.  We'll say

22  that we have not spoken and I do not -- I do not foresee Ms.

23  Ioane being deposed again.  That's just not something that

24  we ever discussed and figured in -- that we have been in

25  compliance with (indiscernible) for fact -- limited fact

28

1  discovery really the --

2          THE COURT:  Didn't you -- didn't she address this

3  issue -- hold on.  Did -- did Ms. Ioane already address this

4  issue in her previous deposition?

5          MR. BORENSTEIN:  She -- she mentioned it a little

6  bit, yeah.  I mean, she -- she's alleged the whole time and

7  has maintained the whole time Troy was involved and during

8  the course of this whole litigation that the invasion of

9  bodily privacy was extremely disruptive, extremely

10 traumatizing, and that's why she's maintained the

11 litigation.  So, you know, we would definitely oppose

12 another deposition, actually, at this point, and we're happy

13 to amend this special interrogatory to kind of give an idea

14 of what type of harm she's suffered, including humiliation,

15 emotional distress of having her life change significantly.

16 She doesn't do things that she enjoyed before like that,

17 that's kind of traditional damages, things like this.

18         THE COURT:  Are you okay with -- with limiting her

19 trial testimony to what has been disclosed already?

20         MR. BORENSTEIN:  Well, your Honor, she's going to

21 -- when she's called, she'll repeat what she's already been

22 deposed as saying, and we'll flesh out kind of how -- how

23 this experience affected her.  I want --

24         THE COURT:  Okay.  So basically -- basically the

25 same as she said, though?  I mean, different words versus --

29

1  and this is -- and it's -- this is going to come into the

2  IME issue too.  Are you anticipating her add something else

3  that says, well, when the litigation restarted, everything

4  changed on me, and I have emotional distress and trauma to

5  which I didn't testify about before because this all come up

6  after that?  Is she going to say anything like that?

7              MR. BORENSTEIN:  -- largely different than what

8  she was deposed as saying.  The reason why he expert

9  testimony is required is because there is, I think,

10  necessary for an expert to explain how exactly emotional

11  distress and trauma --

12             THE COURT:  Wait.

13             MR. BORENSTEIN:  -- have affected her --

14             THE COURT:  I'm not asking -- I'm not asking -- I

15  know I said it overlaps, but right now I'm still setting

16  aside the expert issue, and I'm just pushing you when -- on

17  the scope of the response to the interrogatory.

18             MR. BORENSTEIN:  Sure.

19             THE COURT:  I'm wondering if you're okay rising

20  and falling on generally the subject matter that she talked

21  about in her deposition.  Are you okay with that, that's

22  what she --

23             MR. BORENSTEIN:  Yes, I -- I don't think -- I

24  don't think what she'll testify to at trial will be

25  substantially different than what she was deposed as saying

30

1  in her deposition.

2        THE COURT:  Okay.  Mr. Weaver?

3        MR. WEAVER:  Your Honor, my -- my first response

4  to that is that it's very clear that Ms. Ioane is now

5  claiming permanent damage, and aside from expert testimony,

6  one would expect her to be recounting things that postdate

7  her deposition in 2014.

8        Now, again, I wasn't in the case in 2014.  We have

9  attached to various things, the summary judgment for one,

10  pieces of the deposition transcript, and my general

11  recollection of that is that she answered some questions

12  about various kinds of damages but oftentimes, you know,

13  said "Well, I really couldn't recall" and then supplemented

14  something later because she hadn't really been able to fully

15  answer the question.

16        So my -- my -- yes, it's two prongs.  One -- and I

17  would add we certainly reserved in the joint status report

18  the possibility that we might need to take her deposition

19  again if there was going to be additional expert testimony.

20  I don't really want to take another deposition of Ms. Ioane.

21  I'm hoping it won't be necessary, but the whole idea of our

22  requesting in a Rule 6(b) motion for an extension of the

23  fact discovery deadline was to actually get responsive

24  answers.  In my view, this -- this answer that we were

25  provided to interrogatory 20 is just flat out now answer

1 whatsoever.  And, you know, if Mr. Borenstein and Ms. Ioane

2 were to come back and say, well, you know, starting in 2000

3 -- well, continuing maybe, 2017, '18, '19, whatever, I can't

4 watch TV anymore or I can't have people in the house, and

5 let me give you some particulars, okay, we probably don't

6 need to depose Ms. Ioane again in that case.

