UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLY J. IOANE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JEAN NOLL, et al.,<br><br>Defendants. | Case No. 1:07-cv-00620-AWI-EPG<br><br>**ORDER GRANTING MOTION FOR PROTECTIVE ORDER**<br><br>(ECF Nos. 534, 544) |

Before the Court is the motion for protective order filed by defendant Jean Noll ("Defendant") filed June 9, 2020. (ECF No. 534.) The parties subsequently filed a joint statement of discovery disagreement. (ECF No. 544.) The Court deemed the motion for protective order suitable for decision without oral argument pursuant to Local Rule 230(g). (ECF No. 548.) For the reasons discussed below, the Court grants the motion.

## BACKGROUND

Shelly Ioane ("Plaintiff")[1] filed this Bivens suit against Defendant Jean Noll, an Internal Revenue Service Agent, alleging that Defendant violated Plaintiff's Fourth Amendment right to bodily privacy when, during a June 2006 lawful execution of a search warrant, Defendant escorted Plaintiff to the bathroom and monitored Plaintiff while she relieved herself.

---

[1] Ioane's co-plaintiffs are no longer a part of this action. Therefore, "Plaintiff" refers only to Shelly Ioane.

1

1    The motion for protective order relates to a court-ordered psychological examination of
2 Plaintiff by Dr. Ricardo Winkel, a testifying expert witness retained by Defendant.
3    Dr. Winkel, a licensed psychologist, examined Plaintiff on September 15 and 20, 2015.
4 During the examination, Dr. Winkel administered assessments or tests developed by third
5 parties. (ECF No. 544 at 6-7.) The examination was also recorded as authorized by the Court.
6    On November 30, 2015, Dr. Winkel issued his report. Copies of his report, as well as the
7 recording of the examination, have been previously provided to Plaintiff.
8    In early April 2020, Dr. Winkel received an authorization form, signed by Plaintiff,
9 requesting that certain information be provided to Dr. Debra Borys. This authorization requested
10 that Dr. Winkel provide to Dr. Borys, "all answer sheets, profiles, score sheets, scores, raw data,
11 interpretive reports, graphs of test results, and any other data or results from MCMI-111, PAI,
12 DAPS, M-Fast, SIRS-2/SIRS and any other testing conducted by him of Shelly Olson-Ioane."
13 (ECF No. 545.) Plaintiff's counsel did not provide any notice to Defense counsel of the direct
14 contact of Dr. Winkel by Dr. Borys. However, Dr. Winkel contacted Defense counsel and
15 informed counsel of the contact. Defense counsel in turn wrote to Plaintiff's counsel to inform
16 Plaintiff's counsel of the contact and stated in this communication that the requested information
17 should flow through counsel.
18    The Court held an informal discovery dispute conference on April 23, 2020, regarding this
19 and other discovery issues. During this conference, the Court stated: "Okay. Why don't you do
20 that [exchange the information through counsel], and as long as you're doing it quickly and
21 coordinating it, I don't think that there's any issue with it." (ECF No. 532 at 55.)
22    On April 27, 2020, and May 2, 2020, pursuant to the request of Defense counsel, Dr.
23 Winkel transmitted to Defense counsel, by secure and encrypted transmission, copies of the
24 following documents generated in connection with Dr. Winkel's 2015 examination of Plaintiff:
25 Personality Assessment Inventory Interpretive Report; MCMI-III Interpretive Report; DAPS
26 Interpretive Report; M-FAST Interview Booklet (filled in); SIRS-2 Interview Booklet (filled in);
27 Personality Assessment Inventory (filled in); MCMI-III Answer Sheet (filled in); and DAPS
28 Answer Sheet (filled in). (ECF No. 545 at 3.) These documents were transmitted to Defense

1  counsel by Dr. Winkel for the purpose of transmitting the documents to Plaintiff's counsel and
2  with the expectation that the information would be kept confidential and/or utilized for the
3  purposes of this litigation. (*Id.*)

4  After receipt of the above documents, Plaintiff's counsel requested that he be provided with
5  the data underlying and supporting Dr. Winkel's report. Plaintiff's counsel also took the position
6  that transmission of the test information and underlying data by Dr. Winkel to Defendant's
7  counsel violated HIPPA and was unethical, that this provided grounds for disqualifying Dr.
8  Winkel as an expert, and that Plaintiff may litigate the issue. (ECF No. 533 at 7, 13, 21; ECF No.
9  546-3 at 4; 546-4 at 4.)

10  Defense counsel, in response, took the position that the requested information will be
11  transmitted only pursuant to a stipulated protective order, and provided Plaintiff's counsel with a
12  draft stipulated protective order. Defense counsel and Plaintiff's counsel were unable to agree to
13  terms for a stipulated protective order.

