Peter Borenstein (SBN 304266)
P.O. Box 885
Culver City, CA 90232
(213) 362-8740 (tel)
(877) 460-3681 (fax)
peter@brnstn.org

Attorney for Plaintiff
SHELLY IOANE

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLEN HALLIDAY, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> KENT SPJUTE, et al., <br><br> Defendants. | Case No. 1:07-cv-00620-AWI-EPG <br><br> **PLAINTIFF SHELLY IOANE'S OPPOSITION TO DEFENDANT JEAN NOLL'S MOTION FOR SECOND MENTAL EXAMINATION [F.R.C.P. 35]; DECLARATION OF DEBRA BORYS, PH.D.; DECLARATION OF MANOLITO CASTILLO, M.D.; AND DECLARATION OF PETER BORENSTEIN IN SUPPORT THEREOF.** <br> Date: September 25, 2020 <br> Time: 10:00 am <br> Dept.: Courtroom 10 <br> Judge: Hon. Erica P. Grosjean <br><br> Action Filed: April 24, 2007 |

Plaintiff Shelly Ioane ("Plaintiff" or "Mrs. Ioane") hereby submits her opposition to Defendant Jean Noll's ("Defendant" or "Agent Noll") motion for a second Rule 35 mental examination.

## INTRODUCTION

Agent Noll has not met her heavy burden as the moving party to show good cause for a second Rule 35 mental examination of Mrs. Ioane and the Court should deny the instant motion. Agent Noll's claim that she needs another exam to rebut the conclusions of Plaintiff's retained

expert, Dr. Debra Borys, regarding a previous examination in 2015 does not establish good cause. Moreover, good cause cannot exist where ample information regarding Mrs. Ioane's alleged change in condition since the 2015 examination has already been obtained from recent depositions allowed by the Court after the fact discovery cut-off. For example, the subject of Mrs. Ioane's most recent deposition, her second in this action, was exclusively regarding the damages she has suffered since 2015.[1] Therefore, Agent Noll and her lawyers already have the very information they claim they need from a second examination and which their expert, Dr. Ricardo Winkel, can use to offer true rebuttal testimony to the opinions offered by Dr. Borys regarding his 2015 examination.

Defendant's proposed second examination in the guise of rebuttal evidence is nothing more than a request for a do-over after the criticisms leveled by Dr. Borys as to the manner and conclusions from Dr. Winkel's first exam. Obviously, Dr. Winkel thought Plaintiff was competent to take his tests in 2015; to administer the tests if he thought she was drugged or overmedicated would be unethical. Besides, no one forced Defendant to seek an earlier exam -- that was Defendant's strategic decision. If a second exam is allowed simply because time has passed, a second or third or fourth exam would always be justified. *See Schlagenhauf v. Holder,* 379 U.S. 104, 118 ("Rule 35's good-cause requirement is not a mere formality, but is a plainly expressed limitation on the use of that Rule.") Meanwhile, the information that Defendant claims to seek regarding Mrs. Ioane's changed circumstance has already been produced by eleven depositions, two psychological examinations, and Mrs. Ioane's medical records. Therefore, a third examination would be totally redundant, unnecessary, and only intended to torment Mrs. Ioane as this litigation enters its final stage. Therefore, the Court should deny the Defendant's motion for a "follow-up" mental examination.

## BACKGROUND

The operative Second Amended Complaint was filed on October 10, 2008. Dkt. No. 64. Since that time, the following depositions/examinations have been conducted, set out here in chronological order:

February 19, 2014 – Deposition of Plaintiff Shelly Ioane
February 20, 2014 – Deposition of former Plaintiff Michael Ioane, Sr.
June 25, 2015 – Deposition of Dr. Manolito Castillo, Mrs. Ioane's treating psychiatrist

---

[1] This deposition had to be broken up into two sessions because Mrs. Ioane had a panic attack and could not continue with her testimony. Borenstein Decl., ¶ 3.

