UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLY J. IOANE, et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>JEAN NOLL, et al.,<br><br>　　　　Defendants. | Case No. 1:07-cv-00620-AWI-EPG<br><br>**ORDER GRANTING MOTION FOR FOLLOW-UP PSYCHOLOGICAL EXAMINATION OF PLAINTIFF SHELLY IOANE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 35**<br><br>(ECF No. 565) |

  Before the Court is Defendant Jean Noll's motion pursuant to Federal Rule of Civil Procedure 35, for an order compelling a follow-up psychological examination of Plaintiff Shelly Iaone by Defendant's expert witness Ricardo Winkel, Ph.D. (ECF No. 565). The Court held a hearing on the motion on September 25, 2020. For the reasons set forth below as well as on the record at that hearing, the Court finds good cause for the follow-up psychological examination by Dr. Winkel and will accordingly grant the motion for a second examination (ECF No. 565). The Court will also deny Defendant's motion to strike the declaration of Dr. Castillo. (ECF No. 573 at 6.)

  As discussed during the hearing, Plaintiff and Plaintiff's expert are claiming that the results from the previous examination by Dr. Winkel, which took place five years ago in September 2015, are invalid because of Plaintiff's mental state during that examination, which

1

is purportedly different than Plaintiff's current mental state. For example, Plaintiff's counsel states in a declaration:

> Among other things, the Borys Report criticizes the methodology of Defendant's retained expert, Dr. Ricardo Winkel, used during a previous Rule 35 mental examination of Mrs. Ioane in 2015. The Borys Report suggests that the results of the psychological testing conducted during the examination may be unreliable given that Mrs. Ioane was overmedicated at the time.

(ECF No. 571-3 at 2, ¶ 5.)

As another example, the Borys Report, which was prepared by Plaintiff's expert, Debra Borys, Ph.D., who conducted an examination in June and July 2020, states:

> Shelly described her mental state when she underwent the defense psychological evaluation with Dr. Winkel in 2015. . . . She said she saw him after she had started taking the anxiety medication that heavily sedated her. From Dr. Castillo's records, this appeared to be Klonopin, which he does reduce due to over-sedation. She continued to report some difficulty awakening to him thereafter, and did so in self- report to this examiner, even on a lower doses.) Shelly said that as a result of her level of sedation at the time, she could not drive herself to the appointment with Dr. Winkel on her own. She said that her daughter "warned" Dr. Winkel about Shelly's degree of sedation and told him about at least one of her first two big breakdowns.
>
> . . . . [The combination of heavy sedation and the possibility of having MFAST or SIRS questions she seemed to be describing interposed between parts of the PAI or MCMI, if that is what happened, may have contributed to higher situational stress being experienced and certainly a disruption in focus]. . . .
>
> . . . .
>
> Shelly said that because her system has gotten acclimated to the medication she is on (and her records show that the original over-sedation from the Klonopin was dealt with by reducing her dose), she is able to drive safely again. . . .
>
> . . . .
>
> Shelly also showed poor memory for remote dates of all types. She said her medications have impaired her memory for dates. [Comment: This does occur with psychotropic medications for some patients; additionally, patients with trauma symptoms tend to have wavering memory for dates and chronology (order of events) that are a part of the trauma history. This is associated with the prototypical alternation between intrusion and avoidance of trauma memories].
>
> . . . .
>
> This strongly suggested she maintained her alertness and focus, and worked at a deliberate pace, neither obsessive nor rushed. She did not appear drained when finished and reported that her mental state and energy level completing the tests during this evaluation was vastly different than that while completing testing and indeed the entire evaluation with Dr. Winkel, which she attributed primarily to the difference in how much less sedated she felt from her medication now. (In

   addition to taking less anxiolytic medication, she had not been taking the mood stabilizers Gabapentin and Lamotrigine yet at the time she saw Dr. Winkel).

(ECF No. 568-1 at 6-9.)

  Thus, Plaintiff and her expert are taking the position that the results of the first Rule 35 examination conducted by Dr. Winkel are invalid and unreliable and should not be believed due to Plaintiff's unstable, overmedicated, and sedated mental state at the time of the Dr. Winkel examination, and that the results of the examination by Dr. Borys are valid and reliable and should be believed because Plaintiff was in a different and more stable and alert mental state at the time of the Dr. Borys examination.