7         But we do need to find out, since she's claiming

8 13 years of damages, what in the world has been going on

9 since 2014.

10         THE COURT:  Mr. Borenstein?

11         MR. BORENSTEIN:  Your Honor, I'm fine with

12 supplementing, as I said, her responses to include how her

13 life has changed.  She's been claiming damages for 13 years

14 from the beginning.  I don't think -- again, I don't think

15 that this response to the special interrogatory will be

16 substantially different.

17         I also disagree with Mr. Weaver about this idea

18 of permanent damage, but we -- that will probably -- we'll

19 touch on that in the motion to compel the mental health

20 examination.  But, like I said, I'm fine if -- if it's

21 really just a matter of learning kind of some of the details

22 of the harm that she suffered, especially since her last

23 deposition, we can provide that, but, again, I kind of want

24 to avoid prolonged discovery litigation that I guess we're

25 both in agreement on to kind of avoid by agreeing to

32

1 limiting fact discovery.

2          So, to the extent that I can assuage some of the

3 issues that Mr. Weaver is raising, I'm happy to amend the

4 responses.  I am concerned that if he is going to continue

5 -- if there continues to be a dispute because they -- what

6 the ulterior motive really is is extending discovery to

7 include lots more depositions, which I -- I oppose.  But --

8          THE COURT:  Okay.  So my -- my concluding thoughts

9 on special interrogatory number 20, if this were before me

10 in a motion to compel, I would likely overrule the objection

11 to the extent that it was about vague and ambiguous.  I do

12 think -- I can see potential ambiguity.  I think it's clear

13 and if we see it's clear about what it covers, and -- and so

14 in that respect I would perhaps require an adequate

15 response.  I may be okay with referring to disclosures that

16 have already come in terms of a deposition in the past.

17          I think that Plaintiff, in deciding what Plaintiff

18 wants to disclose, it has to do with -- or remembering that

19 this is the mirror image of what she may testify to.  And so

20 now that I've overruled or will likely overrule objections,

21 you may stand and fall on your interrogatory response.  I

22 don't need to probably spell it out, but in terms of if she

23 goes beyond that, it may either be precluded or may be a

24 source of impeachment.  So I think that should encourage

25 Plaintiff to determine whether truly there has been

33

1  disclosure either through a deposition or otherwise about

2  what she's claiming.  And -- and I don't know, actually,

3  whether Plaintiff is or isn't what both sides are claiming.

4  Plaintiff now says that it's about the same as the

5  deposition testimony.  So be it.  I'm not saying I don't

6  think any judge would say you need to use those words, but

7  it might be time to look and see if there's some other type

8  or category or something.  And so that -- I guess that --

9  that should inform your meet and confer.

10         On depositions -- and I guess this is a time to --

11  to discuss -- you know what?  I'm going to -- I want to

12  discuss the discovery extension.  I will say at this time I

13  am not permitting additional depositions, at least over

14  objection.  If the parties agree to take depositions, and as

15  it's agreed to, I think you should file a stipulation.  But

16  you could -- I will sign off on it.  But if there is an

17  objection, I do think the next thing is Defendant would have

18  to move to compel, and this -- this is another one that I --

19  I don't know.  I will note that there was not a notice of

20  that deposition before the discovery cutoff.  This was not

21  at least discussing what -- I don't think it was part of my

22  order, but I'd have to look on what the extended discovery

23  was.  I have it here, but I couldn't find quickly whether it

24  was excluded or not.

25         So I -- you may decide to agree in order to make

34

1  sure that you're covered on trial testimony.  But,

2  otherwise, I'm not agreeing now, and there would have to be

3  a motion which would all be issues about due diligence,

4  prejudice and that sort of consideration.

5        Okay.  Let's turn next to the -- to the Ioane, and

6  then we will get to the schedule as well.  As I understand,

7  there's also a dispute -- there previously was an

8  independent medical exam kind of question as well of whether

9  there will be a supplement to that examination.