14  The Court held a second informal discovery dispute conference on May 26, 2020. During
15  this conference, Plaintiff's counsel again indicated his belief that the transmission of test data by
16  Dr. Winkel to Defense counsel was unethical and that Plaintiff planned to litigate the issue. (ECF
17  No. 533 at 9 (Plaintiff's counsel stating, "we believe that Doctor Winkle's conduct was
18  unethical"); *id.* at 13 (Plaintiff's counsel stating, "I don't think the protective order is going to
19  conclude one way or the other that Doctor Winkle was unethical. That's something that we're
20  planning to litigate.").) Following the conference, the Court granted Defendant permission to
21  move for a protective order, provided the parties first meet and confer. (*Id.* at 36-37.)

22  On May 28, 2020, Plaintiff served Defendant with a Request for Production of Documents,
23  Set One, requesting that Defendant disclose, "Any and all of the underlying data produced during
24  Dr. Winkel's examinations of Propounding Party." (ECF No. 546-5 at 2.) The request defines the
25  term "underlying data" as "all answer sheets, profiles, score sheets, scores, raw data, interpretive
26  reports, graphs of tests results and any other data or results from MCMI-III, PAI, MFast, SIRS-
27  2/SIRS and any other testing conducted by" Dr. Ricardo Winkel. (*Id.*)

28

Following the receipt of the discovery request, Defense counsel provided Plaintiff's counsel with a proposed stipulated protective order. Counsel subsequently met and conferred regarding the proposed stipulated protective order and were unable to reach an agreement.

On June 9, 2020, Defendant filed a motion for protective order, seeking to cover information to be produced in response to Plaintiff's Request for Production of Documents, Set One. (ECF No. 534.)

On June 29, 2020, Defendant responded as follows:

Plaintiff's Request for Production of Documents, Set One:

> Defendant Jean Noll objects to this request to the extent it seeks production of UNDERLYING DATA that contains proprietary or trade secret information, in the absence of a suitable protective order. Defendant further objects to this request in that it seeks production of UNDERLYING DATA prior to resolution of Defendant's pending motion for protective order filed on June 9, 2020 (Dkt. No. 534) and set for a hearing on July 17, 2020 regarding, among other things, the UNDERLYING DATA. Defendant further objects to this request to the extent that it seeks to further Plaintiff's baseless and improper intention to utilize the production of the UNDERLYING DATA through counsel as grounds for seeking to disqualify Dr. Winkel as an expert witness, or to otherwise "litigate" the production of the UNDERLYING DATA through counsel as a purported ethics violation.
>
> Subject to resolution of Defendant's pending motion and/or entry of an order equivalent to the proposed order accompanying Defendant's motion (Dkt. No. 534-1), Defendant will produce to Plaintiff's counsel the following UNDERLYING DATA:
>
> 1. M-FAST Interview Booklet (filled in);
> 2. SIRS-2 Interview Booklet (filled in);
> 3. Personality Assessment Inventory (filled in);
> 4. MCMI-III Answer Sheet (filled in);
> 5. DAPS Answer Sheet (filled in);
> 6. Personality Assessment Inventory Interpretive Report;
> 7. MCMI-III Interpretive Report;
> 8. DAPS Interpretive Report.
>
> The transcript of the examination by Dr. Winkel of Plaintiff on September 15 & 20, 2020 (previously provided to counsel for Plaintiff) also includes discussion of test information and/or questions.

(ECF No. 546-7 at 2-3.)

Before the Court is the pending motion for protective order filed by Defendant. (ECF No. 534.)

4

## LEGAL STANDARD

Issuance of a protective order is governed by Federal Rule of Civil Procedure 26(c), which provides, in relevant part:

> (1) In General. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> . . .
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way;
> . . . .

Fed. R. Civ. P. 26(c)(1).

"Generally, the public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows 'good cause' why a protective order is necessary." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). "It is well-established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public. Rule 26(c) authorizes a district court to override this presumption where 'good cause' is shown." *San Jose Mercury News, Inc. v. United States Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999).

"For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips*, 307 F.3d at 1210-11. "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Id.* at 1211.

## DISCUSSION

Defendant sets forth two grounds for seeking the protective order. First, Defendant seeks to address how mental health tests administered by Rule 26(a)(2) experts in this case may be utilized, transmitted, and disclosed. (ECF No. 544 at 5.) Defendant contends that certain psychological tests that are commonly administered by mental health practitioners contain proprietary and trade secret information that courts have found to merit protection. Defendant

seeks to protect such information here, while balancing the protection afforded to test information with the need for counsel to prepare for trial and conduct cross-examinations of testifying experts retained by the opposing party. (*Id.*) Defendant further seeks to clarify that transmission of testing data through counsel is an appropriate means of addressing discovery requests from an opposing party for test information, rather than having such transmission take place directly between Defendant's retained expert, Dr. Winkle, and Plaintiff's expert, Dr. Borys.