PLAINTIFF SHELLY IOANE'S OPPOSITION TO DEFENDANT JEAN NOLL'S MOTION FOR SECOND MENTAL EXAMINATIION [F.R.C.P. 35] – HALLIDAY, ET AL. V. KENT SPJUTE, ET AL.
2

  July 8, 2015 – Deposition of Mohammad Shabbir, Mrs. Ioane's general practitioner
  July 8, 2015 – Deposition of Roger Chamberlain, a pastoral counselor
  September 15 & 20, 2015 – Rule 35 Mental Examination of Mrs. Ioane conducted by Dr. Ricardo Winkel, Defendant's retained expert.[2]
  June 8 & 17, 2020 – Remote Psychological Evaluation Interview of Mrs. Ioane conducted by Dr. Debra Borys, Plaintiff's retained expert.
  July 3, 2020 – Remote Psychological Testing of Mrs. Ioane conducted by Dr. Debra Borys.
  August 6 & 12, 2020 – Second deposition of Plaintiff Shelly Ioane
  August 31, 2020 – Deposition of Briana Ioane, Mrs. Ioane's daughter
  September 2, 2020 – Deposition of Michael Ioane, Jr., Mrs. Ioane's son
  September 4, 2020 – Deposition of Ashley Stansifer, Mrs. Ioane's daughter
  September 9, 2020 – Deposition of Lesieli Tavake, Mrs. Ioane's niece
  September 10, 2020 – Deposition of Teri Norgrove, Mrs. Ioane's former colleague.

  The last Rule 35 mental examination in 2015 was conducted just before Defendant filed her motion for summary judgment as to Mrs. Ioane's claims for invasion of bodily privacy and excessive force on February 25, 2016. Dkt. No. 369. On April 19, 2016, Judge Ishii denied the motion as to Mrs. Ioane's invasion of bodily privacy claim but granted the motion as to her excessive force claim against Agent Noll. Dkt. No. 384. On June 16, 2016, Agent Noll appealed the denial of her motion for summary judgment as to Mrs. Ioane's invasion of bodily privacy claim. Dkt. No. 394. Agent Noll ultimately lost her appeal in the Ninth Circuit and the case was remanded on November 5, 2019. Dkt. No. 500. Subsequent to Mrs. Ioane retaining counsel, the parties filed a Joint Status Report on November 25, 2019, whereupon the parties began to conduct discovery for the first time since 2015. Dkt. No. 502. On March 12, 2020, counsel for Defendant contacted Plaintiff regarding whether Mrs. Ioane would be willing to submit to another mental examination, which Plaintiff refused. Borenstein Decl., ¶ 2.

  On April 15, 2020, Defendant filed a motion to compel a Rule 35 mental examination without permission from this Court, two days before the close of the limited fact discovery period. Dkt. No. 518. The Court then calendared an informal discovery conference for April 23, 2020. Dkt. No. 524. During the informal discovery conference, the Court ruled that Defendant would be permitted to move for an additional mental examination after Plaintiff made her initial expert disclosures, although cautioning that "I want to be careful that it's just not another bite at the apple. On the other hand, there may be something different [in Mrs. Ioane's mental condition], and – but [if a second mental examination was granted] – would be limited. It would

---

[2] Although Dr. Winkel produced a report based on his examination of Mrs. Ioane, it appears that he was never disclosed as a testifying expert pursuant to Rule 26(a)(2)(B).

be limited to what's happened in the last five years." Dtk. No. 532 at 42-43. The Court ordered Defendant to inform it by August 26, 2020 whether it would proceed with a motion to compel another Rule 36 mental examination. *Ibid*.

On June 22, 2020, the Court permitted Defendant to depose any of the eight witnesses named in Plaintiff's supplemental responses to Defendant's Special Interrogatories, Set Two, including her children, her niece, her neighbors, her colleague, and her best friend. All of these witnesses can and will testify to the changes they have observed and the harm that Mrs. Ioane has suffered over the course of fourteen years as a result of Agent Noll's invasion of bodily privacy in 2006. Dkt. No. 542. Additionally, the Court allowed for another deposition of Mrs. Ioane exclusively on the subject of her damages since 2015. *Ibid*.