  The Court finds that the significant time lag since the first examination by Dr. Winkel, in combination with the purported change in Plaintiff's mental status since that examination, provide good cause for a second examination by Dr. Winkel. *See, e.g., Sadler v. Acker*, 263 F.R.D. 333, 336-37 (M.D. Louisiana 2009) (allowing second examination based on substantial time lag between initial examination and time of trial and where there was a change in plaintiff's circumstances); *Edson v. Liberty Mutual Ins. Co.*, 2002 WL 31946902, at *1-*2 (N.D. Cal. 2002) (allowing second examination where two years had elapsed since plaintiff's last examination and where plaintiff's condition may have changed since then).

  For the above reasons, and for the reasons stated on the record during the September 25, 2020, hearing, IT IS ORDERED that:

  1. Defendant's motion (ECF No. 565) is GRANTED:

  2. Plaintiff, Shelly Ioane, shall sit for a second Rule 35 psychological examination by Dr. Ricardo Winkel, and will cooperate with Dr. Winkel during that examination.

  3. The follow-up examination shall commence on either September 29 or September 30, 2020 (with Plaintiff to select one of the two dates no later than the close of business on September 25, 2020). If additional time is required to complete the examination, Plaintiff and Dr. Winkel shall complete the examination on October 2, 2020.

  4. The examination shall be conducted remotely, via a teleconference platform (such as Zoom, Doxy, or FaceTime), such platform to be agreed on by Dr. Winkel and Plaintiff.

5. Plaintiff is ordered to sit for the examination in an appropriate place, by herself, and shall not seek or obtain input or assistance from any person regarding the examination. Plaintiff shall not share, or consult with others about, any test items or responses while she is taking tests administered by Dr. Winkel.

6. Plaintiff and Dr. Winkel shall arrange for a workable setup for the remote examination, with Plaintiff utilizing a computer with an internet connection, keyboard and camera for purposes of a remote video interview with Dr. Winkel and to take the tests on-screen, and with Plaintiff setting up a second device with a camera and internet connection (e.g., computer, tablet or smart phone) in the same room or area, pointing in Plaintiff's direction while she is taking the tests administered by Dr. Winkel, so that Dr. Winkel may oversee the process.

7. The examination will commence at 10:30 a.m. on the date scheduled for the examination, and it will proceed, with breaks as needed, over two days, with the first day running no more than four hours of productive examination time (not including breaks or interruptions), and the second day running no more than three hours of productive examination time (not including breaks or interruptions), as needed. Alternatively, should Plaintiff and Dr. Winkel agree, the examination may proceed over a seven-hour period of examination time during one day.

8. The examination may be recorded using a court reporter or a professional videographer, with such recording being limited to only an audio recording if possible, but otherwise an audio and video recording. The audio/video recording shall be kept confidential and in the custody of the court reporter or videographer and is to be disclosed only upon further order of the Court.

9. No persons other than Dr. Winkel, Mrs. Ioane, and the court reporter or videographer will be present for the examination.

10. On the days of the examination, Plaintiff shall bring with her a complete list of medications that she is currently taking, including what she has taken that day.

11. In conducting the examination, Dr. Winkel shall not solicit from Plaintiff her

1  recollection of the June 8, 2006, incident, but Plaintiff is free to raise and discuss the incident
2  on her own volition.

3      12. No later than close of business on September 28, 2020, Dr. Borys shall make her best
4  efforts to transmit via email to Mr. Weaver, either directly or through Plaintiff's counsel,
5  everything Dr. Borys relied upon in her examination of Plaintiff, including Plaintiff's medical
6  records in Dr. Borys's possession. If Dr. Borys cannot provide everything that she relied upon
7  by the close of business on September 28, 2020, Plaintiff shall file a statement no later than the
8  close of business on 9/28/2020 setting forth what Dr. Borys was unable to transmit and why.

9      13. In conducting the examination, Dr. Winkel will in all respects exercise his
10 professional judgment consistent with his professional and ethical obligations as a licensed
11 psychologist in the state of California.

12     14. Defendant's motion to strike the declaration of Dr. Castillo (ECF No. 573 at 6) is
13 denied.

IT IS SO ORDERED.

16 Dated: **September 25, 2020**     /s/ *Erica P. Grosjean*
17                                                UNITED STATES MAGISTRATE JUDGE

5