10        For what it's worth, I did look at the Rule, which

11  is Rule 35.  I didn't see anything one way or another about

12  a supplemental examination.  I guess that initially that

13  there usually is not a supplemental examination, but I -- I

14  did look there to see if there -- there was at least some

15  thoughts.  I haven't read the comments.  Maybe there's

16  something about it there, and so in that way I'm open.  It's

17  just a matter of -- of common sense.  I'm curious, similar

18  to what I said about the interrogatory, about whether there

19  has been something substantial that's being claimed.

20        So, again, on one hand, if Ms. Ioane is basically

21  going to say that she's been traumatized, continues to be

22  traumatized the same sort of trauma, and she expected it to

23  continue and it has, I don't think that an additional

24  medical examination would be required.  If -- and I really

25  only had this from I think a -- a quote from a declaration

35

1 from Defendant's expert about what they think Plaintiff's

2 expert would say.  So I don't know if it's true, but just

3 Defendants are portraying that there is some sort of new

4 damages opinion that is going to say that, even though she

5 said at her last independent medical examination she was

6 fine, now she's not fine.  Now she's in a completely

7 different state of mind.  That's one issue.  On this -- and

8 it's an informal conference.  So I get to think openly on

9 meet and confer.  I don't know if you've done expert

10 disclosures.  I wonder if you're able to compel the expert

11 disclosure.

12          I also wonder -- I do have thoughts about -- in

13 the COVID situation about, you know, whether the video or

14 something like that would happen.  I -- I do worry that if

15 it needs to happen and certainly before rebuttal experts, I

16 don't want to put that off so long.  So I have some

17 practical concerns about this as well.

18          Okay.  So those are -- those are some thoughts.

19 Let me hear from the parties.  And, just to make it up since

20 I kept starting with Plaintiff, I'll turn to you first, Mr.

21 Weaver.

22          MR. WEAVER:  Yes.  Thank you, your Honor.  So,

23 first, in terms of timing, the reason I -- I filed this Rule

24 35 -- and I filed it once the Government -- excuse me -- the

25 Defendant had done last time around, which wasn't go through

36

1  this joint statement Local Rule 251 process.  Apologies for

2  that.  But I -- you can argue that the request ought to be

3  in before the end of fact discovery even though as a

4  practical matter it's going to be involving experts.

5           So, in terms of timing, it is something that I

6  just wanted to make sure was teed up prior to the close of

7  fact discovery.  That was the intention behind filing the

8  motion.

9           In terms of why we need it and what we're asking,

10 let me just start and say it is true that Rule 35 doesn't

11 expressly talk about supplementing.  There are cases out

12 there -- some are cited in the brief that I filed -- that I

13 think it's fair to say stand for the proposition that there

14 is nothing in the Rule that precludes it, and courts have

15 granted supplemental discovery.  And, really, I found three

16 rationales.

17          One just is if there are permanent damages, and

18 there are alleged permanent damages in this case, then

19 fairness dictates that the Defendant, as well as Plaintiff's

20 expert, feel on equal footing.  And so where this permanent

21 damages -- and there's going to be, you know, discussion

22 about where things are today or, you know, close to trial.

23 And it's completely unfair to have Doctor Winkle have

24 examined Ms. Ioane five years prior to Doctor Borris -- and

25 Doctor Borris is the new expert here.

1           I also found in the case law references to change

2    in circumstances.  And, again, I've briefed that.  And the

3    reference that you see in the Exhibit D-3(e) that I

4    excerpted from Doctor Winkle's declaration is based on the

5    -- the last examination in 2015 was recorded.  Actually the

6    transcript of that recording of the examination has been

7    provided to Mr. Borenstein.  And in the transcript Ms. Ioane

8    does go into how she was feeling better.  And, you know, the

9    only thing that triggered this -- I'm paraphrasing, of

10   course, but what triggered her symptoms again was the fact

11   that she was going to have to face uncomfortable questions

12   during discovery, that kind of thing.  The case was

13   essentially stayed during the criminal prosecution of Mr.

14   Ioane, and then once it became, you know, reactivated again

15   after Mr. Ioane's conviction, apparently that triggered

16   further trauma on her part.