Second, Defendant seeks a protective order "out of an abundance of caution, to conform disclosure of protected information to the requirements of a complex Privacy Rule promulgated pursuant to HIPPA," in light of Plaintiff's assertions that HIPPA and other confidentiality laws and obligations apply here. (ECF No. 544 at 5.) Defendant contends that Plaintiff, by bringing this suit, has waived and thus does not have substantive privacy rights in information or records compiled by her treating physicians or compiled by testifying mental health experts in this case. (*Id.*) Defendant further argues that Dr. Winkel, in his role as a forensic psychologist and testifying expert, is not a health care provider engaging in a transaction covered by HIPPA's Privacy Rule. However, out of an abundance of caution, Defendant has drafted the proposed order in an attempt to alleviate Plaintiff's HIPPA-based concerns. (ECF No. 544 at 6.)

Plaintiff contends, in response, that Defendant has not demonstrated harm or prejudice she will suffer by providing the requested information without a protective order; that the only party who might suffer prejudice or harm is Plaintiff; that Defendant is not the copyright holder for any of the psychological tests at issue nor the owner of any trade secret to the tests; and that therefore Defendant cannot show good cause for a protective order. (ECF No. 544 at 20-21.)

The Court disagrees and finds that good cause exists for granting a protective order.

Under Rule 26(a)(2), a party is required to disclose any expert witness it may use at trial, and, if that witness is "retained or specially employed to provide expert testimony in the case," that the disclosure must be accompanied by a written report prepared and signed by the expert witness. Fed. R. Civ. P. 26(a)(2)(A), (B). This report must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them"

and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i), (ii).

Thus, disclosure of facts or data underlying Dr. Winkel's opinions is explicitly allowed and indeed required by Rule 26.

However, Rule 26 also anticipates that information that is required to be disclosed in discovery may need to be disclosed pursuant to a protective order. *See* Fed. R. Civ. P. 26(c) (For "good cause," a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," by, among other things, "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.").

Here, Defendant is concerned that the psychological test information sought by Plaintiff may include trade secrets and proprietary information protected by copyright law, and that disclosure of such information may thus subject Dr. Winkel to liability. Moreover, Defendant is concerned about any other confidentiality obligations Dr. Winkel and Defendant's counsel may have regarding the requested information. Given Plaintiff's assertions regarding confidentiality and the HIPPA Privacy Rule, the Court will assume without deciding, for purposes of the protective order, that the information sought by Plaintiff includes confidential information and that the disclosure of such information is subject to the Privacy Rule or other confidentiality obligations.

The Court finds, under the circumstances and with these assumptions, that Defendant has demonstrated that good cause exists for issuance of the requested protective order. Specifically, the information sought by Plaintiff contains psychological testing material that may include protected proprietary and trade secret information and may also include confidential information implicating applicable ethical standards and state and federal privacy laws. Accordingly, issuance of a protective order covering the information is warranted. *See Frazier v. Bd. of Cty. Comm'rs of Cty. of Arapahoe*, No. CIVA08CV02730WYDBNB, 2010 WL 447785, at *4 (D. Colo. Feb. 3, 2010) (requiring disclosure of psychological testing information and underlying data relied on by expert witness where protective order "adequately protects any trade secrets which may reside in

the Psychological Tests," and adequately addresses the plaintiff's and expert witness's concerns regarding ethical limitations on disclosure of confidential information), *objections overruled sub nom. Frazier v. Bd. of Cty. Commissioners of Cty. of Arapahoe*, No. 08-CV-02730-WYD-BNB, 2010 WL 11553297 (D. Colo. June 24, 2010); *Taylor v. Erna*, No. CIVA 08-10534-DPW, 2009 WL 2425839, at *2 (D. Mass. Aug. 3, 2009) (requiring disclosure of psychological testing information and data underlying expert's opinion conditioned on protective order that protects the confidentiality of the test results and testing materials and addresses concerns regarding expert's ethical obligations and contractual obligations regarding copyrighted test materials); *Schmitt v. Beverly Health & Rehab. Servs., Inc.*, No. CIV. A. 96-2537-EEO, 1997 WL 728133, at *4 (D. Kan. Nov. 19, 1997) (issuing protective order protecting psychological data and testing information considered by expert witness to alleviate concern regarding ethical duties and to protect any trade secrets or proprietary information contained in the psychological tests).

Accordingly, the Court finds that good cause exists for issuance of the requested protective order.

IT IS ORDERED that Defendant's motion for a protective order (ECF No. 534) is GRANTED. The proposed protective order, which was attached to Defendant's motion for a protective order (ECF No. 534-1), is approved and will be issued concurrently herewith.

IT IS SO ORDERED.

Dated: **July 22, 2020**         /s/ Erica P. Grosjean
                                  UNITED STATES MAGISTRATE JUDGE