On August 24, 2020, Plaintiff made her initial expert disclosures, including Dr. Borys' forensic psychological report of Mrs. Ioane. Borenstein Decl., ¶ 4. The Borys Report calls Dr. Winkel's methodology during the 2015 mental examination into question and suggests that the results of the psychological testing conducted during the examination may be unreliable given that Mrs. Ioane was overmedicated at the time. Borenstein Decl., ¶ 5. On August 26, the deadline set by the Court, Defendant emailed the clerk of the Court to schedule a hearing on a forthcoming motion to compel a Rule 35 mental examination, arguing that another mental examination was needed to rebut the conclusions made in the Borys Report regarding Dr. Winkel's examination five years ago. Borenstein Decl., ¶ 6

## LEGAL STANDARD

"Mental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by [Rule 35]." *Schlagenhauf v. Holder, supra*, 379 U.S. at 121. "This is because a more relaxed standard would allow parties to routinely compel each other to submit to examinations, which would be contrary to both the spirit of the Rules of Civil Procedure, *see* Fed. R. Civ. P. 1, and the purposes underlying the substantive law at the center of many disputes." *Winstead v. Lafayette Cty. Bd. of Cty. Commissioners,* 315 F.R.D. 612, 614 (N.D. Fla. 2016). "In order to obtain the court's permission to conduct a mental or physical examination of plaintiff, Fed.R.Civ.P. 35(a) requires that plaintiff's mental condition be in controversy and that good cause be shown as to the necessity of such an examination. . . . The plaintiff's right to avoid the invasion of a mental examination must be balanced against defendant's right to a fair trial." *Curtis v. Express, Inc.*,

868 F. Supp. 467, 468 (N.D.N.Y. 1994), citations omitted. As an initial matter, the parties do not dispute that Mrs. Ioane's mental condition is in controversy. Therefore, the only issue before the Court is whether good cause exists to order a second examination of Mrs. Ioane.

A party requesting a second mental or physical examination must affirmatively establish the existence of the Rule's requirements of good cause. *Schlagenhauf v. Holder, supra,* 379 U.S. at 118. "One factor that is relevant to the determination of 'good cause' is the possibility of *obtaining the desired information by other means*." *Marroni v. Matey*, 82 F.R.D. 371, 372 (E.D. Pa. 1979), emphasis added; *see Schlagenhauf v. Holder*, *supra*, 379 U.S. at 118. Rule 35 does not limit the number of examinations, though "a higher showing of cause is required to justify subsequent examinations." *Furlong v. Circle Line Statue of Liberty Ferry, Inc.*, 902 F.Supp. 65, 70 (S.D.N.Y. 1995); *see Schlagenhauf v. Holder,* 321 F.2d 43, 51 (7th Cir. 1963), *vacated on other grounds,* 379 U.S. 104 (1964) ("[T]he number of examinations ordered should be held to the minimum necessary considering the party's right to privacy and the need for the court to have accurate information."). Relatedly, "courts have more recently held that good cause has not been shown where examinations would be needlessly duplicative, cumulative, or invasive." *Peters v. Nelson*, 153 F.R.D. 635, 638. (N.D. Iowa 1994).

## ARGUMENT

**1. Defendant Cannot Establish Good Cause Because Ample Information Already Exists of Mrs. Ioane's Condition and Damages.**

Defendant has already obtained extensive information regarding the cause of Mrs. Ioane's damages, her mental condition, and any alleged change in circumstance since 2015. Defendant therefore has obtained the facts she claims to need "by other means," rendering a second mental examination by Dr. Winkel gratuitous, oppressive, and unnecessarily duplicative. *See Marroni v. Matey*, *supra*, 82 F.R.D. at 372. Defendant's own motion even identifies the evidence she will rely upon regarding Mrs. Ioane's alleged change in circumstances since 2015 that supposedly establishes the basis for another intrusive mental examination. This evidence includes panic attacks, litigation-based stress, changed medications, the reunion with her husband, family conflicts, and financial stress, among others. *See* Motion at 11-12. Because the Court allowed Defendant to conduct eight depositions after the fact discovery cut-off, Defendant already has the facts of Mrs. Ioane's mental condition in 2020 and the potential causes of her

damages since 2006, the credibility of which the jury will decide without any need for a "follow-up" Rule 35 mental examination.