17          So, clearly, I think there's a clear factual

18   record on which Doctor Winkle's declaration is based for her

19   having essentially changed circumstances.  On the one

20   instance, it wasn't permanent.  Now it is.  So those two

21   even alone I think argue strongly in favor of asking for an

22   additional examination.  And, you know, the way I read Rule

23   251, which may not be correct, is that we get a motion on

24   file, and then sometime before seven days before the hearing

25   date that the motion is noticed for, we have to file a joint

38

1  statement -- we have to have a joint conference.  And,

2  actually, there is in the filed records one of the exhibits

3  that I filed was a letter that I sent to Mr. Borenstein on

4  April 6th asking if we could have the joint conference,

5  initial conference, on April 10th.  Mr. Borenstein did not

6  agree to that.  And so we still have more time.  That motion

7  is noted for hearing date I believe of May 15th.  And, as I

8  understand the Local Rule anyways, what would be required is

9  before -- up to the point of seven days, that joint

10  statement could be filed.

11          But we want to be on a level playing field.  It's

12  only fair.  We believe it's fully within the construction of

13  the Rule, as in the case law.  I cited some cases in the

14  briefs that I filed as to why this is needed.  And then,

15  finally, I excerpted pieces of a filed declaration from

16  Doctor Winkle saying that, look, if I'm going to opine on

17  this, I would like to be able to examine her.  Why should we

18  have to essentially rely on, you know, whatever the

19  Plaintiff's expert has said?  The Rule was put in place

20  because apparently the drafters of the Rule didn't think

21  that cross examination was going to be adequate under those

22  circumstances.  Rather, an opposing expert or expert

23  retained by an opposing party would be able to find out on

24  their own what the situation might be.

25          And then, finally, in terms of the time, place,

1  and manner of the examination, what we're asking for again

2  is simply to be on equal footing and for Doctor Winkle to

3  comply with the relevant standards of his profession.  So,

4  namely, if Doctor Borris has in the last few weeks had

5  access to Ms. Ioane, well, then if that wasn't a problem,

6  there shouldn't be a problem for Doctor Winkle to do so as

7  well.  On the other hand, if she did a telephone interview

8  and provided that the professional standards can be met, a

9  telephone interview would work just fine.

10         So I think that in terms of -- what we're looking

11  for in terms of the time, place, and manner is just

12  something that will practically work and will be fair and on

13  par with whatever Plaintiff's expert was able to do.

14         THE COURT:  Mr. Borenstein?  Did we lose him?  Mr.

15  Borenstein, are you on?  It's possible he was the one that

16  just made the -- well, let's just wait a few minutes -- or a

17  minute at least, see if he calls back in.

18     (Pause.)

19         MR. BORENSTEIN:  Hi, this is Peter.  Sorry.  I got

20  dropped.

21         THE COURT:  Okay.  I think we found out very

22  quickly that you did.  So we were just waiting.  Why don't

23  you respond.

24         MR. BORENSTEIN:  Right.  So, first of all, I don't

25  think that there's been a substantial change meriting

40

1 another mental health examination.  So, to the extent that

2 the opposing counsel's request is to, you know, explore a

3 substantial change, I don't think that's there, regardless

4 of whether Mr. Weaver calls the damages permanent or

5 whatever the opposite of permanent damages.

6          That being said, you know, we're happy to -- you

7 know, once -- as the expert discovery is, you know, up and

8 running, we're happy to go back and forth about what type of

9 damage Ms. Ioane suffered is.  Doctor Borris has not

10 interviewed Ms. Ioane yet, and almost certainly, when she

11 does, it will almost certainly be a video conference.

12          Our expert, Doctor Borris, is actually waiting on

13 personal health information to be released to her by Doctor

14 Winkle, and Mr. Winkle has not -- Doctor Winkle has not

15 released it.  I'm not sure why.  I'm concerned it might be

16 because opposing counsel is expecting him not to release it.

17 But we're really interested in moving forward with expert

18 discovery, and, you know, for that reason, I think opposing

19 counsel's suggestion to extend the time for expert discovery

20 is useful, and I was disappointed that they wouldn't

21 stipulate to extend expert discovery, and I -- and I hope we

22 can reach consensus on that today or soon.

23          In any case, I don't think a mental health

24 examination is necessary, another one by Doctor Winkle, and

25 I think barring any other indication that there's been a

41

1 substantial chance since Doctor Winkle examined her, I don't

2 think that there's -- there's grounds for it.