*Acosta v. Tenneco Oil Co.*, 913 F.2d 205 (5th Cir. 1990) is instructive. In *Acosta*, plaintiff alleged he was discriminated against based upon his age and subsequently terminated from his employment by defendant. *Id*. at 207. Defendant raised an affirmative defense that plaintiff had not mitigated his damages by seeking comparable employment. *Ibid*. Plaintiff subsequently retained an expert "to evaluate the reasonableness of [plaintiff's] efforts to secure substitute employment and to testify to the availability of comparable jobs. [The expert's] evaluation was comprehensive, relying upon a number of aptitude tests and personality questionnaires, as well as a detailed background and vocational interview with Acosta." *Ibid*. Defendant subsequently deposed plaintiff's expert, obtained his report and the underlying test results. *Id*. at 209. Despite all of this, defendant still insisted on conducting another Rule 35 mental examination with its own expert. *Id*. at 207. In denying defendant's motion, the Court held that defendant already had the information and evidence it would use to support its affirmative defense "without a repetitive examination of its own." *Id*. at 209.

Similarly, in *Shumaker v. West*, 196 F.R.D. 454 (S.D. W.Va. 2000), the court held that good cause did not exist to support an order for a Rule 35 mental examination to ascertain the extent of Plaintiff's post-traumatic stress. In *Schumacher,* there was already "ample medical evidence relating to Plaintiff's PTSD. . . Plaintiff's counsel identified a number of psychological tests and other information, which have been provided to Defendant, some of which the [Defendant] performed itself. Therefore, the court concludes that there is ample evidence available from which Defendant can obtain the information he currently seeks." *Id*. at 457.

Here, Defendant has conducted eleven depositions between 2015 and 2020 related to Mrs. Ioane's mental condition and her symptoms of anxiety, depression, and post-traumatic stress, including a second deposition of Plaintiff. Mrs. Ioane has had two forensic psychological examinations between 2015 and 2020, which included nearly a dozen psychological tests, the results of which will be reviewed by the parties' respective experts.[3] Indeed, several of the same tests were conducted by both experts. Borys Decl., ¶¶ 9, 10. Mrs. Ioane's medical records were obtained in 2015 and the medications she has taken since that time have been corroborated by

---

[3] After refusing to informally exchange expert discovery with Plaintiff, Defendant served a subpoena to obtain Mrs. Ioane's test results from Dr. Borys. Borenstein Decl., ¶ 7.

deposition testimony taken as recently as September 2, 2020. Borenstein Decl., ¶ 8; *see* Castillo Decl., ¶ 8. Where so much information already exists with regard to Mrs. Ioane's mental condition, another Rule 35 examination is totally unnecessary, unreasonably duplicative and, indeed, may ultimately be harmful to Mrs. Ioane. Castillo Decl., ¶¶ 10-12; Borys Decl., ¶¶ 21-24. Therefore, the Court should deny the instant motion.

      **A.**      **Permanent Injury/Change in Condition Analysis is Not Applicable to Mrs. Ioane's Mental Condition.**

Defendant argues that good cause exists for a second mental examination because Mrs. Ioane is alleging permanent or ongoing injuries and that Dr. Winkel has not examined her in five years to determine if her condition has changed. Motion at 15. The permanent injury/change in condition analysis usually applies to physical injuries where a change in condition is readily ascertainable by an examiner. *See, e.g., Edson v. Liberty Mut. Ins. Co.,* 2002 WL 31946902, at *1 (N.D. Cal. Oct. 4, 2002) (good cause for second physical examination to assess if plaintiff was still permanently physically disabled); *Sosa v. M/Y NICE TRY,* 2011 WL 13152493, at *2 (S.D. Cal. Sept. 16, 2011) (good cause for second physical examination to assess change in condition of disfigured left foot); *Kuithe v. Gulf Caribe Mar., Inc.*, 2009 WL 10695560, at *5 (S.D. Ala. Mar. 18, 2009), *aff'd,* 2009 WL 928589 (S.D. Ala. Apr. 6, 2009) (good cause for second physical examination to assess if the condition of plaintiff's knee had improved and whether knee replacement surgery would be required). Where a second mental examination is requested, the permanent injury/change in condition analysis requires a concrete and readily ascertainable change, rather than a vague reference to either an improvement or deterioration. *See Ziemann v. Burlington Cty. Bridge Comm'n*, 155 F.R.D. 497, 501 (D.N.J. 1994 (good cause for second mental examination where plaintiff was employed during the first examination and later quit due to her claimed damages). In all of the cases cited above, information related to the plaintiff's condition was not available from other sources.