3          THE COURT:  Mr. Weaver, can you respond to this

4 issue about disclosure of medical information?

5          MR. WEAVER:  Yes, your Honor.  So Mr. Borenstein

6 at some point in the last few weeks did ask if -- if -- or

7 mention that Doctor Borris had asked Doctor Winkle directly

8 for information, and my proposal back to Mr. Borenstein was,

9 okay, wait a minute.  These are Rule 26 testifying experts.

10 With the change in the Rules back in 2013, some information

11 falls within work product.  Other information does not.

12 Probably the information being requested is of the kind that

13 does not, but I think all of those kinds of requests should

14 go through counsel so that counsel can figure out, okay, is

15 this work product or is it not.

16          And so, as soon as I get a request -- and I'm not

17 trying to -- I'm not trying to be deleterious.  I'm assuming

18 Mr. Borenstein and I can work out where, you know, there's a

19 request for that information, and I'll go back to Doctor

20 Winkle and say, "Okay.  Look, you've already given the test

21 results in your report.  Now do you have -- or whatever test

22 it is, do you have the raw data?"  And if he has raw data to

23 turn over, great.  If, on the other hand, all he has is a

24 draft report -- I'm not saying this is the case.  I don't

25 really know what the case is -- then there might be an

42

1   issue, but I -- I don't think it's appropriate, with the

2   caveat, your Honor, that most of what I and Mr. Watson do is

3   tax-related litigation for the Tax Division of the DOJ.

4   We're on this case because of the federal suit involving an

5   IRS person.  But I don't believe it's appropriate where Rule

6   26 experts are involved just to have informal communication

7   going back and forth between the experts.  But I am

8   perfectly willing to go get anything that is appropriate to

9   turn over to Mr. Borenstein for review.

10            THE COURT:  Good.  Let me address these -- so I

11  guess I -- I think my idea of -- well, I think, first of

12  all, the Defendant has timely raised the issue.  I -- I

13  think this may be one that I'm deciding whether this is

14  something I order or not, but what makes sense is that maybe

15  we wait to see what Plaintiff's expert says, because it --

16  it really appears to be -- the question is whether it has

17  gone so beyond the scope of the previous medical examination

18  that a supplemental medical examination needs to happen, and

19  I really can't tell.  This happened a long time ago, 2006.

20  I don't know if just because she says "And I'm still

21  traumatized the same way for the last five years," I don't

22  think that would be enough for a new medical examination.

23  And -- and I don't think -- I want to be careful that it's

24  just not another bite at the apple.  On the other hand,

25  there may be something different, and -- but it would -- it

*Echo Reporting, Inc.*

43

1 would be limited.  It would be limited to what's happened in

2 the last five years.

3          So I -- I guess I -- I'd encourage, as I have in

4 the past, to meet and confer.  If you folks can come up with

5 an agreement at any time, maybe Plaintiff realizes that it

6 is going to go a little bit beyond the scope of last ones,

7 and you can arrange for something that's limited to video.

8          If it is objected to, I'm okay if Defendant waits

9 until after they receive the -- the disclosure, but then it

10 needs to be promptly brought to my attention.  Maybe -- or

11 maybe not we need to work out the details of all that, but

12 that -- we're on the record.  So you have some comfort, but

13 it really does seem to rise and fall on how much the expert

14 disclosure relies on something that couldn't have been

15 available at the time of the first medical examination.

16          Okay.  I -- I think that those are the substantive

17 issues.  Let me talk about the schedules, and then -- and

18 then we'll see if there's anything else.