Here, the permanent injury/change in condition analysis does not apply because Defendant has already obtained information regarding alleged changes to Mrs. Ioane's drug regimen, a deterioration in memory function, or hospitalizations, none of which suggest a material change in her mental condition that is readily ascertainable by an examiner; this information certainly does not denote the same type of substantial change as, for example, a plaintiff who regains the use of his previously disfigured foot. *See Sosa v. M/Y NICE TRY*,

PLAINTIFF SHELLY IOANE'S OPPOSITION TO DEFENDANT JEAN NOLL'S MOTION FOR SECOND MENTAL EXAMINATIION [F.R.C.P. 35] – HALLIDAY, ET AL. V. KENT SPJUTE, ET AL.

7

*supra,* 2011 WL 13152493, at *2. Furthermore, Defendant has already obtained this information through other discovery procedures, making another mental examination entirely unnecessary to simply confirm (or, in the case of Mrs. Ioane's memory, be unable to confirm) what has already been learned through nearly a dozen depositions. Motion at 6. Indeed, "[u]nlike, say, a physical injury stemming from a car crash, a plaintiff's claim of some emotional harm is not easily confirmed or disconfirmed by subjecting that plaintiff to [a second mental] examination. This is not to say that psychological examinations such as the MMPI have *no* probative value in a case such as this one, but their relatively limited probative value counsels in favor of denying Rule 35 motions for psychological exams. If a party thinks the opposing party is exaggerating the extent of her mental injuries, rigorous questioning at a deposition and scrutiny of medical records seems at least as good a way of confirming that suspicion as a quasi-objective [second] psychological exam." *Winstead v. Lafayette Cty. Bd. of Cty. Commissioners*, *supra*, 315 F.R.D. at 617. Therefore, the Court should deny the instant motion.

**2.     There Are Already Two Sets of Testing in This Case, Including Two MCMIs and DAPS.**

Dr. Winkel has not advised the Court what specific psychological tests he might administer during a second Rule 35 mental examination,[4] whether they would differ from his previous examination, nor whether Dr. Borys' more recent examination of Mrs. Ioane will have an impact on the results of his proposed examination. Motion at 13. Defendant, with the burden of proof, cannot show good cause for another exam; whatever Dr. Winkel might do, it will mostly be duplicative of Dr. Borys' examination just two months ago. *See* Borys Declaration, ¶¶ 11, 13. Therefore, both experts can use the existing test results. And, of course, Defendant "rigorously questioned" Mrs. Ioane at her most recent deposition. *See Winstead v. Lafayette Cty. Bd. of Cty. Commissioners*, *supra*, 315 F.R.D. at 617.

That Dr. Winkel has not identified the tests he wants to administer is particularly concerning because "the most valid test outcomes are yielded when the test items are new to the respondent." Borys Decl., ¶ 16. This suggests that a "follow-up" Rule 35 mental examination would be unreliable at best, especially where ample information already exists regarding Mrs. Ioane's damages, symptoms, and treatment since 2015. Meanwhile, "[s]ome studies have

---

[4] Given Defendant's failure to identify what tests Dr. Winkel would administer if permitted a second Rule 35 mental examination, the Court should not permit Defendant to supplement this information in her reply brief.

suggested that respondents, upon repeated testing, especially in relatively close proximity to initial testing, may become more defensive; their validity scales L (social desirability) and K (defensiveness about admitting symptoms) may rise, and their clinical scale scores decrease as they attempt to look "normal" (undistressed)." Borys Decl., ¶ 17.