19          On the expert disclosure schedule -- and I know

20 that Defendant also wants to talk about the discovery

21 schedule, but are we okay with the proposed change to the

22 experts that was in the proposed stipulation attached to

23 Plaintiff's letter, and that would have the Plaintiff's

24 expert disclosure due August 24th, 2020, rebuttal expert

25 disclosure September 24, 2020, and expert discovery cutoff

44

1  October 23rd, 2020?

2          MR. BORENSTEIN:  Yes, your Honor.

3          THE COURT:  Okay.

4          MR. WEAVER:  Your Honor, this is James Weaver.

5          THE COURT:  Yes.

6          MR. WEAVER:  But for the last few things that you

7  said, I would be fine with that.  In fact, the schedule in

8  Mr. Borenstein's letter was the same that I had proposed

9  earlier.  So we are basically in agreement, with one caveat,

10 which, you know, I think I'm going to ask that there be some

11 revision in the dates, and that is were the motion for the

12 additional examination to go forward, be on file, and a

13 ruling to come out beforehand, then this would have been

14 fine.  But if we're not going to really be able to absorb

15 and review a report until let's say August 24th, then it

16 would be impossible to litigate whether we would be entitled

17 to another exam and adhere to a deadline to do that exam and

18 come up with a rebuttal report by September 24.  That's just

19 not realistic if we're going to be litigating whether or not

20 there's an additional supplemental follow-up exam after the

21 disclosure on August the 24th.

22          So I think I would like or request that we build

23 in another month or so between the expert disclosure and the

24 rebuttal report and/or just, you know, in some way, shape or

25 form in a way that conforms to what you want us to do in

45

1  terms of procedure, allow the motion to be litigated now.

2  And I realize you indicated it might be better to litigate

3  it after the disclosure of a report, but I don't see how we

4  could adhere to just having one month between the disclosure

5  of Doctor Borris's expert report, litigate whether or not

6  Doctor Winkle is entitled to a follow-up exam and then have

7  him do that exam and churn out his rebuttal report all

8  within 30 days.

9          THE COURT:  That's what I'm going to do.  I am

10 going to adopt the proposed changes to the expert schedule

11 that was in the proposed stipulation.  I read those before.

12 We'll do a minute order.  I will say that Defendant has

13 permission to move to compel an additional independent

14 medical examination after August 24th if there is not a

15 resolution prior to that and if the Defendant believes that

16 that is justified based on Plaintiff's expert disclosure.

17         I think rather than plan out exactly how that

18 happens, I will say that -- I'm looking at the calendar --

19 if Plaintiff wishes to file a motion to compel an

20 independent medical exam, it should contact the Court no

21 later than August 26, 2020 in order to seek an expedited

22 briefing and hearing schedule.  That's what will be the

23 order -- hold on.  Let me say what I -- what I have in mind.

24         So -- so I don't have to figure it all out, you

25 just tell me.  You read it and you think one -- and if there

1 hasn't been already some agreement, and we'll figure out

2 what makes sense then.  It may be that we come up with a

3 very abbreviated -- a quick hearing on it and that I compel

4 something quickly, if I compel it.  And it may be that we

5 can have that disclosure so quickly that we don't need much

6 of a change to the rebuttal, if any, or maybe we do.  I need

7 to see the extent of it.  But this -- this will give us --

8 if it comes up, you're going to come to me.  We're going to

9 figure it out, and it may require an extension, but I'm not

10 -- I'm not granting one yet.

11          Okay.  Who wanted to speak?

12          MR. WEAVER:  James Weave.  Your Honor, you

13 mentioned Plaintiff would contact you, and I just wanted to

14 -- I think you meant Defendant would contact you.

15          THE COURT:  I did mean Defendant.  Thank you.  So

16 Defendant should reach out to the Court no later than August

17 26, 2020 if Defendant wishes to compel an additional or

18 supplemental independent medical expert, and then we will

19 address a schedule after that.

20          Okay.  Now, let's go to the discovery.  So let me

21 think aloud and then figure out how we're going to order it.

22 I do want additional time for the -- for discovery requests

23 that have already been served and addressed, I want that

24 supplementation to be able to happen, and I think it's fair

25 to make some deadlines for when that happens, and I also

47

1  want to have time to allow Defendant to move to compel.  And

2  when they move to compel, what we do do is we select a date,

3  and then you're right that there is a joint statement that

4  is filed one week before that date.  I -- I would not look

5  at what was already filed.  You should do a joint statement.

6         What I think maybe we do is select a date now for

7  a hearing on a motion to compel, and if one week before you

8  don't need it, then you just say that there's been a

9  resolution, and if you do need it, then your joint statement

10  is due at that time.

11         You said that you had noticed it for May 16.  I

12  want to make sure that's both enough time and so that works

13  with my schedule.  I think it's going to be a little tight.

14  That really means that you'd have to have a joint statement

15  two weeks from now.

16         Let me see.  Madam Clerk, do I happen to have time

17  on May 22nd or May 29th?