Furthermore, Dr. Winkel is clearly not an unbiased examiner: He examined Mrs. Ioane in 2015 and came to a conclusion regarding her mental state that was favorable to Agent Noll. Having had his methodology questioned by Dr. Borys, Dr. Winkel now seeks to rehabilitate his previous report and get a second chance to reaffirm his conclusions by effectively cross-examining Mrs. Ioane regarding causation and an alleged change in condition since 2015 under the guise of "leveling the playing field." Motion at 14. If the "playing field" is unlevel, it is already tipping in favor of Defendant given the generous discovery orders and the extensive information already obtained on the very subject Defendant claims she needs. Indeed, the basis for a second examination seems to be harassment rather than any type of productive inquiry into Mrs. Ioane's mental condition. More importantly, it "would be a much more valid process if Dr. Winkel utilized Dr. Borys's testing, recently completed in July, 2020, as the test measures for Dr. Winkel's reevaluation, rather than subject her to retesting just 2 to 3 months later." Borys Decl., ¶ 19. Therefore, the Court should deny the instant motion.

3.   **A Rule 35 Mental Examination is Not Permissible Expert Rebuttal Testimony.**

"[W]hen a court's scheduling order allows rebuttal reports, a party may only submit an expert rebuttal 'if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party.'" *In re Asbestos Products Liab. Litig. (No. VI)*, 2012 WL 661673 at *1 (E.D. Pa. Feb. 8, 2012); *see also Columbia Grain, Inc. v. Hinrichs Trading, LLC,* 2015 WL 6675538 at *2 (D. Idaho Oct. 30, 2015). Rebuttal expert reports may respond to "new unforeseen facts brought out in the other side's case." *Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 4272430, at *3 (N.D. Cal. Aug. 15, 2016). However, "[r]ebuttal testimony cannot be used to advance new arguments or new evidence." *Century Indem. Co. v. Marine Grp., LLC*, 2015 WL 5521986 at *3 (D. Or. Sept. 16, 2015). A rebuttal report "is not the time to change methodologies to account for noted deficiencies; instead, it is to respond to criticisms of such methodologies *Matthew Enter. Inc. v. Chrysler Grp. LLC*, *supra*, 2016 WL 4272430, at *3 Ultimately, "[r]ebuttal testimony is proper as long as it addresses the same subject matter that the initial experts address." *Perez v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 8601203, at *8 (N.D.

Cal. Dec. 7, 2011)

      Here, Defendant seeks a second Rule 35 mental examination purportedly to rebut the Borys Report's conclusion that Dr. Winkel's 2015 examination was flawed and unreliable. Motion at 4-5. As is obvious, the Borys Report addresses Dr. Winkel's examination in 2015 rather than any examination that may occur in 2020. As a matter of law, conclusions drawn from a second mental examination in 2020 cannot rebut Dr. Borys' criticisms of Dr. Winkel's examination in 2015. Meanwhile, a second mental examination is entirely unreasonable given that Defendant already has evidence she claims she needs to rebut the Borys Report's conclusions; that evidence is cited in the Defendant's moving papers. Motion at 8. Therefore, in addition to not being permissible rebuttal testimony, another mental examination can only be considered "needlessly duplicative, cumulative, [and] invasive." *Peters v. Nelson*, *supra*, 53 F.R.D. at p. 638.

      The Court should not allow Agent Noll a do-over examination in 2020 simply because she objects to Dr. Borys' criticisms of the Winkel Examination conducted five years ago. Therefore, the Court should deny the instant motion, spare Mrs. Ioane any further harassment by Agent Noll or Dr. Winkel, and require Defendant to comply with the rules for expert rebuttal testimony provided by Rule 26(a)(2)(D) of the Federal Rules of Civil Procedure.

## **CONCLUSION**

      For the reasons stated above, this Court should deny Defendant's motion for a second Rule 35 mental examination.

Respectfully submitted,

Dated: 9/18/20                            By: _____
                                                          Peter Borenstein
                                                          Attorney for Plaintiff
                                                          SHELLY IOANE