18         THE CLERK:  Let me check.

19         MR. BORENSTEIN:  Your Honor, just to -- just to

20  chime in, this is Peter Borenstein.  I'd -- I'd prefer May

21  29th if that's at all possible.

22         THE COURT:  Okay.  So we'll look at that date

23  first.

24         MR. WEAVER:  Your Honor, this is James Weaver.

25  Let me just say that May 29th may be impossible.  I have a

48

1  two-week trial.  At this point I've inquired, and it is

2  still on the calendar in the Western District of Michigan

3  that starts May 26th and ends June 5th.  Now, do I think

4  that trial will likely be continued?  I think there's a fair

5  chance of that, but at this point the last communication

6  from the Court was it's still on the calendar.  So May 22nd

7  would be viable.  If not, I would have to wait until after

8  June 5th.

9          THE CLERK:  Your Honor, the 22nd you are

10  available.  The 29th you have the criminal duty calendar in

11  the afternoon, and you at 10:00 a.m. have a motion for

12  preliminary approval of class action settlement for a --

13          THE COURT:  Okay.  So I don't have that anyway.

14  So the 22nd, let me just go back to that.  I know you

15  preferred the 29th, Mr. Borenstein.  Could you do the 22nd?

16          MR. BORENSTEIN:  It's also -- oh, no, that's been

17  continued.  I could do it.  I do think -- I agree with you

18  that opposing counsel rushed to put May 15th on the

19  calendar.  I prefer to wait until after Mr. Weaver's trial

20  is over, June 8th.  I don't think it makes a huge

21  difference.  It gives us more time to give complete answers

22  to avoid flotsam litigation which --

23          THE COURT:  Okay.  I -- we can just extend it.

24  Okay.  Let's look at June 12th.

25          THE CLERK:  Your Honor, an earlier time you had

49

1 asked me to keep June --

2          THE COURT:  You're right.  Okay.  What about --

3          THE CLERK:  The 19th you are available.

4          THE COURT:  Okay.  June 19th, how's June 19th?

5 Mr. Borenstein?

6          MR. BORENSTEIN:  That's fine.  That's fine, your

7 Honor.  Thank you.

8          THE COURT:  Mr. Weaver?

9          MR. WEAVER:  Yes, that is fine.

10          THE COURT:  Okay.  So we're going to set a hearing

11 on a motion to compel for June 19th at 10:00 a.m.  A joint

12 discovery statement that is consistent with the Local Rules

13 is due no later than June 12th, 2020.  And Defendant has

14 permission to file a motion to compel on any discovery

15 request that has been addressed here and already served and

16 additionally move to compel any depositions.  That's going

17 to be in the order.  I will clarify usually I would have

18 liked to do another informal conference, and I'm also not

19 necessarily saying that I think that it is timely.  But, as

20 we discussed, if there isn't agreement and Defendant is

21 seeking depositions, this would be the time for me to hear

22 about it.

23          Okay.  Let me see if that addressed everything or

24 if I missed anything.  Mr. Borenstein?  I don't know if we

25 have Mr. Borenstein.

50

1      How about you, Mr. Weaver?

2      MR. WEAVER:  Your Honor, I think the main thing

3  that I just want to make sure I understand so I don't run

4  afoul of the Rules, if there is a hearing on a motion to

5  compel on June 12 --

6      MR. BORENSTEIN:  I think I -- I might have cut

7  off.

8      THE COURT:  Okay.  Okay.  Well, welcome back, Mr.

9  Borenstein.  I was just asking if there's anything else, and

10  Mr. Weaver was wondering about the -- about the Rules.  And

11  so now we have a hearing -- right.  We have a hearing on the

12  19th.

13      Okay.  So what's your question, Mr. Weaver?

14      MR. WEAVER:  So this, I -- you had mentioned that

15  would mean the joint discovery statement was due on June

16  12th.  Would normal calendaring rules apply, meaning that I

17  would have to calendar the motion 21 days prior to -- at

18  least 21 days prior to June 19, correct?

19      THE COURT:  No, I -- no.  I think now that it is

20  set, I don't think you need to do anything further.

21      Madam Clerk, do you know if we require something

22  else or now that we've ordered it, do we need anything

23  further?

24      THE CLERK:  Not to my knowledge.  I'm going to put

25  it on the calendar and just wait for the docket number to

51

1  add to the calendar once the motion is actually filed, but

2  not to my knowledge.

3          THE COURT:  So I'm okay.  You have a hearing set,

4  and you're going to do a joint discovery statement on June

5  12th or say that you don't have a dispute and you don't need

6  to file something, a formal motion earlier than that.  You

7  should meet and confer about the subject of the dispute.

8          MR. WEAVER:  Oh, okay.  So no motion needed until

9  June 12th?

10         THE COURT:  Right.

11         MR. WEAVER:  Okay.  Thank you for clarifying that.

12         MR. BORENSTEIN:  Your Honor, may I be heard?  I

13 was -- I got cut off while I was talking.

14         THE COURT:  Yes.  Go ahead, Mr. Borenstein.

15         MR. BORENSTEIN:  The only other thing I think we

16 may need some clarification on is this question of Doctor

17 Winkle being able to release Ms. Ioane's personal health

18 information.  I'm certain that it's not included in normal

19 discovery practice, and it's Ms. Ioane's confidential health

20 information.  So I -- I do think it's not correct to

21 identify it as something that counsel needs to be involved

22 with.  And, you know, it's also prolonging the time it takes

23 for Doctor Borris to actually complete her report.

24         So, you know, I'm sure Mr. Weaver and I will talk

25 about it offline, and I just want to note that it's -- it's

52

1  my understanding that personal confidential health

2  information is not a part of the discovery thing, and that

3  the experts actually communicate between themselves to

4  release it once they have authorization from the patient.

5          THE COURT:  I'll just say -- I'll say this, and I

6  guess in the order why don't we add the parties shall meet

7  and confer regarding the prompt release of information from

8  Doctor --

9          MR. BORENSTEIN:  Winkle.

10          THE COURT:  -- Winkle, thank you, Doctor Winkle.

11  I guess I -- I don't feel strongly about whether it goes

12  through counsel except that it has to be done promptly, and

13  it sounds like it is not being done.  So I don't necessarily

14  have an objection, but I don't -- I understand that

15  independent medical experts are somewhere in between.

16  Certainly it's true that you don't -- opposing counsel

17  doesn't usually speak to your retained expert, and I

18  appreciate that this might be so formulaic you just say I

19  need this information and it's not wrong to ask, but I also

20  don't have an objection to working through counsel as long

21  as counsel does it pretty promptly.

22          So why don't you meet and confer about that.  But,

23  Mr. Weaver, I think you hear loud and clear that this is an

24  issue that needs to be dealt with one way or another

25  quickly.  Do you understand that?

53

1        MR. WEAVER:  I do, your Honor.  Unless I can find

2  something that would suggest otherwise, I do think the

3  appropriate thing for retained experts would be to go

4  through counsel.  Ms. Ioane here has waived her -- our

5  confidentiality by putting this at issue and having opposing

6  experts.

7        But I will be happy to get the appropriate factual

8  non-work product information that Mr. Borenstein seeks as

9  fast as possible.

10        THE COURT:  Okay.  Why don't you do that, and as

11  long as you're doing it quickly and coordinating it, I don't

12  think that there's any issue with it.  And, if there's not,

13  let's do another informal conference.  If you -- if you need

14  something fast and, Mr. Borenstein, you don't think you're

15  getting it, then just contact the clerk.

16        MR. BORENSTEIN:  Okay.  Thank you, your Honor.

17        THE COURT:  Okay.  Anything else?

18        MR. BORENSTEIN:  No, your Honor.

19        THE COURT:  Okay.  Thank you very much for all

20  your time.  And, by the way, I'll thank all the -- I know

21  there's a number of court personnel that are here making

22  this happen in our own COVID time.  So thank you also for

23  facilitating this.  Thank you, and court is adjourned.

24      (Proceedings concluded.)

25

54

1    I certify that the foregoing is a correct

2 transcript from the electronic sound recording of the

3 proceedings in the above-entitled matter.

4

5 /s/Crystal Thomas     5/29/2020

  Transcriber, AAERT CERT *654  Date

6

  FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

7

8

  /s/L.L. Francisco

9 L.L. Francisco, President

  Echo Reporting, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*